IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 22-595 (MFK) |
| VIZGEN, INC., | ) ) | |
| Defendant. | ) ) | |
| VIZGEN, INC., | ) ) | |
| Counterclaim-Plaintiff, | ) ) | |
| v. | ) ) | |
| 10X GENOMICS, INC., | ) ) | |
| Counterclaim-Defendant as to certain claims | ) ) ) | |
| and | ) ) | |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | ) ) ) | |
| Counterclaim-Defendant as to certain claims. | ) ) ) | |

**10X GENOMICS, INC.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS VIZGEN'S COUNTERCLAIMS IV, V, AND XVI**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
TENSEGRITY LAW GROUP LLP
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA  94065
(650) 802-6000

Samantha Jameson
Ronald J. Pabis
Kiley White
TENSEGRITY LAW GROUP LLP
8260 Greensboro Dr.
Suite 260
McLean, VA  22102-3848
(650) 802-6000

October 27, 2022

Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff 10x Genomics, Inc.*

## TABLE OF CONTENTS

I.  NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.  SUMMARY OF ARGUMENT ................................................................................ 2

III.  STATEMENT OF FACTS .................................................................................... 4

IV.  ARGUMENT ..................................................................................................... 5

  A.  Legal Standard ........................................................................................... 5

  B.  Vizgen's Infringement Allegations (Counterclaim XVI) Fail to State a Viable Claim and Should Be Dismissed .............................................................. 6

    1.  Vizgen's Direct Infringement Claims Lack Plausible Factual Support ..... 6

    2.  Vizgen's Indirect Infringement Claims Fail Because There Is No Direct Infringement ....................................................................................... 11

  C.  Vizgen's State Law Counterclaims Are Barred by the *Noerr-Pennington* Doctrine and Federal Preemption ............................................................ 14

    1.  The State Law Counterclaims Should Be Dismissed Because *Noerr-Pennington* Immunity Applies ............................................................ 14

    2.  The State Law Counterclaims Should Also Be Dismissed Because They Are Barred by Federal Preemption ....................................................... 17

V.  CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*800 Adept., Inc. v. Murex Secs. Ltd.*,
    539 F.3d 1354 (Fed. Cir. 2008)......................................................................................17

*Abbot Labs v. Teva Pharms. USA, Inc.*,
    432 F. Supp. 2d 408 (D. Del. 2006)................................................................................15

*AgroFresh, Inc. v. EssentivLLC*,
    No. 16-662-MN, 2019 U.S. Dist. LEXIS 13832 (D. Del. Jan. 29, 2019)........................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................5, 6, 18

*Atlas IP, LLC v. Excelon Corp.*,
    189 F. Supp. 3d 768 (N.D. Ill. 2016)................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................5, 6

*Callwave Communs. LLC v. AT&T Mobility LLC*,
    No. 12-1701-RGA, 2014 U.S. Dist. LEXIS 15374 (D. Del. Jan. 28, 2014)....................13

*Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*,
    15 F.3d 1573 (Fed. Cir. 1993)........................................................................................15

*Chem. Eng'g Corp. v. Essef Indus., Inc.*,
    795 F.2d 1565 (Fed. Cir. 1986)........................................................................................9

*Disc Disease Sols. Inc. v. VGH Sols. Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018)......................................................................................11

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
    524 F.3d 1254 (Fed. Cir. 2008)................................................................................17, 18

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004)......................................................................................12

*E.I. Dupont De Nemours & Co. v. Unifrax I LLC*,
    No. 14-1250-RGA, 2015 U.S. Dist. LEXIS 102348 (D. Del. Aug. 5, 2015)..................19

*eDigital v. iBaby Labs, Inc.*,
    No. 15-cv-05790-JST, 2016 U.S. Dist. LEXIS 111689 (N.D. Cal. Aug. 22,
    2016)..........................................................................................................................6

*EON Corp. IP Holdings LLC v. FLO TV Inc.*,
    802 F. Supp.2d 527 (D. Del. 2011)................................................................................12

*Forest Labs., Inc. v. Abbott Labs.*,
239 F.3d 1305 (Fed. Cir. 2001)......................................................................10

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3rd Cir. 2009) .........................................................................6

*Franklin Elec. Co. v. Dover Corp.*,
No. 05-C-598-S, 84 U.S.P.Q. 2d 1401, 2006 U.S. Dist. LEXIS 27247 (W.D.
Wisc. 2006) ....................................................................................................10

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
362 F.3d 1367 (Fed. Cir. 2004).................................................................17, 18

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
343 F. Supp. 2d 272 (D. Del. 2004)...............................................................15

*In re Bill of Lading Transmission & Processing Sys. Patent Lit.*,
681 F.3d 1323 (Fed. Cir. 2012).......................................................................12

*In re Innovatio IP Ventures, LLC (In re Innovation IP Ventures, LLC Patent Lit.*),
921 F. Supp. 2d 903 (N.D. Ill. 2013) ..............................................................15

*IP Venture Inc. v. Cellco P'ship*,
No. C 10-04755 JSW, 2011 U.S. Dist. LEXIS 5955 (N.D. Cal Jan. 21, 2011)......................13

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
863 F.2d 867 (Fed. Cir. 1988).......................................................................19

*Linear Tech. Corp. v. Impala Linear Corp.*,
379 F.3d 1311 (Fed. Cir. 2004).......................................................................12

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*,
No. 07-127-LPS, 2011 U.S. Dist. LEXIS 16485 (D. Del. Feb. 18, 2011)..................14, 15, 16

*Modern Telecom Sys., LLC v. TCL Corp.*,
No. 17-583-LPS-CJB, 2017 U.S. Dist. LEXIS 209717 (D. Del. Dec. 21, 2017)...................10

