**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| 10x GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Plaintiffs,<br><br>         v.<br><br>VIZGEN, INC.,<br><br>    Defendant. | C.A. No. 22-595-MFK |
| VIZGEN, INC.,<br><br>         Counterclaim-Plaintiff,<br><br>and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>         Counterclaim-Plaintiff as to certain claims,<br><br>              v.<br><br>10x GENOMICS, INC.,<br><br>         Counterclaim-Defendant as to certain claims,<br><br>and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>         Counterclaim-Defendant as to certain claims. | |

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF VIZGEN'S OPENING BRIEF IN
SUPPORT OF MOTION TO STAY**

OF COUNSEL:

David Bilsker (*pro hac vice*)
Sam Stake (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

Kevin Johnson (*pro hac vice*)
Victoria Maroulis (*pro hac vice*)
Andrew Bramhall (*pro hac vice*)
Brian Cannon (*pro hac vice pending*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
(650) 801-5000

Angus Chen (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Patrick D. Curran (*pro hac vice*)
Eric D. Wolkoff (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100

James L. Higgins (No. 5021)
Pilar G. Kraman (No. 5199)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jhiggins@ycst.com
pkraman@ycst.com

*Attorneys for Defendant and
Counterclaim-Plaintiff Vizgen, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................1

II.     NATURE AND STAGE OF PROCEEDINGS .................................................................3

III.    STATEMENT OF FACTS ..............................................................................................3

IV.     LEGAL STANDARD.....................................................................................................8

V.      ARGUMENT.................................................................................................................10

      A.      Resolution of Unclean Hands and License Will Simplify Issues For Trial
           and May Moot 10x and Harvard's Infringement Claims in Their Entirety ..........10

      B.      The Case Is Still in Its Early Stages, And Harvard and 10x Just Filed a
           Second Amended Complaint Asserting a New Patent...........................................11

      C.      A Stay Will Not Unduly Prejudice or Present a Clear Tactical
           Disadvantage to Harvard or 10x, and Would Instead Provide the Parties
           Clarity and a Potentially Swift Resolution............................................................12

      D.      Vizgen Will Face Hardship and Inequity if the Stay is Denied............................13

VI.     CONCLUSION..............................................................................................................14

## **TABLE OF AUTHORITIES**

### **Cases**

*AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, C.A. No. 17-CV-01065-MSG-RL,
   2019 WL 917990 (D. Del. Feb. 25, 2019) ................................................................................ 9

*Advanced Micro Devices, Inc. v. Mediatek Inc*., C.A. No. 19-70-CFC,
   2019 WL 4082836 (D. Del. Aug. 29, 2019) ............................................................................. 8

*Air Prods. & Chems., Inc. v. Reichhold Chems., Inc.*, 755 F.2d 1559 (Fed. Cir. 1985).............. 10

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 733 F. Supp. 2d 517 (D. Del. 2010)........... 9

*Comrie v. Enterasys Networks, Inc.*, C.A. No. 19254,
   2004 WL 293337 (Del. Ch. Feb. 17, 2004) ............................................................................. 9

*Ever Win Int'l Corp. v. Radioshack Corp*., 902 F. Supp. 2d 503 (D. Del. 2012) ........................ 13

*Gilead Scis., Inc. v. Merck & Co., Inc*., 888 F.3d 1231(Fed. Cir. 2018) ...................................... 9

*IOENGINE, LLC v. PayPal Holdings, Inc*., C.A. No. 18-452-WCB,
   2019 WL 3943058 (D. Del. Aug. 21, 2019) ........................................................................... 11

*Jim Arnold Corp. v. Hydrotech Sys., Inc*., 109 F.3d 1567 (Fed. Cir. 1997) ................................ 10

*Landis v. N. Am. Co*., 299 U.S. 238 (1936) ................................................................................... 8

*Microsoft Corp. v. Motorola, Inc*., 696 F.3d 872 (9th Cir. 2012)................................................. 11

*Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993 (W.D. Wash. 2012) ............................... 9

*Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089 (W.D. Wash. 2012) ........................... 11

*Mike Murphy's Enters., Inc. v. Fineline Indus., LLC*, C.A. No. 1:16-CV-784-LJO-SAB,
   2016 WL 6441607 (E.D. Cal. Oct. 31, 2016 ......................................................................... 12

