**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| VIZGEN, INC., | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |
| VIZGEN, INC., | ) ) | |
| Counterclaim-Plaintiff, | ) ) | |
| and | ) ) | C.A. No. 22-595-MFK |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | ) ) ) | ███████████ |
| Counterclaim-Plaintiff as to certain claims, | ) ) ) | |
| v. | ) ) | |
| 10X GENOMICS, INC., | ) ) | |
| Counterclaim-Defendant as to certain claims, | ) ) ) | |
| and | ) ) | |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE | ) ) ) | |
| Counterclaim-Defendant as to certain claims. | ) ) ) | |

**LETTER TO THE HONORABLE MATTHEW F. KENNELLY FROM
KENNETH L. DORSNEY REGARDING DISCOVERY DISPUTE TO BE
HEARD AT FEBRUARY 22, 2024 TELECONFERENCE**

*Of Counsel*:

Michael J. Tuteur (*pro hac vice*)
Ruben J. Rodrigues (*pro hac vice*)
Geoffrey M. Raux (*pro hac vice*)
John W. Custer (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
(617) 502-3284
mtuteur@foley.com
rrodrigues@foley.com
graux@foley.com
jcuster@foley.com

Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 271-2400
srieger@foley.com

Jarren N. Ginsburg (*pro hac vice*)
FOLEY & LARDNER LLP
3000 K Street, N.W.
Washington, DC 20007
(202) 672-5300
jginsburg@foley.com

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
500 Delaware Ave., Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Counterclaim-Defendant
President and Fellows of Harvard
College*

Dated: February 21, 2024

Dear Judge Kennelly,

Pursuant to the Court's Oral Order (D.I. 337) and ¶ 8(g) of the Scheduling Order (D.I. 45), and in response to Vizgen's February 16, 2024 Letter (D.I. 338) (the "Letter"), President and Fellows of Harvard College ("Harvard") submits this letter in advance of the Court's February 22, 2024 telephonic hearing.

Harvard has produced approximately 31,000 documents from 16 custodians, comprising more than 192,000 pages of discovery. Among those documents are nearly 11,000 documents from three separate email addresses actually utilized and monitored by Dr. George Church (rather than his assistants). There is simply no basis for Vizgen's insinuation that Harvard has been derelict or otherwise disregarded the parties' Stipulation governing ESI discovery. As shown below, Harvard has complied with discovery; Dr. Church's assistant is not the same as Dr. Church for the purposes of custodial ESI; and Vizgen lacks "good cause" to add Dr. Church's assistant as another Harvard custodian. For these reasons, the Court should deny Vizgen's requested relief.

### Harvard's Compliance with Discovery

In its letter, Vizgen alleges that Harvard has violated its discovery obligations by failing to produce Dr. Church's custodial ESI when it did not include emails held exclusively in his administrative assistants' mailbox. This allegation is without merit.

Under the terms of the Stipulation regarding ESI discovery, Harvard was to identify ten individuals to serve as its ESI custodians, and Vizgen could demand five additional custodians. The Stipulation makes no mention of secretaries or assistants. Harvard identified Dr. Church as a custodian, ultimately identifying 11 custodians as part of the process—none of whom were administrative assistants. Vizgen did not select Dr. Church's assistant as one of its five additional custodians. In total, Harvard produced around 31,000 documents from these 16 custodians. Vizgen never raised any issue regarding so-called "gaps" in productions before this dispute.

Harvard has gone to great lengths to produce custodial documents belonging to Dr. Church. As part of both his custodial ESI collection and a subpoena Vizgen served on Dr. Church in his personal capacity, Harvard has produced almost 11,000 documents (emails and attachments) from three email accounts for which Dr. Church is a custodian. These documents represent thousands of emails from, to, or copying Dr. Church—including hundreds of emails on which the church_lab_admin@hms.harvard.edu also appears, the e-mail address used and controlled by Dr. Church's assistant. These produced documents include *substantive emails directly from Mr. Marcell*—the witness whose testimony Vizgen is allegedly relying upon—and meeting invitations from Mr. Marcell to *both* Dr. Church's email and his assistant's email. Requiring Harvard to collect, review, and produce the documents from an additional individual would be burdensome, costly, and inconsistent with this Court's existing orders and the parties' Stipulation.

### Dr. Church's Assistant Is Not Subsumed within Dr. Church's Status as a Custodian

Vizgen argues that Harvard has run afoul of both the Delaware Default Standard for Discovery and the parties' Stipulation amending the Default Standard by not considering Dr. Church's administrative assistant's emails to be within Dr. Church's custodial collection. But Vizgen's demand for emails where Dr. Church's assistant was the custodian has no basis in law or in fact.

1

In its Letter, Vizgen cites two cases that are simply inapposite, *Vitaworks IP, LLC v. Glanbia Nutritionals (NA), Inc.*, C.A. No. 19-2259, 2023 WL 4825392 (D. Del. July 27, 2023) and *Mercv Cath. Med. Ctr. v. Thompson*, 380 F.3d 142 (3d Cir. 2004).  The first case discusses whether a third party could be a named plaintiff *company's* agent, while the second analyzes whether a company possessed documents submitted to its auditor for purposes of meeting a procedural deadline.  Harvard does not dispute that Dr. Church's assistant was employed by *Harvard*.  But one reason for an ESI protocol is to provide a framework to reasonably limit the number of custodians and search terms at large entities with numerous employees.  The question of who might be *Harvard's* agent is irrelevant; the issue here is whether an administrative assistant is subsumed within a custodial search, which these cases do not even consider.

