**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>        Plaintiffs,<br><br>        v.<br><br>VIZGEN, INC.,<br><br>        Defendant. | C.A. No. 22-595-MFK<br><br>████████<br><br>REDACTED - PUBLIC VERSION<br>(Filed May 7, 2024) |
| VIZGEN, INC.,<br><br>        Counterclaim-Plaintiff,<br><br>and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>        Counterclaim-Plaintiff as to certain claims,<br><br>        v.<br><br>10X GENOMICS, INC.,<br><br>        Counterclaim-Defendant as to certain claims,<br><br>and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>        Counterclaim-Defendant as to certain claims. | |

**LETTER TO THE HONORABLE MATTHEW F. KENNELLY REGARDING
VIZGEN'S REQUEST TO AMEND ITS ANSWER AND COUNTERCLAIMS**

Dear Judge Kennelly,

  Pursuant to Paragraph 9 of the Scheduling Order (D.I. 45), Fed. R. Civ. P. 15(a)(2), (d) and 16(b)(4), and District of Delaware Local Rule 15.1, Vizgen, Inc. ("Vizgen") respectfully moves to amend its counterclaims against 10x Genomics, Inc. ("10x") and the President and Fellows of Harvard College ("Harvard") (collectively, "Plaintiffs") regarding Plaintiffs' extensive, ongoing anticompetitive bundling, predatory pricing, and tying practices. Although Vizgen identified an anticompetitive scheme in its original pleading that included such actions, to the extent they occurred; sought discovery on them because they relate to typical antitrust issues, such as market definition; provided contention interrogatory responses regarding these practices when Vizgen initially learned of their existence and scope; and pursued document and deposition discovery on these practices, Plaintiffs nevertheless take the position that 10x's bundling and pricing practices are not relevant to nor part of Vizgen's antitrust counterclaims—even though 10x itself has pursued discovery of Vizgen regarding the exact same practices. Thus, Vizgen moves now to conform the counterclaims to the proof and preclude future efforts from Plaintiffs to prevent Vizgen from presenting such liability theories or proof at trial. (And, notably, it does not seek to extend any deadlines or the trial date as a consequence.)

  Per Rule 15(a)(2), the allegations Vizgen seeks to add are fully consistent with the broad anticompetitive scheme it first identified—and the Court found plausible—in the original counterclaim pleading (*see* D.I. 193) and simply expand on certain bundling, discounting, and other coercive commercial practices Vizgen learned of recently and is in the process of confirming through further discovery. Vizgen explained its contentions on these issues in discovery and 10x pursued its own discovery on them, thus demonstrating a complete lack of prejudice stemming from this amendment. Vizgen therefore readily establishes why the Court should abide by its directive under Rule 15(a)(2) to "freely give leave [to amend] when justice so requires."

  The key question under Rule 16(b)(4) is whether Vizgen has been diligent in proposing its amendment rather than unduly delaying its request to amend. As discussed further below, Vizgen has been diligent. It provided contentions on these allegations during discovery, thus giving Plaintiffs clear notice about the contours of its allegations. Vizgen also sought discovery on 10x's bundling, discounting, and tying practices, including document requests and a Rule 30(b)(6) deposition topic for 10x's position on the matters, both because of their independent relevance and because they relate to other aspects of Vizgen's antitrust claims (like market definition). After weeks of meet and confers, 10x only recently refused entirely to provide either discovery or a corporate representative on the topic, on the basis that these practices are somehow not relevant to the case. However, 10x itself is taking discovery on these practices. Furthermore, Vizgen was only able to recently begin taking depositions of witnesses relevant to these topics, with highly relevant witnesses (including 10x's CTO and CLO) still upcoming. And it requests this amendment just over two weeks after the first deposition confirming [REDACTED]

[REDACTED]. Moving to amend less than three months after learning critical information shows any delay is not "undue," and therefore satisfies the diligence standard under Rule 16(b)(4). Vizgen is well within that time frame.

