IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Plaintiffs,<br><br>    v.<br><br>VIZGEN, INC.,<br><br>    Defendant. | C.A. No. 22-595 (MFK) |
| VIZGEN, INC.,<br><br>    Counterclaim-Plaintiff,<br><br>and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Counterclaim-Plaintiff as to certain claims,<br><br>    v.<br><br>10X GENOMICS, INC.,<br>    Counterclaim-Defendant as to certain claims,<br>and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Counterclaim-Defendant as to certain claims. | |

**10X GENOMICS, INC'S AND PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S SUPPLEMENTAL NOTICE OF DEPOSITION OF VIZGEN, INC.**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiffs 10x Genomics, Inc. and President and Fellows of Harvard College, by and through

undersigned counsel, will take the deposition of Vizgen, Inc. The deposition will take place at a date, time, and location to be mutually agreed upon by the parties. The deposition will be taken before a notary public or other officer authorized by law to administer oaths and take testimony. The deposition shall continue from day to day (weekends and holidays excepted) until concluded and shall be recorded stenographically and by video recording.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Vizgen shall designate one or more witnesses to testify on their behalf as to all facts and other information known or reasonably available to Vizgen relating to the subject matters set forth in the schedule of Deposition Topics, and not just about information personally known to the witness or witnesses. If the designated witness or witnesses do not possess such knowledge, Vizgen shall prepare them so that they may give knowledgeable and binding answers per the requirements of Rule 30(b)(6).

## **DEFINITIONS**

The following definitions apply to the Instructions and Deposition Topics set forth below.

A. "**You**," "**Your**," "**Vizgen**" shall each mean and refer, individually and collectively, to Vizgen, Inc., and without limitation all corporate locations, and all predecessors and successors, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and entities acting in joint-venture or partnership relationships with Vizgen, and others acting on behalf of Vizgen.

B. "**10x**" shall mean 10x Genomics, Inc. and without limitation all its corporate locations, and all predecessor and successors, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with 10x, and others acting on behalf of 10x.

C. "**Harvard**" shall mean President and Fellows of Harvard College, and without limitation all its locations, and all parents, subsidiaries and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with Harvard, and others acting on behalf of Harvard.

D. "**NanoString/Bruker**" shall each mean and refer, individually and collectively, to NanoString Technologies, Inc., Bruker Spatial Biology, Inc, Bruker Nano, Inc. and without limitation all corporate locations, and all predecessors and successors, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and entities acting in joint-venture or partnership relationships with these entities, and others acting on behalf of these entities.

E. "**Xenium**" shall mean 10x's Xenium Analyzer and all assays and other consumables and instruments or components used with or sold with Xenium Analyzer.

F. "**Visium**" shall mean 10x's Visium all assays and other consumables and instruments or components used with or sold with Visium, including without limitation Cytassist.

G. "**Chromium**" shall mean 10x's Chromium instruments and all assays and other consumables and instruments or components used with or sold with Chromium.

H. "**MERSCOPE**" shall mean all products and components of Vizgen's MERSCOPE Platform, including instruments, reagents, and software.

I. "**MERSCOPE Lab Services**" shall mean services provided through the Vizgen Lab Services.

J. "**CosMx**" shall mean all products and components of CosMx Spatial Molecular Imager, including instruments, reagents, and software.

K. "**CosMx TAP**" shall mean services provided through the CosMx Technology Access Program.

L. "**GeoMx**" shall mean all products and components of GeoMx DSP, including instruments, reagents, and software.

M. "**GeoMx TAP**" shall mean services provided through the GeoMx Technology Access Program.

N. The "**Alleged SST Market**" shall mean the "Single-Cell Spatial Transcriptomics" market(s), and products and services that are offered for sale, sold, and/or compete therein, as Vizgen uses the term, including in connection with its Answer, Defenses, and Counterclaims to Plaintiffs' Second Amended Complaint (D.I. 138), including in its Seventeenth Counterclaim (Alleged Conspiracy to Monopolize (15 U.S.C. § 2)), Eighteenth Counterclaim (Alleged Attempted Monopolization (15 U.S.C. § 2)) Nineteenth Counterclaim (California Cartwright), Twentieth (California Unfair Competition), and Twenty-First Counterclaim (Massachusetts Unfair Competition).