*Neology, Inc. v. Kapsch Trafficom IVHS, Inc.*,
No. 13-2052-LPS, 2014 U.S. Dist. LEXIS 131568 (D. Del. Sept. 19, 2014)..........................12

*Newark v. Delmarva Power & Light Co.*,
497 F. Supp. 323 (D. Del. 1980)......................................................................15

*Nobelpharma AB. V. Implant Innovations, Inc.*,
141 F.3d 1059 (Fed. Cir. 1998).......................................................................17

*North Star Innovations, Inc. v. Micron Tech., Inc.*,
No. 17-506-LPS-CJB, 2017 U.S. Dist. LEXIS 189624 (D. Del. Nov. 16, 2017)
..........................................................................................................6, 11

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ................................................................................................16

*Pac. BioSciences of Cal., Inc. v. Oxford Nanopore Techs, Inc.*,
   No. 17-275-LPS, 2019 U.S. Dist. LEXIS 25578 (D. Del. Feb. 19, 2019) ..............17

*PhishMe, Inc. v. Wombat Sec. Techs., Inc.*,
   No. 16-403-LPS-CJB, 2017 U.S. Dist. LEXIS 140636 (D. Del. Aug. 31, 2017)
   ................................................................................................................................19

*Presidents and Fellows of Harvard College v. Micron Technology*,
   No. 16-cv-11249 (D. Mass.) ...................................................................................11

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ..................................................................................................16

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985) ..............................................................................19

*Super Interconnect Techs. LLC v. HP Inc.*,
   No. 19-0169-CFC, 2019 U.S. Dist. LEXIS 217315 (D. Del. Dec. 18, 2019) ..........10

*Swirlate IP LLC v. Keep Truckin, Inc.*,
   No. 20-1283-CFC, 2021 U.S. Dist. LEXIS 140631 (D. Del. July 28, 2021) ............9

*TriPlay, Inc. v. WhatsApp, Inc.*,
   No. 13-1703, 2018 U.S. Dist. LEXIS 49953 (D. Del. Mar. 27, 2018) ......................6

*Varentec, Inc. v. Gridco, Inc.*,
   No. 16-217-RGA-MPT, 2017 U.S. Dist. LEXIS 86185 (D. Del. Jun. 6, 2017) ........16

*Varian Medical Systems. v. Elekta AB*,
   No. 15-871-LPS, 2016 U.S. Dist. LEXIS 91226 (July 12, 2016) ......................13, 14

*View Eng'g., Inc. v. Robotic Vision Sys., Inc.*,
   208 F. 3d 981 (Fed. Cir. 2000) ...............................................................................10

*Wilco AG v. Packaging Techs. & Inspection LLC*,
   615 F. Supp. 2d 320 (D. Del. 2009) ...................................................................17, 19

**Rules and Statutes**

35 U.S. C. § 271(b) ......................................................................................................3

35 U.S.C. § 271(c) .......................................................................................................3

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On May 3, 2022, Plaintiffs 10x Genomics, Inc. ("10x") and President and Fellows of Harvard College ("Harvard") filed a Complaint for patent infringement against Defendant Vizgen, Inc. ("Vizgen") alleging infringement of U.S. Patent Nos. 11,021,737, 11,293,051, 11,293,052, 11,293,054, and 11,299,767 (collectively, the "Harvard/10x Asserted Patents") (D.I. 1). On August 1, 2022, 10x and Harvard filed their First Amended Complaint against Vizgen. (D.I. 16) ("FAC"). Vizgen moved to dismiss certain indirect and willful infringement allegations in the FAC on August 15, 2022, which the Court denied on September 19, 2022. (D.I. 46).

On August 30, 2022, Vizgen filed its Answer and Defenses to the FAC along with sixteen counterclaims against 10x and/or Harvard (D.I. 29) ("Vizgen's Counterclaims" or "CC"). In its Counterclaims, Vizgen asserts fifteen counterclaims solely on its behalf including: (1) three common law claims against Harvard (Counterclaims I, II and III); (2) one common law claim against 10x for "Tortious Interference with Contractual and Advantageous Business Relations" (Counterclaim IV); (3) one state statutory claim against 10x for alleged violation of Massachusetts General Law Chapter 93A §§ 2 and 11 (Counterclaim V); and (4) ten Counterclaims for Declaratory Judgment on the Harvard/10x Asserted Patents (Counterclaims VI-XV). In addition, Vizgen and Harvard filed a counterclaim against 10x for alleged infringement of U.S. Patent No. 11,098,303 (the "303 Patent") (Counterclaim XVI). Counterclaim XVI asserts that 10x's Xenium In Situ Analysis Technology, a product that Vizgen admits has not yet been released, infringes at least one method claim of the 303 Patent.

10x now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) Vizgen's Counterclaim XVI for failure to state a claim upon which relief can be granted and Counterclaims IV and V as barred by preemption under federal patent law and the *Noerr-Pennington* doctrine.

## II.     SUMMARY OF ARGUMENT

1.      Vizgen's Counterclaim XVI should be dismissed because it fails to meet the pleading requirements of Federal Rule of Civil Procedure 8(a) and fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In an attempt to manufacture an offensive case to counter the infringement claims brought by 10x and Harvard, Vizgen has "jumped the gun" and cobbled together woefully deficient and speculative infringement allegations against a developing 10x product that Vizgen admits has not yet been commercially released. The claims of Vizgen's asserted 303 Patent are narrow and require no fewer than eleven steps to practice the claim. But Vizgen has not used or tested the accused Xenium product and does not have full technical information about the product because it has yet to be commercially released. Consequently, Vizgen lacks plausible evidence that Xenium is used or can be used in a manner that infringes the method steps claimed by the 303 Patent. Vizgen's Counterclaim also does not identify a single third party that has used the yet-to-be released Xenium to perform the steps claimed by the 303 Patent. Undeterred by its lack of information, Vizgen constructs its own version of an allegedly infringing product by combining general marketing materials about Xenium (which do not establish infringement) with cherry-picked snippets from third-party academic papers and patent publications that do not even purport to relate to the Xenium product. This approach—combining portions of materials unassociated with the accused Xenium product to fill-in multiple steps of a claimed process—does not provide sufficient plausible facts to allow the Court to "draw the reasonable inference" that anyone has performed the steps required to infringe the 303 Patent either directly or indirectly. The law requires much more before Vizgen is allowed to subject the Court and 10x to the burden and expense of a discovery fishing expedition facilitated by an infringement action.