*Oracle Corp. v. Parallel Networks, LLP*, C.A. No. 06-414-SLR,
   2010 WL 3613851 (D. Del. Sept. 8, 2010) ............................................................................. 11

*Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, C.A. No. 17-1734-RGA,
   2021 WL 982726 (D. Del. Mar. 16, 2021) ............................................................................... 9

*Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395 (D. Del. 2009) ................. 9

*Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 186 F. Supp. 3d 870 (N.D. Ill. 2016) ............. 13

*UCB, Inc. v. Hetero USA Inc*., 277 F. Supp. 3d 687 (D. Del. 2017) ................................. 8, 12, 13

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc*., C.A. No. 12-05501-SI,
   2015 WL 435457 (N.D. Cal. Feb. 2, 2015) ............................................................................ 12

*Wireless Spectrum Techs., Inc. v. Motorola Corp.*, C.A. No. 00-0905,
   2001 WL 32852 (N.D. Ill. Jan. 12, 2001) .............................................................................. 10

*Zebra Techs. Corp. v. Typenex Med., LLC*, C.A. No. 18-4711,
   2018 WL 6567076 (N.D. Ill. Dec. 13, 2018) ......................................................................... 12

Defendant and Counterclaim-Plaintiff Vizgen, Inc. ("Vizgen") respectfully requests this Court stay all claims in this case and proceed only on Vizgen's assertion of unclean hands and license against Plaintiffs and Counterclaim-Defendants President and Fellows of Harvard College ("Harvard") and 10x Genomics, Inc. ("10x").  The basis for the stay is newly discovered evidence from Vizgen's FOIA request demonstrating Harvard's commitment to "open and non-exclusive licenses" for the patents asserted against Vizgen that it hid from Vizgen and the public for years.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

In 2010, the federal government's National Institutes of Health ("NIH") awarded Harvard over $19 million in funding for a five-year grant.  With that massive grant, Harvard and its principal investigator George Church founded a new research group, conducted work, and obtained patents.  When the grant term was up, Church founded a company that received *exclusive* patent rights from Harvard—a lucrative transfer.  Church later sold his company to 10x for $400 million.  Harvard and 10x brought this action to sue Vizgen for allegedly practicing the inventions that Church developed at Harvard with public money.  Harvard never made the full grant documents public, forcing Vizgen to file a FOIA request.  The results of that FOIA request led to this motion.

Long hidden by Church and Harvard is that Harvard committed to the NIH to "*open and non-exclusive licenses*" for the patents it and 10x now assert.  Further, Harvard hid that the NIH expressly conditioned its grant on this open license promise.  Harvard hid its promises by submitting only a truncated portion of the grant application to the patent office—cutting off the key pages where it made the licensing commitment.  Harvard and Church violated their promises by *exclusively* licensing the patents, depriving the public of rights while maximizing their own profits.  Indeed, Harvard's attorneys actively discouraged Vizgen from pursuing its FOIA request.

The reasons are clear in retrospect.

The new evidence in the FOIA production leads to two case-ending issues.  First, the Church patents are unenforceable due to Harvard and 10x's unclean hands, as well as the affirmative defense of license.  Second, Vizgen is a third-party beneficiary of Harvard's commitments to the NIH; Vizgen is entitled to a non-exclusive license.  Vizgen therefore moves for a short stay in order to resolve the gating questions of enforceability and license, either of which will resolve all claims under the five Church patents.

The proposed stay, suspending all other claims, is a fair result for all parties given the importance of and judicial efficiency stemming from the unclean hands and license issues. Harvard should not be permitted to make commitments to obtain public funding, and then hide them for years in order to profit from an exclusive licensing scheme.  It is a betrayal of the public trust as well as the patent system.

All relevant factors favor a stay: First, a stay will significantly narrow the issues while avoiding extensive patent litigation.  Second, this case is in its early stages: pleadings are not complete, Harvard just added ***another*** patent, and neither depositions nor claim construction have begun.  Third, a stay would not unduly prejudice Harvard or 10x and would instead allow resolution of key gating issues based on new evidence—evidence that Harvard and 10x sat on even after filing this case.  Fourth, Vizgen, a direct beneficiary of Harvard's promises and a start-up in a nascent marketplace, raising capital and trying to place products in research labs, faces undue hardship and irreparable harm having to defend itself against patents that never should have been asserted in the first place.