While not directly controlling, case law outside the circuit is persuasive.  In a case where a party demanded the collection of ESI from secretaries' devices, the court determined the secretaries were outside the scope of the ten named custodians in the ESI order.  *Design Basics LLC v. Carhart Lumber Co.*, 8:13-CV-125, 2014 WL 6669844 (D. Neb. 2014).  Furthermore, the court found an allegation that assistants are "usually included" in ESI to be conclusory and incorrect.  As a result, and based on the Fed. R. Civ. P. 26, the court found the party had failed to show "good cause" for expanding the scope of the parties' ESI protocol, and denied the motion to compel the collection of administrative assistants' ESI.  The same should hold here.

But even if Vizgen were to argue that the parties' Stipulation expands the standard rules governing ESI to include administrative assistants, it has failed to follow its own rule.  When asked, Vizgen refused to state whether it had collected the ESI of its own custodians' assistants.  *See* Exhibit 2 to Vizgen's Letter ("please confirm whether Vizgen included administrative assistants in its custodial collections and searches.")  A review of its productions indicates that it did not do so.  Thus, Vizgen's position that Harvard was obligated to include its custodians' assistants within an ESI collection is disingenuous and violates the "goose-gander" rule.  Simply put, Harvard complied with the terms of the Delaware Default Standard and was under no obligation to search Dr. Church's administrative assistant's emails.

### The Testimony Does Not Suggest that Harvard Hid Emails

Since Harvard was not otherwise obligated to search assistants' ESI as a general matter, the only remaining question is whether Harvard should be compelled to collect Dr. Church's assistant's ESI for some other reason.  According to the Stipulation, the agreed-upon protocols identifying custodians and producing their ESI will not be modified "[a]bsent a showing of good cause."  D.I. 51 at ¶ 5.  Vizgen attempts to persuade the Court that Harvard hid relevant emails in Dr. Church's assistant's mailbox by relying on a select few lines of testimony from a third party about that individual's interactions with Dr. Church.  But reviewing the actual testimony makes clear that Vizgen failed to establish that Dr. Church's assistant has substantive emails beyond what Dr. Church would have otherwise sent or received, and therefore no such good cause exists to alter the protocols detailed in the Stipulation.

During the course of a deposition of non-party Shawn Marcell, Vizgen's counsel asked the witness a series of questions about how often he speaks with Dr. Church.  According to Vizgen, Mr. Marcell's testimony established that Dr. "Church's practice is to have others transmit emails to him" by sending them to his assistant.  Mr. Marcell's testimony is actually far more limited

than that:  Vizgen's counsel asked Mr. Marcell about "***your*** e-mails" and "***your*** practice" of emailing Dr. Church.  Vizgen's counsel never asked about ***Dr. Church's*** practices—nor could it have, given that Mr. Marcell would not have had the foundation to make such a claim.

But critically, the only time Vizgen asked a question about *substantive* emails, or Dr. Church's supposed "pass-through" practice, Mr. Marcell's testimony was unambiguous:

> Q. Tell me how it works when you want to e-mail George Church.
> A. I e-mail Christine, and then she gets back and says, George could talk on this date or that.
> Q. With respect to the period of time dating back to approximately 2013, give or take, was it your practice to e-mail George Church's assistant when you were trying to convey a message or an e-mail to [D]r. Church?
> A. ***No***.

Vizgen Ex. 1 (Tr.) at 39:12 – 22 (emphasis added).

The testimony is clear:  if Mr. Marcell wished to schedule a call with Dr. Church, he would email his assistant.  But contrary to Vizgen's characterization, Mr. Marcell made clear that he sent *substantive* emails directly to Dr. Church.  This is further demonstrated by the fact that Dr. Church sent and received thousands of emails—including substantive emails with Mr. Marcell— many of which are now in Vizgen's possession through discovery.  Simply put, rather than establishing that Dr. Church used his assistant as a pass-through, Mr. Marcell's testimony is exactly opposite.  There exists no "good cause" to expand Harvard's custodians.

* * *

In conclusion, Harvard has complied with both the letter and spirit of the Delaware Default Standard and the parties' Stipulation.  There is no reason for the Court to now expand the scope of ESI to include Dr. Church's administrative assistant's files either as an additional custodian, or as subsumed within Dr. Church's collection.  Vizgen's fails to establish good cause to change the Court's existing Order, and its attempt to expand discovery should be denied.

Dated: February 21, 2024

*Of Counsel*:

Michael J. Tuteur (*pro hac vice*)
Ruben J. Rodrigues (*pro hac vice*)
Geoffrey M. Raux (*pro hac vice*)
John W. Custer (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
(617) 502-3284
mtuteur@foley.com
rrodrigues@foley.com
graux@foley.com
jcuster@foley.com

Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 271-2400
srieger@foley.com

Jarren N. Ginsburg (*pro hac vice*)
FOLEY & LARDNER LLP
3000 K Street, N.W.
Washington, DC 20007
(202) 672-5300
jginsburg@foley.com

  */s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
500 Delaware Ave., Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Counterclaim-Defendant*
*President and Fellows of Harvard*
*College*

4