 **I.** **BACKGROUND**

  On April 17, 2023, Vizgen filed its answer to Plaintiffs' Amended Complaint, including

1

counterclaims for conspiracy to monopolize and attempted monopolization claims under the Sherman Act, in addition to theories of liability for its Massachusetts state law claims. *See* D.I. 138. The main thrust of that amendment was to describe Plaintiffs' comprehensive attempt to monopolize the SST market through, *inter alia*, an "open early, closed late" scheme, as well as sham litigation. *Id.* In describing the anticompetitive conduct, Vizgen noted, *inter alia*, that Plaintiffs' scheme involved "cementing [10x's] future power in the SST Market by integrating its new Xenium In Situ product with its other products [including its Chromium and Visium products] where 10x enjoys market power." *Id.* ¶¶ 137-138. This involved using those other two products to lock-in customers to 10x's new Xenium SST product, thereby creating an "end-to-end [10x] ecosystem" that dominated both the SST and other complementary analysis products. *Id.* The parties then briefed Plaintiffs' motions to dismiss these claims and the Court denied those motions, finding the claims plausible. D.I. 193.

Subsequently, the parties engaged in extensive document and interrogatory discovery on Vizgen's antitrust claims. Vizgen served a document request for "All Documents and Communications relating to proposed or actual transactions in which 10x conditioned any aspect of the pricing or sale of its Chromium or Visium platforms … on the purchase of the Accused Xenium In Situ Platform" on July 25, 2023. Ex. I (Vizgen's Sixth Set of RFPs). 10x also confirmed it would produce at least some bundling documents that came up in discovery. Ex. J (with respect to single-cell products, "We confirmed that where these documents arise as part of the ESI process, we are not withholding them").

Meanwhile, after analyzing 10x's sizable document productions made through early 2024, Vizgen began to uncover 10x's illegal bundling campaign (although still lacked critical information about its scope). Based on that initial analysis, and in response to Plaintiffs' contention interrogatories, Vizgen thus expanded on its previous allegations in interrogatory responses served on February 21, 2024 and March 29, 2024. These interrogatory responses clearly asserted Vizgen's contentions that, in addition to its other anticompetitive acts, 10x was acting anticompetitively by engaging in illegal bundling, predatory pricing, and tying practices with respect to Xenium sales by leveraging 10x's market dominance in selling its Chromium and Visium products (respectively, single-cell and low resolution spatial analysis products) to obtain monopoly power in the SST Market. Ex. A,[1] at 45, Ex. B, at 6-7, Ex. C, at 16-17.

In addition to these interrogatory responses, on January 18, 2024 Vizgen also served 10x with a Rule 30(b)(6) deposition notice requesting, *inter alia*, that a corporate representative testify regarding 10x's bundling and pricing practices. Ex. D. And, regardless of the anticompetitive aspects of 10x's bundling and pricing practices, Vizgen also served discovery requests seeking documents and data on 10x's bundles, because such practices speak to market definition and 10x's and Harvard's anticipated defenses on market definition.[2] The parties engaged in several rounds of meet and confers about that Rule 30(b)(6) notice, as well as Vizgen's document requests. On April 15, 2024, 10x confirmed it would not provide a 30(b)(6) representative on these issues

---

[1] All "Ex. _" cites refer to Exhibits to the Declaration of Adam. B. Wolfson ("Wolfson Decl.").
[2] 10x and Harvard contend that, contrary to the SST Market Vizgen defines, the relevant market also includes Xenium and Chromium (among other products). To the extent 10x sells bundles with Xenium and one or more of those other two products, this shows they are ***not*** in the same relevant market, as the reasons customers will typically buy bundled products is because they are not substitutes (*i.e.*, are products in different relevant markets).

because, in its view, bundling and its pricing practices were not part of the case, despite 10x seeking its own discovery from Vizgen on bundling and discounting, asking a number of questions on those topics in an April 10, 2024 deposition of Vizgen's head of sales (which were then also subject to redirect from Vizgen's counsel). *See*, *e.g.*, Ex. E, Ex. F at 72:1-76:23, 79:11-85:21, 102:1-108:9, 112:16-114:25, 222:2-223:17, 228:3-230:8. Similarly, on April 18, 2024, 10x stated it would not provide data showing its bundled prices, for virtually identical reasons. Those discussions have now become ripe for resolution, and the discovery disputes relating to them are also noticed for the hearing addressing this motion to amend.