O. The "**Alleged Single-Cell Analysis Market**" shall mean the "single-cell analysis market" and products and services that are offered for sale, sold, and/or compete therein and competitors therein, as Vizgen uses the term, including in connection with its Amended Answer, Defenses, and Counterclaims to Plaintiffs' Second Amended Complaint (D.I. 440).

P. The "**Alleged Low-Resolution Spatial Analysis Market(s)**" shall mean the "low-resolution spatial analysis market" and products and services that are offered for sale, sold, and/or compete therein and competitors therein, as Vizgen uses the term, including in connection with its Amended Answer, Defenses, and Counterclaims to Plaintiffs' Second Amended Complaint (D.I. 440).

4

Q. **"Document"** shall be understood to have the broadest possible meaning under the Federal Rules of Civil Procedure and shall include without limitation any written, recorded, graphic, or other matter, whether sent or received or made or used internally, however produced or reproduced and whatever the medium on which it was produced or reproduced (whether on paper, cards, charts, files, or printouts; tapes, discs, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription; computer tapes, databases, e-mails; pictures, photographs, slides, films, microfilms, motion pictures; or any other medium), and any other tangible item or thing of readable, recorded, or visual material of whatever nature including without limitation originals, drafts, electronic documents with included metadata, and all non-identical copies of each document (which, by reason of any variation, such as the presence or absence of hand-written notes or underlining, represents a distinct version). By way of example, the term "document(s)" as used herein shall include, without limitation: correspondence; blueprints; memoranda; notes; diaries; letters; telegraphs; telegrams; telexes; e-mails; minutes; agendas; contracts; reports; studies; checks; statements; receipts; returns; summaries; pamphlets; circulars; press releases; advertisements; books; communications (as defined below); handwritten or typewritten notes; notations or summaries of telephone conversations, meetings, or conferences; bulletins; computer printouts; databases; teletypes; telefax; invoices; worksheets; photographs; tape recordings; websites; blog entries; social media postings; code; Excel spreadsheets; PowerPoint presentations; Word documents; transcripts from Slack or Microsoft Teams; company blogs, bulletin boards, or wikis; and all other tangible items of readable, recorded, or visual material of any kind.

R. **"Thing"** shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure.

S.      "**Communication**" shall mean any transmission of information in any context or situation by or between two or more persons by any means or medium whatsoever, whether in the form of an original, a draft, or a copy, whether stored in hard copy, electronically or digitally, or on tape, either orally or in writing, including but not limited to conversations; correspondence; electronic mails; telexes; facsimile transmissions; telecopies; recordings in any medium of oral, written, or typed communications; telephone or message logs; notes or memoranda relating to written or oral communications; transcripts from Slack or Microsoft Teams; company blogs, bulletin boards, or wikis; and any translation thereof.

T.      "**Identify**" and "**Identity**" shall each mean:

a)  as applied to an individual, to state the individual's full name, present or last known address and telephone number, present or last known employer, present or last known business address and telephone number, present and prior employment positions and corresponding dates of such positions, a description of the individual's present employment title and responsibilities, and the individual's past and present relationship to You;

b)  as applied to a person other than a natural person (including but not limited to any business or other entity), to state the entity's full name, place and date of incorporation or formation, principal place of business or activity, the identity of the natural persons within that entity having knowledge of the matter with respect to which that entity is named, and the entity's past and/or present relationship to You;

c)  as applied to a document (whether or not any claim of privilege is made in respect thereof), to describe the document and to state the type of document, the date of creation of the document, the date of communication of the document, the names and identities of the individuals who drafted, authored, or signed the document or to whom a copy thereof was addressed or sent,