2.    Moreover, independent of the argument above, Vizgen's claims of indirect infringement in Counterclaim XVI should be dismissed because there is no allegation that any third-party is using the Xenium product to practice the claimed method. Indeed, the Counterclaims, taken as true, admit Xenium has not been commercially released and Vizgen has not identified any third party that has used the accused product to directly infringe the claimed method steps. Thus, Vizgen has not plausibly asserted that 10x is inducing or contributing to third parties performing the steps of the claimed method. Without such requisite direct infringement by others, there can be no claim for either induced infringement under 35 U.S. C. § 271(b) or contributory infringement under 35 U.S.C. § 271(c).

3.    Vizgen's common law claim of tortious interference (Counterclaim IV) and violation of Massachusetts's Unfair Competition Law (Counterclaim V) (the "State Law Counterclaims") should also be dismissed because they are preempted by the *Noerr-Pennington* doctrine. The First Amendment and the *Noerr-Pennington* doctrine protect 10x from liability for the conduct Vizgen relies on; namely, petitioning the government for patent protection and bringing a lawsuit to enforce Plaintiffs' patent rights.

4.    Vizgen's State Law Counterclaims should also be dismissed (independent of the *Noerr-Pennington* doctrine) because federal patent law preempts state-law torts unless there are sufficient allegations that the patent holder acted in both objective and subjective "bad faith." The factual allegations underlying Vizgen's State Law Counterclaims are that 10x and Harvard allegedly drafted patent claims to cover Vizgen's commercial products (CC at 46-47, 49, ¶¶ 121-123, 132) and that 10x is "taking positions in the FAC" that are allegedly harmful to Vizgen (CC at 46, 49-50, ¶¶ 120, 135-36). These acts are immune from state law tort liability and cannot rise

3

to the level of bad faith as a matter of law. Accordingly, Vizgen has not stated a claim for which relief can be granted and these counterclaims should also be dismissed.

## III.    STATEMENT OF FACTS

10x Genomics is a pioneer in the field of genomics and sequencing technologies. 10x has developed and brought to market award-winning products that give single cell and spatial views of complex biological systems. FAC, ¶ 3. The technology at issue in this action relates to a type of molecular analysis known as "*in situ*," which aims to measure and analyze a large number of molecules directly in tissue samples and capture the precise location of those molecules at sub-cellular resolution. *Id.*, ¶ 15. In 2020, as part of its development of its *in situ* technologies, 10x acquired ReadCoor, Inc., a company founded on Dr. George Church's work at Harvard University. *Id.*, ¶ 16. 10x also acquired CartaNa, a Swedish company with experience and technology in this field. CC at 22, ¶ 33.

Defendant/Counterclaim plaintiff Vizgen is a company that sells tools in the field of genomics including in the field of *in situ* molecular analysis. Vizgen asserts that in September 2019, it entered into a license agreement with Harvard to obtain rights to certain technology in this area developed by Harvard researcher Dr. Xiaowei Zhuang. According to Vizgen's Counterclaim, Vizgen licensed rights to the 303 Patent, which is allegedly owned by Harvard. CC at 29, 65, ¶¶ 48, 256. In March 2021, nearly half a year after 10x's widely observed acquisition of ReadCoor, Inc. and its associated technology and intellectual property, Vizgen announced the launch of its MERSCOPE platform. *Id.* at 3, ¶ 18. 10x's FAC asserts that the use of Vizgen's MERSCOPE Platform infringes the Harvard/10x Asserted Patents.

Taking Vizgen's allegations as true, 10x is currently developing but has not yet commercially released a product to perform *in situ* analysis called the Xenium In Situ platform. Vizgen admits that the Xenium product may not be released for "initial commercial availability"

until "late 2022" or 2023 (*id*. at 26, 36, ¶¶ 43, 73). The Counterclaims do not allege that Vizgen (or any third party) has used the accused product and do not point to a set of final technical documents showing that Xenium is being used to infringe the method claims of the 303 Patent. Nevertheless, Vizgen asserts that 10x is infringing the 303 Patent by 10x's purportedly "making and/or using" the Xenium In Situ Analysis Technology (CC at 65-66, ¶ 258), inducing infringement (CC at 68-69, ¶¶ 264-65) and contributing to infringement (CC at 66-67, ¶ 266).

The 303 Patent contains only method claims. According to Counterclaim XVI, the 303 Patent claims methods "for imaging or determining nucleic acids in cells" by applying "multiple nucleic acid probes to targets located within cells and tissue." CC at 65, ¶ 257. The method of the single independent claim of the 303 Patent requires no fewer than eleven steps, including producing a plurality of first hybridized complexes, exposing a sample to a plurality of different encoding probes, producing codewords comprised of multiple binary values, matching the codewords with valid codewords in a codebook and performing error correction if one of the codewords is not matched. 303 Patent, claim 1. Vizgen does not identify facts that plausibly demonstrate that Xenium platform is used or can be used to perform all these steps and has not identified a single person or third party that has used the yet-to-be released Xenium to perform these steps.