## II.   NATURE AND STAGE OF PROCEEDINGS

Harvard and 10x filed this action against Vizgen on May 3, 2022, for patent infringement for five different patents.  (D.I. 1).  Harvard and 10x then filed a First Amended Complaint.  (D.I. 16).  Vizgen filed its Answer, Defenses, and Counterclaims (D.I. 29; *see also* D.I. 54), followed by an Amended Answer, Defenses, and Counterclaims (D.I. 71).  Since the start of the case, the parties have also filed respective motions to dismiss, on which the Court has issued rulings.  (*See* D.I. 46 (denying Vizgen's Mot. to Dismiss); D.I. 114 (denying in part and granting in part Harvard's Mot. to Dismiss and denying 10x's Mot. to Dismiss)).

On March 15, 2023, Harvard and 10x filed a Second Amended Counterclaim, dropping one from the action and asserting an entirely new patent—U.S. Patent No. 11,549,136—against Vizgen.  (D.I. 123).  On April 17, 2023, Vizgen is filing its Answer, Defenses, and Counterclaims. (D.I. 138).  No depositions have occurred.  The parties have not exchanged claim construction positions and no claim construction briefing has occurred.

Harvard and 10x have asserted the same Church patents in another case before this Court. *10x Genomics*, *Inc. et al. v. NanoString Tech., Inc.*, C.A. No. 22-cv-00261-MFK (D. Del.).  Vizgen understands that NanoString will not oppose this motion.

## III.   STATEMENT OF FACTS[1]

Each of the five Harvard patents asserted against Vizgen list George Church as an inventor.[2]  Church is a Professor of Genetics at the Harvard Medical School.  He leads the "Church Lab" and helped initiate the Human Genome Project in 1984 and the Personal Genome Project in

---

[1]      The facts are primarily drawn from Vizgen's Counterclaims (D.I. 138).

[2]      Harvard and 10x's Second Amended Complaint, D.I. 123 ¶¶ 23, 25, 27, 29, 31; United States Patent Nos.:11,021,737; 11,293,051; 11,293,052; 11,299,767; and 11,549,136.

2005.[3]  In 2009, Church and Harvard applied to the federal government for public money to underwrite a new Center for Transcriptional Consequences of Human Genetic Variation ("CTCHGV").  (Ex. 1, May 19, 2009 Grant Application).[4]  On September 12, 2010, the NIH agreed to fund the five-year project—over $19 million in public money.  (Def.'s Countercl., D.I. 138 ¶ 29).  In due course, on December 22, 2011, Harvard filed the first of the patent applications that gave rise to all of the patents now being asserted against Vizgen.  (Id. ¶ 36).

But the full grant documents were not public—and Harvard fought to keep it that way.  The patents themselves (see, e.g., D.I. 123-1 at 1:30–34) listed the NIH grant number pursuant to the requirements of the Bayh-Dole Act.  (Def.'s Countercl., D.I. 138 ¶ 125).  But Harvard strategically hid the crucial portions of its grant application from the public.  For instance, it submitted a truncated version of the grant application to the patent office.  (D.I. 138 ¶ 33).

Even after this lawsuit was filed, Harvard sought to suppress the grant documents.  On September 22, 2022, Vizgen filed a FOIA request to obtain the full grant documents.  (Id. ¶ 125).  Once aware of Vizgen's FOIA request, Harvard's attorneys repeatedly attempted to convince Vizgen to withdraw the request.  (Id.).  When Harvard finally produced the grant materials, it designated the portions of the grant application containing the key promises it made to the NIH with the highest confidentiality level—"OUTSIDE ATTORNEYS' EYES ONLY."  (Id.).  On February 8, 2023, Vizgen's FOIA request was finally granted and Vizgen received the public grant

---

[3]      www.wyss.harvard.edu/team/core-faculty/george-church (last accessed April 25, 2023).