As for depositions, 10x did not make its witnesses available for deposition until the end of March and Vizgen deposed the first 10x witness knowledgeable about these topics on April 2, 2024. Wolfson Decl. ¶ 9. Vizgen also deposed the leader of 10x's spatial biology business—Dr. Nikhil Rao—on April 4, 2024, who ███████████████████████████████████ ███████. Ex. K. As of the date of this motion, the most knowledgeable witnesses—10x's key executives—are still to be deposed (April 24 and 25). Wolfson Decl. ¶ 9.

Vizgen's amended allegations directly address 10x's anticompetitive bundling and pricing practices, as well as the recent coercion it has employed to force Chromium/Visium users to purchase Xenium, even though, in many cases, they prefer the better and cheaper Vizgen MERSCOPE platform. Ex. G ¶¶ 142-164. The amended allegations also explain 10x's dominance in the markets in which it offers Chromium and Visium and how its deep coffers allow it to ███ ███████████████████████████ which its two SST market competitors (Vizgen and NanoString) cannot. Once eliminated through these and the other anticompetitive practices already held plausible by the Court, 10x will then be able to recoup its costs via both increased Xenium instrument prices and overall consumable sales (*i.e.*, the consumable products used when conducting experiments on an SST instrument). *Id*; *see also* D.I. 193.

## II. LEGAL STANDARD

Rule 15(a)(2) provides that, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts interpret that language as establishing a liberal policy in favor of allowing amendments. *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). As the Third Circuit has explained, "[a]bsent undue or substantial prejudice … denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

If a motion to amend satisfies Rule 15, but the motion is filed after the date set for amendments, the moving party must also satisfy Rule 16(b)(4). *See E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000). Rule 16(b)(4) provides that "[a] schedule maybe modified only for good cause and with the judge's consent." "In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). If the movant satisfies this requirement, leave to amend should be granted unless there is a compelling reason to deny it, such as bad faith, prejudice to the non-moving party, or futility of the claims. *Foman v. Davis*, 371 U.S. at 182; *In re Burlington*, 114 F. 3d at 1434.

## III. ARGUMENT

### A. Vizgen Satisfies Rule 15's Policy in Favor of Amendments

3

In its denial of Plaintiffs' motion to dismiss, the Court found that Vizgen plausibly alleged Plaintiffs had engaged in acts outside of this lawsuit (but causally connected to this lawsuit) that caused independent anticompetitive injury. D.I. 193 at 17-22.

***The amendment is clearly not futile.*** Vizgen's proposed amendment simply expands on these allegations to conform to the evidence developed during discovery. The amended counterclaim explains that 10x's anticompetitive bundling and pricing practices—which cause independent anticompetitive harm, but are also part of 10x's broader scheme to eliminate Vizgen through the financial burden of such practices and legal cloud placed on it by this litigation— provide 10x monopoly power in the SST relevant market. Ex. G ¶¶ 142-164. In this vein, the proposed amendment explains that 10x recently began engaging in its anticompetitive bundling and discounting behavior because its resources allow it to price its products in ways that will force Vizgen out of business (thereby allowing 10x to recoup its costs through acquisition of Vizgen's customers). *Id.* The amendment also demonstrates how 10x is using its dominance in the low-resolution spatial transcriptomics relevant market to coerce customers into buying its Xenium SST product; *i.e.*, by tying Xenium to products over which it already exerts monopoly power. *Id.*

These allegations describe well-accepted liability theories. *See*, *e.g.*, D.I. 193 at 17-22; *see also*, *e.g.*, *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 273 (3d Cir. 2012) (below-cost pricing clearly implicates law on anticompetitive predatory pricing); *LePage's Inc. v. 3M*, 324 F.3d 141, 155 (3d Cir. 2003) (bundled discounting, even at above-cost prices, can constitute tying when it effectively forces purchasers of the tying products to buy the tied products, because they are priced so low vis-à-vis competitors). And they build on allegations the Court already found plausible under Rule 12(b)(6). D.I. 193. Thus, there is no legitimate argument they are futile under the law of this Circuit or the law of the case.