a summary of the subject matter of the document, the number of pages of the document, the present whereabouts of the document, including without limitation all originals and copies, and the name and address of the present or last-known custodian of the document;

d) as applied to a thing (including without limitation any products manufactured, developed, or sold by Plaintiffs), to describe the thing and to state the date that the thing was first introduced for sale, the date of the thing's first sale, all versions, parts, or revision numbers or codes, all product names, and all team names or project titles used in connection with the design, development, testing, or engineering of that product;

e) as applied to a process, to describe the process and to state the date that the process was first used, the date the products or goods made by the process were first sold, all numbers or codes used to refer to the process, including but not limited to process revision numbers or codes, all process names, and all team names or project titles used in connection with the design, development, testing, or engineering of that process; or

f) as applied to a communication, to describe the communication and to state the type of communication, the date and the parties to such communication, and if such communication has been recorded in documentary form, to identify all documents recording such communication.

U. "**Information**" shall mean information in any form, including but not limited to documentary, electronic, graphical, or tabular, and communicated by any means, including but not limited to orally, in writing, or via electronic communication.

V. "**Describe**" when used in relation to an act, event, instance, occasion, transaction, conversation, or communication, shall mean (1) to summarize the content, subject matter, and purpose; (2) to state the date and place thereof; (3) to identify the individual participants; (4) to summarize separately for each individual participant what was said or done; and (5) to identify

each document or communication used or prepared in connection therewith or making any reference thereto.

  W.  "**Date**" shall mean the exact date, if known, or the closest approximation to the exact date as can be specified, including without limitation, the year, month, week in a month, or part of a month.

  X.  "**Relate to**," "**Related to**," "**Relating to**," or "**Concerning**" shall have their ordinary meanings, including without limitation in whole or in part constituting, containing, embodying, reflecting, describing, involving, supporting, contradicting, evidencing, analyzing, identifying, mentioning, stating, referring directly or indirectly to, dealing with, or in any way pertaining to.

  Y.  As used herein, the singular form of a term shall be interpreted to include the plural and vice versa.

  Z.  As used herein, the masculine form of a term shall be interpreted to include the feminine and vice versa.

  AA.  Except where the context does not permit, the term "**including**" shall be without limitation.

  BB.  Except where the context does not permit, the terms "**and**" and "**or**" shall be both conjunctive and disjunctive.

  CC.  Except where the context does not permit, the terms "**each**" and "**any**" shall mean any and all.

## INSTRUCTIONS

The following Instructions apply to the Deposition Topics below and should be considered part of each such Deposition Topic.

1. Each Deposition Topic shall be construed independently, and no Deposition Topic shall be construed as limiting the scope of any other Deposition Topic.

2. The witness or witnesses You designate to testify about Deposition Topics identified herein must be prepared to testify to all information known or reasonably available to You regardless of where the information is maintained, in what form the information is maintained, or whether the information is maintained by You or by Your predecessors, subsidiaries, parents, and affiliates.

## DEPOSITION TOPICS

### TOPIC NO. 1:

Measures and analyses of market share over time in the Alleged Single-Cell Analysis Market, including:

(a) the nature of the market and any measure of market share;

(b) the identity of each market participant, its products, and its relative share; and

(c) Vizgen's participation in the market, alone or in collaboration with others.

### TOPIC NO. 2:

Vizgen's goals and projections for the Alleged Single-Cell Analysis Market, including:

(a) documents and things reflecting Vizgen's goals and projections for participating, alone or in collaboration with others, in the market; and

(b) steps taken by Vizgen to compete with 10x through Vizgen's participation, alone or in collaboration with others, in the market.

### TOPIC NO. 3:

Measures and analyses of market share over time in the Alleged Low-Resolution Spatial Analysis Market(s), including:

(a) the nature of the market and any measure of market share;

(b) the identity of each market participant, its products, and its relative share;

(c) Vizgen's participation in the market, alone or in collaboration with others; and

    (d)    any effects on Vizgen from changes in market share.