## IV.     ARGUMENT

### A.     Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a pleading contain, at a minimum, "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted Rule 8 to require that every complaint include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Third Circuit

has held that under *Iqbal* and *Twombly* a complaint must "show" entitlement to relief with facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3rd Cir. 2009). Bald assertions, unsupported conclusions, or unwarranted inferences are not sufficient, and the Court does not need to accept such assertions as true. *TriPlay, Inc. v. WhatsApp, Inc.*, No. 13-1703, 2018 U.S. Dist. LEXIS 49953 (D. Del. Mar. 27, 2018). The possibility that the alleged infringer is engaged in the claimed misconduct is not enough. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'show[n]'—'that the pleader is entitled to relief.'" *Fowler*, 578 F. 3d at 211 (quoting *Iqbal*, 556 U.S. at 679). Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B.   Vizgen's Infringement Allegations (Counterclaim XVI) Fail to State a Viable Claim and Should Be Dismissed

#### 1.   Vizgen's Direct Infringement Claims Lack Plausible Factual Support

Vizgen's allegations of direct infringement (*see* CC at 65, ¶¶ 258-9) are speculative, conclusory, and do not rise to the plausibility threshold required to state a claim. To adequately allege direct infringement, Vizgen must plead facts that plausibly indicate that 10x itself practices each step of the asserted method claims of the 303 Patent. *See North Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 U.S. Dist. LEXIS 189624 (D. Del. Nov. 16, 2017). "After all, if it is not plausible, after reading a complaint, that the accused infringer's product reads on a limitation in the one asserted claim from a patent-in-suit, then it is not plausible that the accused infringer actually infringes the patent claim (or the patent)." *Id*. at *3 (citing *eDigital v. iBaby Labs, Inc.*, No. 15-cv-05790-JST, 2016 U.S. Dist. LEXIS 111689 (N.D. Cal. Aug. 22, 2016)); *Atlas IP, LLC v. Excelon Corp.*, 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016) (finding that "factual allegations that do not permit a court to infer that the accused product infringes each element of at

least one claim are not suggestive of infringement—they are merely compatible with infringement"). Vizgen has not pleaded facts sufficient to show that 10x has used the Xenium platform to perform each of the steps claimed in the 303 Patent.

In its Counterclaims, Vizgen concedes that the accused Xenium product has not yet been released and admittedly may not be released until "late 2022" or 2023 (CC at 26, 36, ¶¶ 43, 73). Thus, there is no allegation that Vizgen has used, examined, or tested the accused product to show that Xenium performs the claimed methods. Without an actual product or evidence of how it is used, Vizgen resorts to combining general marketing information of the Xenium prototype found on 10x's website with various non-Xenium disclosures from others plucked from academic articles and patent publications to manufacture a hypothetical Xenium product that Vizgen claims can be used to perform the method steps of the 303 Patent. Vizgen's Counterclaims and the chart attached as Exhibit 3 modify the workflow depicted on the Xenium website by cherry-picking bits and pieces of those third-party academic papers and published patent applications, none of which even mention the accused Xenium product. Specifically, Vizgen pulls snippets from the following non-Xenium publications to fill in missing steps of the claimed method:

1) A third-party article that appeared in Nucleic Acids Research, an open access scientific journal published by Oxford University Press. The article, Gyllborg *et al.*, Hybridization-Based In Situ Sequencing (HybISS) for Spatially Resolved Transcriptomics in Human and Mouse Brain Tissue, 48 Nucleic Acids Res. 1 (2020) ("Gyllborg"), makes no reference to Xenium and does not describe the Xenium product. Gyllborg is not an article published by 10x.

2) A third-party article published in the monthly scientific journal Nature/Methods. This article, Xiaoyan Qian *et al.*, Probabilistic Cell Typing Enables Fine Mapping of Closely

Related Cell Types in Situ, 17 Nature Methods 101 (2020) ("Qian"), is not a 10x publication and makes no reference to Xenium. Although three of the eight contributing authors are noted as holding shares in Cartana AB at the time, its eight contributing authors are identified in the article as being associated with Stockholm University, University College London and the Karolinska Institute.

3) A March 17, 2022, patent application publication, U.S. Patent Pub. No. 2022/0084628, titled "Methods and Systems for Barcode Error Correction" with Preyas Shah identified as the named inventor ("Shah"). Shah also makes no reference to Xenium and does not purport to describe the Xenium product. Vizgen cherry-picks one generalized example from one of the 278 paragraphs of this publication to assert that 10x uses the Xenium product to complete the specific error correction steps required by the 303 Patent's claimed method.

4) A second patent application publication listing Malte Kühnemund and Toon Verheyen as named inventors. U.S. Patent Publication No. 2021/0198723, titled "Methods of Detecting an Analyte" ("Kühnemund"). This July 1, 2021, publication also says nothing about Xenium. In fact, it relates to a hybridization chain reaction (HCR) process which is different from the process described in the Xenium marketing materials.

Lacking actual Xenium evidence, Vizgen combines the four non-Xenium references cited above to fill in missing attributes of the actual accused Xenium product. Specifically:

- The 303 Patent claims require production of a plurality of first hybridized complexes where "each of the plurality of first hybridized complexes comprises multiple encoding nucleic acid probes of the different encoding nucleic acid probes located in its different locations." 303 Patent, claim 1. The Xenium marketing materials do not recite that Xenium performs this step. Thus, Vizgen attempts to address this deficiency by relying on one paragraph of Kühnemund (¶ 0147) and two sentences from Gyllborg to show this step. CC, Ex. 3 at 8-9. But neither publication says anything about Xenium, and the Kühnemund publication relates

to a hybridization chain reaction (HCR) process that is a completely different process than that described in the Xenium marketing materials.