[4]      Exhibit 1 includes the key pages of the grant application quoted in this Motion. The full version of the grant application can be found at D.I. 138-1 to 138-2.  All other exhibits references herein are to the exhibits to Vizgen's Answer and Counterclaims. (See D.I. 138-1 to 138-10).

application.   (*Id.* ¶ 126).   Only then did Harvard finally offer to remove the "OUTSIDE ATTORNEYS' EYES ONLY" designation from its version of the grant application.   (*Id.*).[5]

When Vizgen reviewed the grant documents, it was apparent why Harvard discouraged the FOIA request.  In the grant application, Church and Harvard committed to provide open source and non-exclusive rights for all innovations arising from the NIH funding.  This is the exact opposite approach of what Church and Harvard did in reality.  For example, on page 131 of the grant application, Church and Harvard committed their proposed center (the CTCHGV) to "open and non-exclusive licensing agreements" to encourage wide adoption of any innovations:

> **Commercialization:**  As described above, CTCHGV will pursue open and non-exclusive licensing agreements that encourage innovations to be made widely available to researchers and commercial entities. Professor Church has been on the Harvard-wide Copyright and Patent Committee (CPC) for years, a recipient of numerous successful patents, and is in constant contact with the HMS Office of Technology Licensing (OTL).  More generally, we will encourage close relationships with companies who can promote broad usage of innovations by incorporating them with other technology into readily usable packages and applications. Professor Church is currently on Scientific Advisory Boards of fifteen companies and has maintained close relationships with many others. He will use these close relationships to encourage companies to adapt CTCHGV innovations into their products, as he did in the prior MGI CEGS.

(Ex. 1, May 19, 2009 Grant Application at 131; Def.'s Countercl., D.I. 138 ¶ 26).

Moreover, on page 133 of their grant application, Church and Harvard committed to resource sharing and "open-source standards … for technology generally":

> **Resource Sharing Plan**
>
> Our proposed CTCHGV CEGS will generate several resources of potentially great value to the research community which we plan to make available to the community to the extent possible.  We have described these plans and resources in our Data and Materials Dissemination Plan (DMDP) and briefly summarize them here.
>
> **Open-source policy:** The Church Lab adheres to open-source standards to the extent possible as a matter of policy, for software, data, materials, and technology generally. Please refer to the DMDP for additional details.

(Ex. 1, May 19, 2009 Grant Application at 133; Def.'s Countercl., D.I. 138 ¶ 24).

---

[5]   Harvard nonetheless continues to insist that its version of the grant papers are "CONFIDENTIAL."  (Def.'s Countercl., D.I. 138 ¶ 126).

The "DMDP" referred to above is a "Data and Materials Dissemination Plan" and on page 130 of the grant application, Church and Harvard describe their commitment to "Open Source Biology" to encourage "technology transfer" with the goal to "prevent exclusive licenses":

**Data and Materials Dissemination Plan**

    **Software, protocol, and data sharing.** Following principles also followed in the prior MGI CEGS, CTCHGV will openly share software, protocols and data. Programs and data will be distributed from Church Lab website (http://arep.med.harvard.edu/), with data related to human subjects distributed as described below. Programs will be generally available as documented source code with a Harvard and/or UCSD copyright, distributed freely to academics, and with a Harvard and/or UCSD license for commercial use. In line with long-standing Church Lab commitments, we continue to champion concepts that we helped establish for the genome sequencing community that encourage rapid data deposition and technology transfer, such as "Open Source Biology" (OSB) which determines procedures and technologies to aid the distribution of complex reagents more effectively. The related goal of OSB is to prevent exclusive licenses from potentially interfering with technology transfer. In this regard, we will try to move our technology either into the public domain or non-exclusive licensing mechanisms well before they would be normally publishable. Just as genomics has made

(Ex. 1, May 19, 2009 Grant Application at 130; Def.'s Countercl., D.I. 138 ¶ 25).

And on page 133 of the grant application, Church and Harvard repeated their commitment to "open and non-exclusive licenses" for the innovations developed by Church and his colleagues at the proposed center:

    **Commercialization:** To broaden the availability to the research community of innovations developed by CTCHGV, the Church Lab will work with the Harvard Medical School Office of Technology Licensing to obtain open and non-exclusive licenses that will encourage commercialization of these innovations. Please refer to the DMDP for additional details.

(Ex. 1, May 19, 2009 Grant Application at 133; Def.'s Countercl., D.I. 138 ¶ 27).

The NIH made Church and Harvard's commitments a material condition of the grant. On September 12, 2010, the NIH awarded the grant and referred to the very pages on which Church and Harvard promised open and non-exclusive licenses—the very pages Church and Harvard removed from the public version of the grant application:

4. Compliance with the data and materials sharing and release plans, described on pages 117-118 and 130-133 of the grant application is a condition of this award. Failure to comply with these plans may result in termination of the award.

(Def.'s Countercl., D.I. 138 ¶ 30; D.I. 138-3 (Ex. 2 to Def.'s Countercl., Sept. 12, 2010 Notice of Award at 3, ¶ 4)).