***There is no prejudice from the amendment.*** Even if one were to ignore Vizgen's original allegations, it clearly discussed 10x's predatory and anticompetitive pricing practices in its contention interrogatory responses approximately two months ago, once the extent of those practices became clear to Vizgen. It also served document requests on the issues due to their independent relevance to other aspects of the case (*e.g.*, market definition) and served a Rule 30(b)(6) deposition notice seeking, *inter alia*, testimony on the same. Vizgen discussed these issues with Plaintiffs, sought document and deposition discovery on them, and 10x has in return sought discovery of Vizgen on the same issues. Although 10x refuses to provide certain additional discovery because it contends the counterclaim does not specifically lay out bundling, discounting, or tying theories, that dispute, in and of itself, demonstrates 10x has long been aware of Vizgen's contentions and had a full opportunity to either bring the issue to a head with the Court, or, as it has done, seek discovery from Vizgen on these topics. This demonstrates a complete lack of prejudice and demonstrates why amendment under Rule 15(a)(2) is appropriate.

### A. Vizgen Has Been Diligent in Pursuing Its Bundled Discounting and Tying Theories, Thus Also Satisfying Rule 16(b)(2)'s Requirements

Generally speaking, courts within this District hold that a party has been diligent if they move to amend counterclaims within three months of obtaining critical information relating to the claim(s). *Compare*, *e.g.*, *Asahi Glass Co. v. Guardian Indus. Corp.*, 276 F.R.D. 417 (D. Del. 2011) (lack of diligence in adding inequitable conduct counterclaims due to four-month delay from obtaining critical evidence and making amendment); *Pfizer Inc. v. Sandoz Inc.*, 2013 WL 5934635, at *3–*4 (D. Del. Nov. 4, 2013) (four-month delay); *Genentech, Inc. v. Amgen, Inc.*, 2020 WL

708113, at *1 (D. Del. Feb. 12, 2020) (three-month delay); *with Evonik Degussa GmbH v. Materia Inc.*, 2011 WL 13152274, at *3 (D. Del. Dec. 13, 2011) (delay of slightly more than two months after the critical depositions not undue); *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003) (delay of six weeks after important deposition not "undue"); *Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835, at *5 (D. Del. May 21, 2009) (same).

Vizgen did not obtain the most critical information relating to the scope of 10x's bundling practices until the past few weeks. Indeed, 10x did not make its deponents available to Vizgen until late March—and still has not produced the most critical documents and data regarding its bundling, discounting, and tying practices. The first 10x deponent on 10x's bundling and pricing practices was Mira Grigorova, who was deposed on April 2, 2024, three weeks ago (although Vizgen proposed its amendment just two weeks after that deposition). *See, e.g.*, Ex. H at 16:12-25, 33:2-35:5, 37:2-9. Nikhil Rao, the leader of 10x's spatial business and whose testimony is cited in the proposed amendment, was deposed on April 4, 2024. *See, e.g.*, Ex. K at 158:9-159:9, 160:17-161:9, 165:6-166:2, 171:14-172:14. Thus Vizgen did not know until recently, for example, that 10x ███████████████████████████████████████████████████████████████████████ *Id.* at 177:7-13. And Vizgen also only recently learned that 10x has failed to produce a document entitled ███████████████████████████████████████████████████████████ *Id.* at 178:12-20. These recent depositions thus revealed that ████████████████████████████████████████████████████.

Several more critical 10x witnesses—in particular, Michael Schnall-Levin (10x's Chief Technology Officer) and Eric Whitaker (10x's Chief Legal Officer)—will be deposed after Vizgen submits this motion. Still, 10x refuses to make a 30(b)(6) deponent or critical data productions available on these antitrust topics. Thus, under the standard applied by courts within this District, Vizgen's three-month diligence clock arguably has not begun running. Even assuming the clock began running from the time of the Grigorova deposition, Vizgen is clearly within the three-month window, and is thus diligent.