**TOPIC NO. 4:**

Vizgen's goals and projections for the Alleged Low-Resolution Spatial Analysis Market(s), including:

    (a)    documents and things reflecting Vizgen's goals and projections for participating, alone or in collaboration with others, in the market; and

    (b)    steps taken by Vizgen to compete with 10x through Vizgen's participation, alone or in collaboration with others, in the market.

**TOPIC NO. 5:**

All facts relating to any Vizgen decision to enter, directly or indirectly, the Alleged Single-Cell Analysis Market, including:

    (a)    any consideration by Vizgen to directly enter the Alleged Single-Cell Analysis Market;

    (b)    Vizgen's decision to collaborate with Scale Biosciences;

    (c)    Vizgen's collaboration with Scale Biosciences;

    (d)    Vizgen's consideration of collaborations with any other participant or competitor in the market; and

    (e)    Vizgen's projections relating to its collaboration with Scale Biosciences or any other participant or competitor in the market.

**TOPIC NO. 6:**

All facts relating to any Vizgen decision to enter, directly or indirectly, the Alleged Low-Resolution Spatial Analysis Market, including:

    (a)    any consideration by Vizgen to directly enter the Alleged Single-Cell Analysis Market;

    (b)    Vizgen's consideration of collaborations with any participant or competitor in the market; and

    (c)    Vizgen's projections relating to its collaboration with any participant or competitor in the market.

**TOPIC NO. 7:**

All agreements between Vizgen and any participant or competitor in the Alleged Single-Cell Analysis Market or Alleged Low-Resolution Spatial Analysis Market.

**TOPIC NO. 8:**

All negotiations between Vizgen and any participant or competitor in the Alleged Single-Cell Analysis Market or Alleged Low-Resolution Spatial Analysis Market relating to a potential partnership, collaboration, or joint venture, including any resulting formal or informal agreements.

**TOPIC NO. 9:**

All co-marketing and co-selling of MERSCOPE with any product in the Alleged Single-Cell Analysis Market or Alleged Low-Resolution Spatial Analysis Market.

**TOPIC NO. 10:**

All offers of MERSCOPE or MERSCOPE Lab Services in combination with any product in the Alleged Single-Cell Analysis Market or Alleged Low-Resolution Spatial Analysis Market.

**TOPIC NO. 11:**

All pricing of MERSCOPE or MERSCOPE Lab Services in combination with any product in the Alleged Single-Cell Analysis Market or Alleged Low-Resolution Spatial Analysis Market.

**TOPIC NO. 12:**

The effects of any alleged "spreading of fear, uncertainty, and doubt in the marketplace" by 10x on Vizgen, Vizgen's customers or potential customers, the investment community, and/or others.

**TOPIC NO. 13:**

Communications between Vizgen and Vizgen's customers or potential customers, the investment community, and/or others relating to any alleged "spreading of fear, uncertainty, and doubt in the marketplace" by 10x.

**TOPIC NO. 14:**

Communications between 10x and Vizgen's customers or potential customers, the investment community, and/or others relating to any alleged "spreading of fear, uncertainty, and doubt in the marketplace" by 10x.

**TOPIC NO. 15:**

Any MERSCOPE sales lost to 10x as a result of 10x's co-marketing and co-selling of Xenium with Chromium and/or Visium.

**TOPIC NO. 16:**

Communications between Vizgen and Vizgen's customers or potential customers relating to 10x's co-marketing and co-selling of Xenium with Chromium and/or Visium.

11

**TOPIC NO. 17:**

Communications between 10x and Vizgen's customers or potential customers, the investment community, and/or others relating to 10x's co-marketing and co-selling of Xenium with Chromium and/or Visium.

**TOPIC NO. 18:**

Any MERSCOPE sales lost to NanoString/Bruker as a result of NanoString/Bruker's co-marketing and co-selling of CosMx with GeoMx and with any other NanoString/Bruker single cell or spatial analysis product.