- The 303 Patent claims require the production of "codewords representing the plurality of different nucleic acid targets" wherein the codewords comprise "multiple binary values 1 and 0." 303 Patent, claim 1. Xenium does not produce binary codewords, and the Xenium materials do not recite that it does. Thus, Vizgen points to Shah and Gyllborg for this process step. Specifically, Vizgen relies on paragraph 0277 of Shah for the codeword element, and paragraphs 11 and 100 for other portions of the process step. CC, Ex. 3 at 17-21. But even those references do not disclose creation of a codeword based on a binary value system.

- The 303 Patent claims require a "matching" of those binary codewords "with valid codewords in a codebook" and "applying an error detection or correction system" when "one of the codewords is not matched." 303 Patent, claim 1. Xenium does not perform this step either and Vizgen does not attempt to point to any Xenium-related materials at all for this limitation. Instead, it plucks certain words from Shah (¶¶ 0252, 0277 and claim 1), Gylborg (¶ 0132), and Qian (p. 102) to show general "error correction" using a "codebook." CC, Ex. 3 at 21-28.

Vizgen's reliance on these non-Xenium materials and its supposition that Xenium might work in the manner disclosed in those references is improper and cannot state a plausible claim. *Swirlate IP LLC v. Keep Truckin, Inc.*, No. 20-1283-CFC, 2021 U.S. Dist. LEXIS 140631 (D. Del. July 28, 2021) (dismissing direct infringement claim where factual allegations and websites and articles relied on by patentee were not sufficiently tied to the accused product). None of these publications refer to the accused Xenium product or purport to describe it. Nor does Vizgen allege any non-speculative facts to plausibly tie those articles and publications to the Xenium product. These articles and patent publications are simply irrelevant to the issue of infringement. *Chem. Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1569-70 & n.6 (Fed. Cir. 1986) (disclosures in a defendant's patents are "utterly irrelevant" to the issue of infringement, i.e., to whether a defendant actually uses a claimed product or method). The infringement analysis must compare the asserted claim with the accused product, not patent disclosures, or a combination of snippets from different academic papers and patent publications. *See Swirlate*, 2021 U.S. Dist. LEXIS 140631, at *4-5

("But the Complaint fails to cite or identify with specificity the information on each website that explains and connects the steps that are performed using the accused product to the elements of each claim."). *See also*, *Super Interconnect Techs. LLC v. HP Inc.*, No. 19-0169-CFC, 2019 U.S. Dist. LEXIS 217315 (D. Del. Dec. 18, 2019)(dismissing direct infringement claim where patentee did not adequately tie supporting materials with the accused products or the claims); *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1313 (Fed. Cir. 2001) (holding that patentee must "present adequate evidence with respect to the accused product, not the content of a patent application that may or may not describe the product").[1]

A claim of direct patent infringement should be dismissed under Rule 12(b)(6) where the patent holder does not set forth sufficient facts to allow the Court to find infringement of at least one claim of the asserted patent is "plausible" rather than "possible." *See Modern Telecom Sys., LLC v. TCL Corp.*, No. 17-583-LPS-CJB, 2017 U.S. Dist. LEXIS 209717 (D. Del. Dec. 21, 2017) (dismissing direct infringement claim where plaintiff failed to set forth sufficient facts to show defendant's infringement was plausible). Possible infringement is not sufficient, and facts tied to

---

[1] Vizgen's allegations are insufficient even if the descriptions of the disclosures in the four non-Xenium references were accepted as true, because there is nothing to credibly tie them to the accused product. The fact that a step of a claimed method is found in an academic paper or patent publication can only lead to the unremarkable conclusion that the process step was known in the art, not that any particular product actually practices that step. That is why courts have consistently rejected reliance on patents or marketing materials alone to show infringement. *See Franklin Elec. Co. v. Dover Corp.*, No. 05-C-598-S, 84 U.S.P.Q. 2d 1401, 1408, 2006 U.S. Dist. LEXIS 27247 (W.D. Wisc. 2006) (rev'd on other grounds, 2007 U.S. App. LEXIS 5083 (Fed. Cir. March 1, 2007)) ("[I]infringement is judged by whether the product itself infringes, not by whether it would infringe if it conformed to some representation made in attempting to sell it. In the absence of an accused product the comparison necessary to assess infringement cannot be performed."); *see also*, *View Eng'g., Inc. v. Robotic Vision Sys., Inc.*, 208 F. 3d 981, 984-85 (Fed. Cir. 2000) (awarding Rule 11 sanctions against patent owner's counsel for failing to conduct adequate prefiling investigation where the patent owner never had access to an actual device and alleged infringement based on an advertisement). Pasting these individual unrelated disclosures together, as Vizgen has done here, cannot support a plausible claim that 10x (or anyone else) has used Xenium to perform the steps of the claimed methods.

only a subset of claim elements are also not enough. "There needs to be some facts alleged that articulate why it is plausible that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so." *See North Star Innovations*, 2017 U.S. Dist. LEXIS 189624, at *5. Vizgen's method of constructing an accused product by combining multiple unrelated statements in the art does not allege facts that demonstrate why it is plausible the "accused product" infringes; at most, it shows it is "possible" that some product might be able to practice the claimed method. That is not sufficient under Supreme Court, Federal Circuit or Third Circuit precedent and, as such, Vizgen fails to state a claim that 10x directly infringes the 303 Patent and its Counterclaim XVI should be dismissed.[2]

### 2. Vizgen's Indirect Infringement Claims Fail Because There Is No Direct Infringement

Even if the Court were to find Vizgen's compilation of academic papers and patent applications sufficient to state a plausible claim that 10x's own use of Xenium infringes, the Counterclaims lack any plausible allegation that it has been sold to or used by a third party. The lack of any assertion by Vizgen of third-party use of Xenium is fatal to Vizgen's indirect infringement claims (*see* CC at 68-70, ¶¶ 264, 266). Without some allegation that the Xenium has been provided to and used by someone in the United States in a manner that directly infringes the method steps of the 303 Patent, Vizgen's indirect infringement claims fail to state a viable claim.