Two months later, on November 3, 2010, when the NIH issued a Revised Notice of Award to Church and Harvard, it repeated the very same statement.  (Def.'s Countercl., D.I. 138 ¶ 31 (quoting Nov. 3, 2010 Notice of Award ("Compliance with the data and materials sharing and release plans, described on pages 117-118 and 130-133 of the grant application is a condition of this award.")).  In fact, time and time again over the duration of the grant, the NIH repeated this precise statement in periodic Notices of Award, reminding Harvard and Church that their compliance with the promises made in the grant application was a material condition to the government funding.  (Def.'s Countercl., D.I. 138 ¶ 32).

Despite their promises for open and non-exclusive licensing, Church and Harvard did the opposite.  In 2016, Church founded a company and Harvard granted that company ***exclusive*** rights to the patents arising from the NIH-funded research.[6]  (*Id.* ¶¶ 54–55).  In October 2020, Church sold his company to 10x for over $400 million.[7]  (*Id.* ¶ 95). The acquisition led to this lawsuit in which 10x and Harvard seek to enforce the Church patents to shut down Vizgen's innovative work.

Shortly after receiving the FOIA material, Vizgen sought a license from Harvard and 10x. Specifically, on March 16, 2023, Vizgen wrote: "Pursuant to the promise made at pages 117, 131, and 133 of the application resulting in grant number 1 P50 HG005550, please provide Vizgen, within ten business days, the terms for a reasonable non-exclusive license to the asserted patents." (*Id.* ¶ 129; D.I. 138-7 (Ex. 6 to Def.'s Countercl., Email from A. Chen to R. Rodrigues *et al.*)). On March 30, 2023, Harvard and 10x flatly refused to provide such terms, stating "the asserted

---

[6]     *See* 10x Genomics, Inc., Annual Report (Form 10-K) (Feb. 26, 2021), https://www.annualreports.com/HostedData/AnnualReportArchive/1/NASDAQ_TXG_2020.pdf.

[7]     10x Genomics, Inc., Annual Report (Form 10-K) (Feb. 28, 2022), https://www.sec.gov/Archives/edgar/data/1770787/000177078722000015/txg-20211231.htm, at 79 ("[10x] purchased all of the outstanding shares of ReadCoor, a privately held company based in Cambridge, Massachusetts, for $407.4 million.").

patents have been exclusively licensed to 10x."  (D.I. 138 ¶ 129; D.I. 138-7 (Ex. 6 to Def.'s Counterl., Email R. Rodrigues to A. Chen *et al*.)).

* * *

As further detailed in Vizgen's Answer, Defenses, and Counterclaims, the newly uncovered evidence relating to the grant application forms the basis of Vizgen's affirmative defenses of unclean hands and license, as well as Vizgen's Counterclaim XXII for Breach of Contract as a Third-Party Beneficiary.[8]  Vizgen now seeks a brief stay for resolution of these issues, which present threshold issues in this litigation.[9]

## IV.   <u>LEGAL STANDARD</u>

This Court has broad discretion to stay proceedings in order "to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Advanced Micro Devices, Inc. v. Mediatek Inc*., C.A. No. 19-70-CFC, 2019 WL 4082836, at *2 (D. Del. Aug. 29, 2019) (quoting *Landis v. N. Am. Co*., 299 U.S. 238, 254 (1936)).  "In exercising this discretion, the Court must weigh the competing interests of the parties and attempt to maintain an even balance."  *UCB, Inc. v. Hetero USA Inc*., 277 F. Supp. 3d 687, 690 (D. Del. 2017) (citing *Landis*, 299 U.S. at 254–55 (1936)).

Courts in this District "typically rely on three factors in determining whether a stay is appropriate: (1) whether a stay will simplify the issues for trial, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party."  *UCB, Inc.*, 277 F. Supp. 3d at 690.  "Sometimes

---

[8]    Vizgen also brings antitrust and other counterclaims that are independent of and do not depend on these defenses. *See* Def.'s Countercl., D.I. 138.

[9]    Harvard and 10x's concealment also underlies part—but only part—of Vizgen's antitrust and unfair competition counterclaims.  Vizgen does not, however, seek to litigate those counterclaims during the pendency of the requested stay.