Furthermore, the purpose of an amendment motion is to put the other side on notice of an opponent's contentions about the case. *See, e.g., Lipocine Inc. v. Clarus Therapeutics, Inc.*, 2020 WL 4794576, at *5-*6 (D. Del. Aug. 18, 2020) (finding diligence, in part, based on counterclaimant serving proposed amended counterclaims within six weeks of critical deposition, which meant "the notice function of the motion to amend was served long before the motion was filed"). Here, even ignoring the original counterclaim's allegations, Vizgen provided exactly this notice via its contention interrogatory responses two months ago, as well as its Rule 30(b)(6) notice and discovery requests. 10x demonstrated it received this notice by, *inter alia*, taking deposition discovery on these exact topics, and by discussing these issues in the parties' meet and confers over Vizgen's requested discovery, confirming Vizgen has been diligent under Rule 16(b)(4). And, as with the depositions, even using the contention interrogatory date as the diligence trigger, Vizgen is well within the three-month window.

## IV.  CONCLUSION

For the foregoing reasons, Vizgen respectfully requests that the Court allow it to amend the counterclaims as demonstrated in Exhibit G to include the proposed allegations regarding 10x's bundling, discounting, and tying practices.

Dated:  April 22, 2024                                          Respectfully submitted,

/s/ *Pilar G. Kraman*

Pilar G. Kraman (No. 5199)

Attachments

cc: All Counsel of Record (via electronic mail, w/ attachments)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>  Plaintiffs,<br><br> v.<br><br>VIZGEN, INC.,<br><br>  Defendant. | C.A. No. 22-595-MFK |
| VIZGEN, INC.,<br><br>  Counterclaim-Plaintiff,<br><br>and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>  Counterclaim-Plaintiff as to certain claims,<br><br> v.<br><br>10X GENOMICS, INC.,<br><br>  Counterclaim-Defendant as to certain claims,<br><br>and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>  Counterclaim-Defendant as to certain claims. | |

**[PROPOSED] ORDER**

1

At Wilmington, this _____ day of _____, 2024, upon consideration of Defendant and Counterclaim-Plaintiff Vizgen, Inc.'s ("Vizgen") motion to amend its answer and counterclaims;

**IT IS HEREBY ORDERED** that:

Vizgen's motion is granted. Vizgen shall file its proposed amended pleading, substantially in the form attached to its motion within three (3) business days of the date of this Order.

                                                                         _____
                                                                         The Honorable Matthew F. Kennelly
                                                                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 22, 2024, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Kenneth L. Dorsney
Cortlan S. Hitch
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
kdorsney@morrisjames.com
chitch@morrisjames.com

Geoffrey M. Raux
Ruben J. Rodrigues
Michael J. Tuteur
Lea Gulotta James
John W. Custer
Lucas I. Silva
Amani S. Kmeid
Foley & Lardner LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199

Sarah E. Rieger
Kate E. Gehl
Ian T. Hampton
Sydney K. Hecimovich
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202

Jarren N. Ginsburg
Alan D. Rutenberg
Foley & Lardner LLP
Washington Harbour
3000 K Street NW, Suite 600
Washington, DC 20007

Jared J. Braithwaite
Foley & Lardner LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111

Karen Jacobs
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
kjacobs@morrisnichols.com
cclark@morrisnichols.com

Samantha Jameson
Kiley White
Ron Pabis
Joanna R. Schacter
Azra M. Hadzimehmedovic
Aaron M. Nathan
Tensegrity Law Group LLP
1676 International Drive, Suite 910
McLean, VA 22102

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
William P. Nelson
Tensegrity Law Group LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065

10x_Vizgen_Service@tensegritylawgroup.com

Marguerite M. Sullivan
Molly M. Barron
Jesse Aaron Vella
Christopher John Brown
Brian Barrows Goodell
Sahdia Khan
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000

BOST-F-10Xv.Vizgen@foley.com

*Attorneys for President and Fellows of Harvard College*

Washington, D.C. 20004
marguerite.sullivan@lw.com
molly.barron@lw.com
jesse.vella@lw.com
chris.brown@lw.com
brian.goodell@lw.com
sahdia.khan@lw.com

Kelly Fayne
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
kelly.fayne@lw.com

*Attorneys for 10X Genomics, Inc*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Pilar G. Kraman*
James L. Higgins (No. 5021)
Pilar G. Kraman (No. 5199)
Jennifer P. Siew (No. 7114)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jhiggins@ycst.com
pkraman@ycst.com
jsiew@ycst.com

*Attorneys for Vizgen, Inc.*