**TOPIC NO. 19:**

All communications between Vizgen and Vizgen's customers or potential customers, the investment community, and/or others regarding non-price reasons that customers have reported they chose Xenium or CosMx over MERSCOPE.

**TOPIC NO. 20:**

All non-price reasons that customers have reported they chose Xenium or CosMx over MERSCOPE.

**TOPIC NO. 21:**

Vizgen's discounting or custom pricing of MERSCOPE and MERSCOPE Lab Services, alone or in combination with other products and services.

**TOPIC NO. 22:**

Vizgen's expected lifetime revenues from its MERSCOPE and MERSCOPE Lab Services customers, including without limitation projected consumable pull-throughs, warranty/repair services, conversions, and replacements.

**TOPIC NO. 23:**

The expected useful life of the MERSCOPE instrument.

**TOPIC NO. 24:**

Vizgen's MERSCOPE sales to for-profit and/or other customers in the United States.

**TOPIC NO. 25:**

Vizgen's performance of MERSCOPE Lab Services on behalf of for-profit and/or other customers.

**TOPIC NO 26:**

Sales of, and royalties paid to Harvard in connection with, Vizgen products purchased by non-profit customers and/or academic research institutions.

**TOPIC NO. 27:**

All factual bases that Harvard was aware of, a participant in, and/or a party to any agreement or understanding relating to any aspect of 10x's alleged predatory pricing and bundling strategies.

**TOPIC NO. 28:**

All factual bases that Harvard was aware of, a participant in, and/or a party to any agreement or understanding relating to any aspect of an alleged "ever more multi-faceted scheme to eliminate competition from the SST Market that combines their unlawful 'Open Early, Closed Late' and Sham Litigation conduct with other anticompetitive tactics, including the spreading of fear, uncertainty, and doubt in the marketplace; illegal bundling, tying, and predatory pricing; and other acts amplifying the 'Open Early, Close Late' and sham allegations that formed the original basis of Vizgen's claims." *See* Vizgen's Amended Answer, Defenses, and Counterclaims to Plaintiffs' Second Amended Complaint, D.I. 440, ¶ 142.

*Of Counsel:*
TENSEGRITY LAW GROUP LLP

Matthew D. Powers
Paul Ehrlich
William P. Nelson
Stefani Smith
Robert Gerrity
Li Shen
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000

Azra M. Hadzimehmedovic
Aaron M. Nathan
Samantha A. Jameson
Ronald J. Pabis
Kiley White
1676 International Drive
Suite 910

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Jason J. Rawnsley*
Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com

*Attorneys for 10x Genomics*

13

McLean, VA 22102-3848
Tel: (650) 802-6000

10x_Vizgen_Service@tensegritylawgroup.com

LATHAM & WATKINS LLP
Marguerite M. Sullivan
Molly M. Barron
Christopher John Brown
Brian Barrows Goodell
Sahdia Khan
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200
marguerite.sullivan@lw.com
molly.barron@lw.com
chris.brown@lw.com
brian.goodell@lw.com
sahdia.khan@lw.com

Kelly Fayne
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
kelly.fayne@lw.com

Dated: May 28, 2024

*Of Counsel*:

Michael J. Tuteur
Ruben J. Rodrigues
Geoffrey M. Raux
Lea Gulotta James
John W. Custer
Lucas I. Silva
Amani S. Kmeid
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
(617) 502-3284

Sarah E. Rieger
Kate E. Gehl
Ian T. Hampton
FOLEY & LARDNER LLP

MORRIS JAMES LLP

/s/ *Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Ave., Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for President and Fellows of Harvard College*

14

777 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 271-2400

Jarren N. Ginsburg
Alan D. Rutenberg
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 295-4071

Jared J. Braithwaite, Esq.
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, Utah 84111
(801) 401-8920

BOST-F-10Xv.Vizgen@foley.com

Dated: May 28, 2024