---

[2] This is not a case like *Disc Disease Sols. Inc. v. VGH Sols. Inc.*, 888 F.3d 1256 (Fed. Cir. 2018), where the technology was simple and easily demonstrated with photos, nor like *Presidents and Fellows of Harvard College v. Micron Technology*, No. 16-cv-11249 (D. Mass.), where a commercially available product was available and one missing claim element could only be factually supported through discovery. Here, unlike *Disc Disease*, the claims have multiple steps which are not plausibly supported by Vizgen's allegations. Moreover, unlike *Micron*, Vizgen did not analyze any commercial product because it has not been released, did not make any allegation that the missing steps of the claim are common industry steps, and has not claimed that once the product is released, the accused Xenium process would not be knowable but for confidential discovery.

Vizgen's failure to properly plead any third-party direct infringer in connection with Vizgen's claims for indirect (induced and contributory) infringement is an independent basis for dismissing Vizgen's indirect infringement claims.

It is axiomatic that "[t]here can be no induced or contributory infringement without an underlying act of direct infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Lit.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) (a party cannot be liable for indirect infringement if no one has yet directly infringed the patent in question); *see also, Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement . . . ."); *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp.2d 527 (D. Del. 2011) (to state a claim for indirect infringement there must be direct infringement). Thus, "[t]o survive a Rule 12(b)(6) motion, a patentee must plead facts 'plausibly showing that [the alleged infringer] specifically intended [a third party] to infringe the [patents-in-suit] and knew that the [third [party's] acts constituted infringement.'" *Neology, Inc. v. Kapsch Trafficom IVHS, Inc.*, No. 13-2052-LPS, 2014 U.S. Dist. LEXIS 131568, at *5 (D. Del. Sept. 19, 2014) (*quoting In re Bill of Lading Transmission*, 681 F.3d at 1339).

Here, because liability for indirect infringement requires another to perform the claimed method steps of the 303 Patent, Vizgen's counterclaim cannot plausibly allege either contributory or induced infringement where Vizgen itself alleges that the accused product is not yet commercially available. Allegations that "consumers ***will use*** [the] technology to infringe" (CC at 68, ¶ 264 (emphasis added)) or that 10x is "threatening to sell such technology in the United States" (CC at 69, ¶ 266) are insufficient to state a claim that someone actually used Xenium to infringe

12

and that 10x induced or contributed to such infringement. *See IP Venture Inc. v. Cellco P'ship*, No. C 10-04755 JSW, 2011 U.S. Dist. LEXIS 5955, at *9 (N.D. Cal Jan. 21, 2011) (allegations "that Defendants provided detailed explanations, instruction, and information to potential third parties" not enough to state a claim for indirect infringement); *AgroFresh, Inc. v. EssentivLLC*, No. 16-662-MN, 2019 U.S. Dist. LEXIS 13832 (D. Del. Jan. 29, 2019) (dismissing induced and contributory infringement claims where patent owner did not allege plausible facts to conclude a third party directly infringed); *Callwave Communs. LLC v. AT&T Mobility LLC*, No. 12-1701-RGA, 2014 U.S. Dist. LEXIS 15374, at *9 (D. Del. Jan. 28, 2014) (dismissing indirect infringement claims under Rule 12(b)(6) where the complaint pleaded insufficient facts to find a party other than defendant directly infringes).

This issue was squarely addressed by Judge Stark in *Varian Medical Systems. v. Elekta AB*, No. 15-871-LPS, 2016 U.S. Dist. LEXIS 91226 (July 12, 2016). In *Varian*, plaintiff asserted that Defendant Elekta indirectly infringed Varian's patent by making, marketing, and selling a radiation treatment device called "The Gamma Knife." Elekta moved to dismiss the indirect infringement claims because plaintiff did not adequately plead an underlying act of direct infringement. The defendant claimed that at the time of the complaint, the accused product had recently obtained FDA clearance and had never been installed or operated at a customer site. Thus, plaintiff in *Varian*, like Vizgen here, did not allege any actual third-party use but pleaded only advertising, marketing, and demonstration activity. The Court dismissed plaintiff's indirect infringement claims because there were no facts pleaded that would support a finding that a customer or some other third party had used the accused product in an infringing manner. The Court found the complaint's identification of a general group of possible direct infringers (e.g., customers and prospective customers) was insufficient to support a plausible conclusion that

anyone in those groups actually purchased the accused device and used it in an infringing manner. *Id*. at *12-13.

Likewise, here, Vizgen's Counterclaims acknowledge that the Xenium has not been commercially released and, unsurprisingly, it has not pointed to an alleged infringing third-party use that 10x has induced or contributed to. Speculation about what might happen in the future or allegations that 10x is "threatening to sell such technology in the United States" are not enough to state a plausible claim and Vizgen's indirect infringement claims should, therefore, be dismissed.

### C.     Vizgen's State Law Counterclaims Are Barred by the *Noerr-Pennington* Doctrine and Federal Preemption

Vizgen's Counterclaims IV and V should also be dismissed because Vizgen failed to plead sufficient facts to establish a plausible claim for intentional interference with contractual and advantageous business relations and unfair competition under Massachusetts's consumer protection statute.

First, Vizgen's State Law Counterclaims should be dismissed under Rule 12(b)(6), because the *Noerr-Pennington* doctrine immunizes 10x against such claims unless one of two exceptions applies. Vizgen has not adequately alleged either of those exceptions. Second, the State Law Counterclaims should be dismissed under Rule 12(b)(6) because those claims are preempted by federal law, and Vizgen has failed to plausibly allege objective bad faith, as required to overcome federal preemption.