8

courts also consider whether the moving party would face hardship or inequity in going forward with the litigation." *Id.*

"Unclean hands" renders patents unenforceable. *Gilead Scis., Inc. v. Merck & Co., Inc.*, 888 F.3d 1231 (Fed. Cir. 2018) (affirming unenforceability of patents due to determination of unclean hands based on pre-litigation and litigation business misconduct); *see also AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, C.A. No. 17-CV-01065-MSG-RL, 2019 WL 917990, at *2 (D. Del. Feb. 25, 2019) ("'Unclean hands' is a defense to a cause of action for infringement.").

"To establish an unclean hands defense, defendants must show that "(1) a party seeking affirmative relief (2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to the matter in issue (4) that injures the other party (5) and affects the balance of equities between the litigants." *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, C.A. No. 17-1734-RGA, 2021 WL 982726, at *12 (D. Del. Mar. 16, 2021) (quoting *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 410 (D. Del. 2009)).

"A patent license, express or implied, is a defense to patent infringement." *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 733 F. Supp. 2d 517, 540 (D. Del. 2010). Thus, an open and non-exclusive license agreement provides a right to use the intellectual property at issue, without liability for infringement. Third-party beneficiaries to a contract have "an enforceable right under contracts conferring a benefit to them, even though they are not parties to those contracts." *Comrie v. Enterasys Networks, Inc.*, C.A. No. 19254, 2004 WL 293337, at *2 (Del. Ch. Feb. 17, 2004). *See also Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993, 999 (W.D. Wash. 2012) (technology implementer had third-party beneficiary rights to a license where patent owner committed to standards body that it would license its patents on reasonable terms).

## V.     ARGUMENT

### A.     Resolution of Unclean Hands and License Will Simplify Issues For Trial and May Moot 10x and Harvard's Infringement Claims in Their Entirety

Harvard and 10x's assertion of five separate patents, as well as Vizgen's counterclaims, raise, *inter alia*, a host of wide-ranging technical issues—from claim construction to tutorials to validity and market analysis and beyond.  By contrast, license and unclean hands stemming from Harvard's commitments to the NIH are legally straightforward and apply to all of Harvard and 10x's asserted patents.  Resolving these threshold issues—which can be decided following limited discovery and in an expedited timeframe relative to the current schedule—may moot entirely Harvard and 10x's claims and, at a minimum, simplify any remaining issues for trial.

In particular, with respect to Vizgen's claim that Harvard must provide it a reasonable, non-exclusive license pursuant to its promises to the NIH, the Federal Circuit has recognized, "in cases where a license is pled as a defense[,] the most expeditious conduct of the trial would necessitate that the license issue be resolved first, for if the license issue is resolved in defendant's favor the infringement issue is mooted." *Jim Arnold Corp. v. Hydrotech Sys., Inc*., 109 F.3d 1567, 1577 (Fed. Cir. 1997) (quoting *Air Prods. & Chems., Inc. v. Reichhold Chems., Inc.*, 755 F.2d 1559, 1563 (Fed. Cir. 1985)).  *See also Wireless Spectrum Techs., Inc. v. Motorola Corp.*, C.A. No. 00-0905, 2001 WL 32852, at *2 (N.D. Ill. Jan. 12, 2001) ("equities" and "interest of judicial economy and conservation of the parties' resources" favored a stay pending patent office proceedings, as patent office's "determination will either dispose of [the infringement] case entirely or at least aid the Court in adjudicating this case.").

Likewise, in *Microsoft Corp. v. Motorola, Inc.*, the District Court for the Western District of Washington stayed all pending actions (including issuing an anti-suit injunction to stop overseas actions) so that the Court could consider Microsoft's defense as a third-party beneficiary regarding

commitments that Motorola made to standards setting organizations that Motorola would license

its patents. 871 F. Supp. 2d 1089, 1098 (W.D. Wash. 2012). The 9th Circuit affirmed. *Microsoft*

*Corp. v. Motorola, Inc*., 696 F.3d 872, 889 (9th Cir. 2012).

**B.    The Case Is Still in Its Early Stages, And Harvard and 10x Just Filed a
Second Amended Complaint Asserting a New Patent**

The second factor—the status of the litigation and whether discovery is complete and a

trial date has been set—also weighs in favor of a stay. The case is still in its early stages: just over

a month ago, on March 15, 2023 Harvard and 10x filed a Second Amended Complaint, asserting

for the first time a new Church patent.[10] (D.I. 123). *See IOENGINE, LLC v. PayPal Holdings,*

*Inc*., C.A. No. 18-452-WCB, 2019 WL 3943058, at *5–7 (D. Del. Aug. 21, 2019) (status of

litigation factor weighed in favor of stay; even though claim construction briefing was

"completed," court noted that non-movant recently sought to amend its claims and assert a new

patent and that "the most burdensome stages of the cases—completing discovery, preparing expert

reports […]—all l[ay] in the future.").