### 1.     The State Law Counterclaims Should Be Dismissed Because *Noerr-Pennington* Immunity Applies

A party who petitions the government for redress (e.g., by filing a complaint or applying for a patent) is generally immune from certain types of liability because such activity is protected by the First Amendment. *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No. 07-127-LPS, 2011 U.S. Dist. LEXIS 16485 (D. Del. Feb. 18, 2011). This immunity is referred to as the *Noerr-*

*Pennington* doctrine and extends to parties who petition the government including commencing litigation. *Id*. at *6 (citing *Abbot Labs v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 424 (D. Del. 2006)).

Although the *Noerr-Pennington* doctrine arose in the context of antitrust claims, the Federal Circuit, Third Circuit, and courts in this district have held that the doctrine also shields litigants from alleged business torts including state-law claims for intentional interference and unfair competition. *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1581-82 & n.9 (Fed. Cir. 1993) (noting that immunity pursuant to the *Noerr-Pennington* doctrine applied to state unfair competition claims); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 343 F. Supp. 2d 272, 324 & n.74 (D. Del. 2004) (noting that "principles of [*Noerr-Pennington*] are based on a First Amendment right of petition" and thus "those principles also apply to [defendant's] state law theories"); *Newark v. Delmarva Power & Light Co.*, 497 F. Supp. 323, 328 (D. Del. 1980) ("To hold otherwise would be to permit state common law to supersede the right to petition created by the First Amendment and applied to the states by the Fourteenth Amendment."); *Magnetar Techs. Corp.*, 2011 U.S. Dist. LEXIS 16485, at *6-7 (holding that *Noerr-Pennington* bars a counterclaim "based on Plaintiffs' actions in bringing this patent infringement lawsuit and threatening similar legal action against others.").[3]

There are two exceptions to *Noerr-Pennington* immunity— "sham litigation" and alleged *Walker Process* fraud—neither of which have been asserted by Vizgen and both of which would, in any event, be inapplicable here. *See Magnetar Techs. Corp.*, 2011 U.S. Dist. LEXIS 16485, at

---

[3] Courts in other circuits have similarly dismissed state law tortious interference claims like the one asserted here because such claims are barred by the *Noerr-Pennington* doctrine. *See, e.g.*, *Motorola Solutions, Inc. v. In re Innovatio IP Ventures, LLC* (*In re Innovation IP Ventures, LLC Patent Lit.*), 921 F. Supp. 903 (N.D. Ill. 2013) (Holderman, J.).

*7. The "sham litigation" exception is a "narrow" carve out to the *Noerr-Pennington* doctrine. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014). To establish that a patent infringement case is a sham litigation "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Magnetar Techs. Corp.*, 2011 U.S. Dist. LEXIS 16485, at *7 (*quoting Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)). If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, then the suit does not qualify as sham litigation and the act of bringing the suit is immunized under the *Noerr-Pennington* doctrine. *Id*. The objective element requires a counterclaimant to plead, and ultimately prove, that plaintiff lacked probable cause to bring the lawsuit. *Varentec, Inc. v. Gridco, Inc.*, No. 16-217-RGA-MPT, 2017 U.S. Dist. LEXIS 86185 (D. Del. Jun. 6, 2017). If the court were to find the challenged litigation is objectively meritless, the court must then decide whether the "baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor." *Id*. at *19; *see also*, *Prof'l Real Estate*, 508 U.S. at 60-61 (citation omitted). Only if the first prong is established, the Court may then consider the second, subjective prong. *Magnetar Techs. Corp.*, 2011 U.S. Dist. LEXIS 16485, at *9.

Nowhere in the Counterclaims does Vizgen plausibly allege facts that could support a claim that the FAC filed by Harvard and 10x is objectively baseless or that they lacked probable cause to bring it. Nor could they. The State Law Counterclaims thus fail to satisfy what is required under *Twombly/Iqbal* to plausibly allege a sham litigation.

The second exception to *Noerr-Pennington* immunity—*Walker Process* fraud—has also not been alleged and could not apply as a matter of law. To establish a claim based on *Walker Process,* Vizgen would have to plead and show that 10x and Harvard obtained the 10x Asserted

Patents by knowingly and willfully misrepresenting facts to the PTO and that they were aware of the fraud at the time of enforcement of the patents. *See Pac. BioSciences of Cal., Inc. v. Oxford Nanopore Techs, Inc.*, No. 17-275-LPS, 2019 U.S. Dist. LEXIS 25578 (D. Del. Feb. 19, 2019) (Stark, J.). Moreover, "a finding of *Walker Process* fraud . . . must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance *i.e.*, that the patent would not have issued but for the misrepresentation or omission." *Nobelpharma AB. V. Implant Innovations, Inc.*, 141 F.3d 1059, 1071 (Fed. Cir. 1998). Again, the Counterclaims are devoid of any such allegations.

### 2.    The State Law Counterclaims Should Also Be Dismissed Because They Are Barred by Federal Preemption

In addition to being barred by the *Noerr-Pennington* doctrine, Vizgen's state law claims against 10x (Counterclaims IV and V) should be dismissed because federal patent law preempts those claims. "State tort claims against a patent holder, including tortious interference claims, based on enforcing a patent in the marketplace, are 'preempted' by federal patent laws, unless the claimant can show that the patent holder acted in 'bad faith' in the publication or enforcement of its patent." *Wilco AG v. Packaging Techs. & Inspection LLC*, 615 F. Supp. 2d 320, 325 (D. Del. 2009) (quoting *800 Adept., Inc. v. Murex Secs. Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008)). Vizgen has not and cannot set forth plausible allegations of bad faith and its State Law Counterclaims are, consequently, preempted.[4]

The Federal Circuit explained the application of the preemption doctrine in *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004). In that case, Plaintiff Globetrotter sued Elan for patent infringement. Elan counterclaimed, asserting that

---

[4] The law of the Federal Circuit applies in determining whether the patent laws preempt a state-law tort claim. *See, e.g.*, *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008).