As a result of Harvard and 10x's injection of a new patent into the litigation, the parties

recently submitted, and the Court adopted, a new case schedule, which sets the close of fact

discovery and expert discovery on March 15, 2024 and June 21, 2024, respectively, and a trial date

of November 12, 2024. (D.I. 137 at 3). Indeed, the parties have not yet started claim construction,

conducted depositions, or exchanged export reports. *Compare Oracle Corp. v. Parallel Networks,*

*LLP*, C.A. No. 06-414-SLR, 2010 WL 3613851, at *2 (D. Del. Sept. 8, 2010) (status of litigation

weighed against a stay, as motion was filed "years into the ... litigation" after fact and expert

discovery, claim construction and summary judgment were completed").

---

[10]    The newly-asserted patent is also subject to the same promises to the NIH, as it also cites
the grant on its face. (Def.'s Countercl., D.I. 138 ¶ 44).

Given Plaintiffs' recently-filed Second Amended Complaint, Vizgen's just-filed Answer, Defenses, and Counterclaims (which rely on the newly-available evidence discussed herein), and the nascent stage of discovery, this litigation is at an appropriate inflection point for a brief stay to determine the unclean hands and license issues.

C.     **A Stay Will Not Unduly Prejudice or Present a Clear Tactical Disadvantage to Harvard or 10x, and Would Instead Provide the Parties Clarity and a Potentially Swift Resolution**

Granting a short stay to resolve the unclean hands and license issue would not unduly prejudice Harvard and 10x, nor would it provide Vizgen a "clear tactical advantage." *UCB, Inc.*, 277 F. Supp. 3d at 691.  With respect to this factor, "[c]ourts have repeatedly found no undue prejudice [to a patentee] unless the patentee makes a specific showing of prejudice beyond the delay necessarily inherent in any stay." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc*., C.A. No. 12-05501-SI, 2015 WL 435457, at *4 (N.D. Cal. Feb. 2, 2015) (citing cases).

Far from prejudicing Harvard and 10x or providing any improper advantage to Vizgen, a brief stay would allow resolution of key gating issues and would potentially save all parties from years of costly, time-intensive, and unnecessary litigation.  *See Mike Murphy's Enters., Inc. v. Fineline Indus., LLC*, C.A. No. 1:16-CV-784-LJO-SAB, 2016 WL 6441607, at *2 (E.D. Cal. Oct. 31, 2016) (staying state court action in which defendant alleged asserted patents were licensed because "if the state court finds that [Defendant was] licensed [...] then [Plaintiff's] patent infringement claims in this case fail."); *Zebra Techs. Corp. v. Typenex Med., LLC*, C.A. No. 18-4711, 2018 WL 6567076, at *4 (N.D. Ill. Dec. 13, 2018) (granting stay of patent infringement case for license issue to be resolved in other forum, given that "resolution of the threshold issue" of whether plaintiffs were licensed and protected by a covenant not to sue would "reduce the burden of litigation on both the parties and the Court").

12

Moreover, although Vizgen launched its product, the MERSCOPE platform, in March 2021, (Def.'s Answer., D.I. 138 ¶ 18), Harvard and 10x did not bring suit until more than a year later in May 2022. Harvard and 10x have also never sought a preliminary injunction—a fact that undercuts any claim of undue prejudice and further weighs in favor of a stay. *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 511 (D. Del. 2012) (Plaintiff's failure to seek preliminary injunction weighed in favor of stay, as it "suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 186 F. Supp. 3d 870, 878 (N.D. Ill. 2016), *aff'd sub nom. Trading Techs. Int'l, Inc. v. Rosenthal Collins Grp., LLC*, 669 F. App'x 568 (Fed. Cir. 2016) (collecting cases for proposition that failure to pursue a preliminary injunction undercuts a claim of undue prejudice in a stay analysis).