Globetrotter's allegations of infringement and its pre-suit letters, sent amid contractual negotiations with a third party over the purchase of the outstanding shares of Elan, gave rise to state law liability for unfair competition and tortious interference. *Id*. at 1371. The Federal Circuit affirmed the district court's summary judgment in favor of Globetrotter, finding that Elan's state law claims would be preempted unless there was a showing of "bad faith" in asserting the infringement claim. *Id.* Similarly here, Vizgen's failure to allege such facts is fatal to its state law claims.

Moreover, the Federal Circuit has held that the showing "[b]ad faith" necessary to defeat preemption includes separate objective and subjective components." *Dominant Semiconductors*, 524 F.3d at 1260. The objective component requires a showing that the infringement allegations are "objectively baseless" such that "no reasonable litigant could reasonably expect success on the merits." *Id.* at 1260. Accordingly, state-law counterclaims based on patent enforcement activity, including state law claims for unfair competition, can survive federal preemption only to the extent those claims are both objectively and subjectively baseless. *Globetrotter Software, Inc.*, 362 F.3d at 1374.

Vizgen's state-law counterclaims are devoid of any factual allegations that could lead to a plausible finding of either objective or subjective bad faith. Although Vizgen baldly asserts that "on information and belief, 10X knowingly worked in bad faith to induce Harvard to alter its patent portfolio to amend" its applications (CC at 47, ¶ 121), "shift its patent prosecution" (CC at 47, ¶ 123), "target Vizgen and its products" (CC at 50, ¶ 138), and assert infringement claims against Vizgen, the Counterclaims do not even attempt to claim that the allegations against Vizgen are either objectively or subjectively baseless. Such bald assertions cannot state a plausible claim. *See Iqbal*, 556 U.S. at 678 (emphasizing that "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice"). Nor can Vizgen plausibly claim that 10x and Harvard's patent prosecution activity is evidence of any bad faith. Even if Vizgen's assertions were true, the Federal Circuit has clearly stated that "there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235 (Fed. Cir. 1985)).

Vizgen's lack of a plausible allegation that the patent infringement claims asserted by 10x and Harvard are objectively or subjectively baseless is fatal to Vizgen's State Law Counterclaims, which are preempted by Federal law and should be dismissed. *See PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. 16-403-LPS-CJB, 2017 U.S. Dist. LEXIS 140636 (D. Del. Aug. 31, 2017) (holding unfair competition counterclaim was preempted by federal law where counterclaimant failed to sufficiently plead objective bad faith); *E.I. Dupont De Nemours & Co. v. Unifrax I LLC*, No. 14-1250-RGA, 2015 U.S. Dist. LEXIS 102348, at *4 (D. Del. Aug. 5, 2015) (dismissing Delaware unfair competition counterclaims based on patentee's "purported bad faith in bringing the lawsuit and telling [d]efendant's customer(s) about the lawsuit" as preempted by federal patent law where defendant did not plausibly allege objective baselessness); *Wilco AG*, 615 F. Supp. 2d at 325 (D. Del. 2009) (dismissing state law tort claims as preempted by federal law where the "pleading does not contain enough factual matter to suggest bad faith").

## V.   CONCLUSION

For the reasons set forth above, Counterclaims IV, V, and XVI of Vizgen's Counterclaims should be dismissed. These counterclaims fail to meet the pleading requirements of the Federal

Rules of Civil Procedure 8(a), fail to state a claim upon which relief can be granted under Federal

Rule of Civil Procedure 12(b)(6), and are barred by the *Noerr-Pennington* doctrine and federal

preemption.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Cameron P. Clark*

OF COUNSEL:

_____

Karen Jacobs (#2881)

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
TENSEGRITY LAW GROUP LLP
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA  94065
(650) 802-6000

Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff 10x Genomics, Inc.*

Samantha Jameson
Ronald J. Pabis
Kiley White
TENSEGRITY LAW GROUP LLP
8260 Greensboro Dr.
Suite 260
McLean, VA  22102-3848
(650) 802-6000

October 27, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 27, 2022, upon the following in the manner indicated:

James L. Higgins, Esquire                                  *VIA ELECTRONIC MAIL*
Pilar G. Kraman, Esquire
Taylor E. Hallowell, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendant Vizgen, Inc.*

David Bilsker, Esquire                                     *VIA ELECTRONIC MAIL*
Sam Stake, Esquire
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
*Attorneys for Defendant Vizgen, Inc.*

Kevin P.B. Johnson, Esquire                               *VIA ELECTRONIC MAIL*
Victoria F. Maroulis, Esquire
Andrew Bramhall, Esquire
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA  94065
*Attorneys for Defendant Vizgen, Inc.*

Angus Chen, Ph.D.                                         *VIA ELECTRONIC MAIL*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
*Attorneys for Defendant Vizgen, Inc.*

Patrick D. Curran, Esquire                                    *VIA ELECTRONIC MAIL*
Eric D. Wolkoff, Esquire
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA  02199
*Attorneys for Defendant Vizgen, Inc.*

Kenneth L. Dorsney, Esquire                                   *VIA ELECTRONIC MAIL*
Cortlan S. Hitch, Esquire
MORRIS JAMES LLP
500 Delaware Ave., Suite 1500
Wilmington, DE 19801-1494
*Attorneys for Plaintiff*
*President and Fellows of Harvard College*

Geoffrey M. Raux, Esquire                                     *VIA ELECTRONIC MAIL*
Ruben J. Rodrigues, Esquire
Michael J. Tuteur, Esquire
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA  02199
*Attorneys for Plaintiff*
*President and Fellows of Harvard College*

/s/ Cameron P. Clark

Cameron P. Clark (#6647)