Finally, Harvard and 10x knew of the promises and representations made in the grant papers, yet failed to disclose that information at any point until faced with imminent disclosure via Vizgen's FOIA request.  Under these circumstances, Harvard and 10x are in no position to claim that a short stay to resolve unclean hands and license, which hinge on that exact information, will cause them undue prejudice.  Indeed, it is not unfair for Harvard to have to defend its conduct here.

### D.    Vizgen Will Face Hardship and Inequity if the Stay is Denied

The final relevant factor, whether Vizgen as the moving party would "face hardship or inequity" in going forward with the litigation, also weighs heavily in favor of the stay.  *UCB, Inc.*, 277 F. Supp. 3d at 690.  Vizgen should not have to litigate the infringement case at all in light of Plaintiffs' conduct, and Vizgen will face significant "inequity" if it is forced to pursue its unclean hands defense and its license defense and counterclaim in parallel with defending against Plaintiffs' infringement claims.  As noted, Vizgen alleges that Harvard and 10x have engaged in various and serious misconduct directly related to their infringement claims and that the Church

patents are therefore unenforceable against Vizgen.  In addition, Vizgen alleges that it is entitled to a non-exclusive license from Harvard pursuant to Harvard's recently-revealed promise to the NIH, to which Vizgen is a third-party beneficiary.  Yet absent a stay, Vizgen will be forced to defend itself in costly and time-consuming litigation against Harvard and 10x's patent infringement claims, all the while maintaining affirmative defenses and a counterclaim that have the potential to resolve and moot the infringement case entirely.

Particularly in light of Vizgen's status as an early-stage company in an emerging market, not granting a stay and thereby delaying resolution of the unclean hands and license issues carries a significant risk of erosion of Vizgen's goodwill in the marketplace and loss of market share.  A brief stay during which Vizgen may press and obtain resolution of these two defenses is the most appropriate way to avoid this undue hardship and inequity.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Vizgen's Motion to Stay.

Dated: April 25, 2023

O<small>F</small> C<small>OUNSEL</small>:

David Bilsker (*pro hac vice*)
Sam Stake (*pro hac vice*)
Q<small>UINN</small> E<small>MANUEL</small> U<small>RQUHART</small> & S<small>ULLIVAN</small>, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

Kevin Johnson (*pro hac vice*)
Victoria Maroulis (*pro hac vice*)
Andrew Bramhall (*pro hac vice*)
Brian Cannon (*pro hac vice pending*)
Q<small>UINN</small> E<small>MANUEL</small> U<small>RQUHART</small> & S<small>ULLIVAN</small>, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
(650) 801-5000

Angus Chen (*pro hac vice*)
Catherine Mattes (*pro hac vice*)
Q<small>UINN</small> E<small>MANUEL</small> U<small>RQUHART</small> & S<small>ULLIVAN</small>, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Patrick D. Curran (*pro hac vice*)
Eric D. Wolkoff (*pro hac vice*)
Q<small>UINN</small> E<small>MANUEL</small> U<small>RQUHART</small> & S<small>ULLIVAN</small>, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100

Respectfully submitted,

*/s/ Pilar G. Kraman*
James L. Higgins (No. 5021)
Pilar G. Kraman (No. 5199)
Y<small>OUNG</small> C<small>ONAWAY</small> S<small>TARGATT</small> & T<small>AYLOR</small>, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jhiggins@ycst.com
pkraman@ycst.com

*Attorneys for Defendant and*
*Counterclaim-Plaintiff Vizgen, Inc.*

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 25, 2023, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Kenneth L. Dorsney
Cortlan S. Hitch
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
kdorsney@morrisjames.com
chitch@morrisjames.com

Karen Jacobs
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
kjacobs@morrisnichols.com
cclark@morrisnichols.com

Geoffrey M. Raux
Ruben J. Rodrigues
Michael J. Tuteur
Foley & Lardner LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199

Samantha Jameson
Kiley White
Ron Pabis
Tensegrity Law Group LLP
8260 Greensboro Dr., Suite 260
McLean, VA 22102

Sarah E. Rieger
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen

BOST-F-10Xv.Vizgen@foley.com

Tensegrity Law Group LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065

*Attorneys for President and Fellows of Harvard College*

10x_Vizgen_Service@tensegritylawgroup.com

*Attorneys for 10X Genomics, Inc.*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Pilar G. Kraman*
James L. Higgins (No. 5021)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jhiggins@ycst.com
pkraman@ycst.com

*Attorneys for Vizgen, Inc.*