## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>      Plaintiffs,<br><br>   v.<br><br>VIZGEN, INC.,<br><br>      Defendant. | C.A. No. 22-595-MFK<br><br><br>REDACTED - PUBLIC VERSION<br>(Filed December 17, 2024) |
| VIZGEN, INC.,<br><br>      Counterclaim-Plaintiff,<br><br>and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>      Counterclaim-Plaintiff as to certain claims,<br><br>   v.<br><br>10X GENOMICS, INC.,<br><br>      Counterclaim-Defendant as to certain claims,<br><br>and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>      Counterclaim-Defendant as to certain claims. | |

**VIZGEN, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE EXPERT TESTIMONY UNDER *DAUBERT***

## <u>TABLE OF CONTENTS</u>

I.    Vizgen's Motions for Summary Judgment ..........................................................1

    A.    10x is not Entitled to Damages for Vizgen's Foreign Sales ...................................1

    B.    Vizgen Sales to Academic and Non-Profit Customers are Noninfringing and Thus Should be Excluded From Damages ....................1

    C.    The TOSS Patents Asserted Claims are Invalid Under 35 U.S.C. § 112...........................................................................................................3

        1.    The TOSS Patents Asserted Claims Lack Enablement.............................3

        2.    The TOSS Patents Asserted Claims Lack Written Description...................................................................................................5

II.    Vizgen's Motions to Exclude Expert Opinions ................................................6

    A.    Dr. Quackenbush and Ms. Davis's Opinions on Damages Should be Excluded............................................................................................6

    B.    Professor Eisenberg's Testimony Should be Excluded ...........................8

        1.    Professor Eisenberg's Legal Opinions Must Be Excluded .........................8

        2.    Professor Eisenberg Cannot Opine Directly on the Substantive Law of Bayh-Dole...................................................9

III.    Conclusion ......................................................................................................10

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

<span style="font-variant: small-caps">CASES</span>

*Amgen Inc. v. Sanofi,*
   598 U.S. 594 (2023)...................................................................................................4

*Amgen, Inc. v. Chugai Pharm. Co.,*
   927 F.2d 1200 (Fed. Cir. 1991)................................................................................4

*AstraZeneca UK Ltd. v. Watson Lab'ys, Inc. (NV),*
   2012 WL 6043266 (D. Del. Nov. 14, 2012) ..........................................................10

*Baer v. Chase,*
   392 F.3d 609 (3d Cir. 2004)......................................................................................2

*Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.,*
   2010 WL 3907490 (D. Del. Sept. 21, 2010)..........................................................10

*Crawford v. George & Lynch, Inc.,*
   19 F. Supp. 3d 546 (D. Del. 2013)............................................................................2

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.,*
   No. 2:15-CV-1202-WCB, 2016 WL 6138124 (E.D. Tex. Oct. 21, 2016)................4

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.,*
   10 F.4th 1330 (Fed. Cir. 2021) .............................................................................5, 6

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.,*
   2015 WL 6750899 (E.D. Pa. Nov. 5, 2015) ..........................................................10

*Lippe v. Bairnco Corp.,*
   99 F. App'x 274 (2d Cir. 2004) ................................................................................7

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.,*
   2019 WL 5206273 (N.D. Ill. Mar. 13, 2019)...........................................................9

*Smith v. I-Flow Corp.,*
   2011 WL 12556366 (N.D. Ill. May 3, 2011) ...........................................................9

*In re Testosterone Replacement Therapy Prod. Liab. Litig.,*
   No. 14 C 1748, 2017 WL 1836443 (N.D. Ill. May 8, 2017) ....................................9

*Toms v. J.C. Penney Co.,*
   304 F. App'x 121 (3d Cir. 2008) ..............................................................................1

*United States v. Benson,*
    941 F.2d 598 (7th Cir. 1991) ............................................................................................10

*United States v. Leo,*
    941 F.2d 181 (3d Cir. 1991).............................................................................................9

*Univ. of Rochester v. G.D. Searle & Co.,*
    358 F.3d 916 (Fed. Cir. 2004)..........................................................................................6

*W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.,*
    2015 WL 12815314 (D. Del. Nov. 20, 2015) ........................................................................10

**RULES**

Fed. R. Evid. 702 ............................................................................................................7

## I.      VIZGEN'S MOTIONS FOR SUMMARY JUDGMENT

### A.      10x is not Entitled to Damages for Vizgen's Foreign Sales

To recover damages for Vizgen's foreign sales, 10x must first prove a causal relationship between Vizgen's domestic infringement and its foreign sales.  10x cannot show causation, either through its experts or by other evidence in the case.

First, as 10x itself admits, Ms. Davis—10x's sole expert to provide testimony regarding this issue—failed to demonstrate or otherwise prove causation between domestic infringement and the foreign sales.  D.I. 588 ("Opp'n") at 1.  Second, even a cursory examination of the deposition testimony and documentary evidence cited by 10x does not, in fact, demonstrate the requisite causation.  For example, 10x asserts that "Vizgen's domestic testing of MERSCOPE . . . enable[s] Vizgen's profits from foreign sales."  But this generic statement ignores the fact that Vizgen's commercialization testing occurred in Europe as well as domestically, and 10x has not, and cannot, segregate out the domestic testing.  D.I. 593, Ex. A at 21:10-15.  As another example, 10x asserts "data generated through Vizgen's infringement" are a key feature of its worldwide marketing strategy, citing testimony of Vizgen's Terry Lo.  However, Mr. Lo merely explained that publications relating to *MERFISH* (which can be practiced independently of Vizgen, including any use of MERSCOPE), ███████████████████████████████████████████.  *See* D.I. 593, Ex. B at 48:23-49:22.  This is insufficient evidence for a reasonable jury to find causation, and thus, summary judgment should be granted.  *See Toms v. J.C. Penney Co.*, 304 F. App'x 121, 123 (3d Cir. 2008).

### B.      Vizgen Sales to Academic and Non-Profit Customers are Noninfringing and Thus Should be Excluded From Damages

████████████████████████████████████████████████████

█████████████  ███████████████████████████████████████████

1

███████████████████████████████████████████████████████████

███████████████████████████████████████████ Mot. at 3-5.  Harvard's

own licensing witnesses confirmed the understanding of this provision.  D.I. 560 ("SOF") ¶¶ 8-9

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████ Harvard claimed that it ██████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████ *Id.* ¶¶ 12-14.  Plaintiffs'

contention that non-profits are free from infringement ██████████████████████

███████████████████████████████████████ █████████████████████

██████████████████████████████ █████████ SOF ¶ 7.

Harvard cannot now introduce an after-the-fact self-serving declaration about its so-called

intent to overcome the clear contractual language, which is corroborated by Harvard's own

testimony and statements.  Jordan Grant's declaration (D.I. 596) should be disregarded.  *See Baer*

*v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004) ("a party may not create a material issue of fact to

defeat summary judgment by filing an affidavit disputing his or her own sworn testimony");

*Crawford v. George & Lynch, Inc*., 19 F. Supp. 3d 546, 556–57 (D. Del. 2013) (affidavit

conflicting with deposition does "not raise a genuine issue of material fact and can properly be

disregarded when the conflict is unexplained or unsupported by other record evidence").[1]

Finally, the fact *Vizgen* may have 

Moreover, when paying patent royalties to Harvard,

Ex. 28.  Plaintiffs' interpretation is not "commercially reasonable" (Opp'n at 4-5) because

### C.    The TOSS Patents Asserted Claims are Invalid Under 35 U.S.C. § 112

Plaintiffs' arguments against the invalidity of the TOSS Patents under the enablement and written description doctrines depend on a fallacy: that the Asserted Claims do not claim "analytes," only methods for detecting them, so there is no need to enable or describe their full scope.  This argument is misdirection that does not bear on the invalidity issues.

### 1.    The TOSS Patents Asserted Claims Lack Enablement

The Asserted Claims all involve identifying an "analyte" or its location in a sample.  SOF ¶ 16.  The Court construed "analyte" as "the *molecule* detected, identified or measured *by binding of a detection reagent whose probe reagent(s) recognize it* (*i.e.*, are specific binding partners thereto)."  D.I. 327 at 23 (emphases added).  The Common Specification states that the term "analyte" encompasses "nucleic acid, peptide, a polypeptide/protein . . . a lipid, a carbohydrate, a glycoprotein, a glycolipid, a small molecule, or organic monomer, sugar, peptidoglycan, a cell, a

---

[1] In addition, the declaration includes irrelevant and improper expert legal opinion about the "NIH Research Tools Policy," purporting to interpret a Federal Register notice and opine on "the goal of such a retained rights provision" and "its aim." D.I. 596 ¶¶ 6, 7.  Not only is this entirely irrelevant to the issue of the Harvard/ReadCoor license, Plaintiffs did not disclose Mr. Grant as an expert, and any opinions about the notice are legal analysis reserved for the Court.

virus or a drug." SOF ¶ 17. Accordingly, the inventors needed to provide enabling disclosure on how to detect this full range of analytes using the claimed detection reagents. A single experiment on yeast cells falls short of enabling the full scope of any Asserted Claims, including those to a nucleic acid analyte. *Cf.* Opp'n at 9 & n.3.

Controlling Supreme Court and Federal Circuit guidance in *Amgen* and *Baxalta* requires enabling disclosure for the "the full scope of the invention." *Amgen Inc. v. Sanofi*, 598 U.S. 594, 610-12 (2023). Plaintiffs rely on inapposite nonprecedential, pre-*Amgen* cases. Opp'n at 7-8. For example, *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.* involved claims to "administering an effective amount" of a known drug type, No. 2:15-CV-1202-WCB, 2016 WL 6138124, at *15 (E.D. Tex. Oct. 21, 2016), but here the Asserted Claims require *binding* "analytes" with "detection reagents" comprising "predetermined sequences" to identify them.

10x's arguments regarding an alleged lack of novelty are irrelevant to the enablement issue. The Asserted Claims reflect a functional genus and are not limited to non-"novel binding interaction[s]." Opp'n at 7-8. Nor does 10x identify any such claim limitation. 10x cannot amend or limit the Asserted Claims through its opposition brief.

10x argues incorrectly that *Wands* factors raise factual disputes precluding summary judgment. Opp'n at 8. But "it is not necessary that a court review all the *Wands* factors to find a disclosure enabling. They are illustrative, not mandatory." *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991) (affirming invalidity). In *Baxalta*, the Federal Circuit affirmed summary judgment of lack of enablement without analyzing each *Wands* factor. 81 F.4th at 1367. Here, the relevant factors show the Common Specification fails to teach a POSA how to do everything claimed. For the *Wands* factor on "working examples," 10x concedes that the specification only has "a working example where the detection reactions comprise antibody

probes" for yeast cells, and then, states no additional examples are needed. Opp'n at 10. This is plainly false—a single yeast experiment cannot be representative of all "analytes" listed above. SOF ¶ 25. 10x's expert believes the "inventive aspects" are temporal detection (Opp'n at 9), but that does not change the claim language that recites "analytes" and "detection reagents." SOF ¶ 16. Despite the absence of working examples, 10x's expert contends there are "inherent limits" on the analytes, and a POSA could design any "detection reagent" and "predetermined subsequences" as a "function of the degree of multiplexing and available colors." Opp'n at 10, 12. These arguments only reinforce that the claims recite a genus defined by function—use of any detection reagents that bind to any analytes—that requires undue experimentation. 10x tries to dismiss its own expert's distinction between "*in situ*" and "*ex situ*" as attorney argument (*id.* at 13), but the Asserted Claims are not limited to *in situ* methods and require commensurate enablement, which 10x cannot identify. 10x cannot create a factual dispute by citing its expert report, because that report cannot <u>add</u> working examples to the Common Specification or narrow the scope of the claims as construed.

Moreover, even if the claims are directed to "*in situ* analysis," 10x fails to identify any specification examples of the claimed methods performed *in situ*. Nor could it. Nowhere in the four corners of the specification is there a description of an *in situ* example of the claimed method.

### 2. The TOSS Patents Asserted Claims Lack Written Description

Plaintiffs' written description arguments similarly rely on improper attempts to narrow the scope of the Asserted Claims. 10x contends the Common Specification needs only show "the inventors invented the *novel temporal detection method*." Opp'n at 14-15 (emphasis added). "But the written description must lead a person of ordinary skill in the art to understand that the inventors possessed the *entire scope* of the claimed invention." *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330, 1337 (Fed. Cir. 2021) (emphasis added). 10x tries to distinguish

*Juno* as dealing with "genus claims using functional language," *id.* at 1335, but that is what the Asserted Claims are. As explained above, 10x's expert confirms this by opining that the scope of "analytes," "detection reagents," and "predetermined subsequences" are defined by their functional relationship to each other. Opp'n at 12. Moreover, the Federal Circuit held that written description applies equally to method and composition claims:

> Regardless whether a compound is claimed per se or a method is claimed that entails the use of the compound, the inventor cannot lay claim to that subject matter unless he can provide a description of the compound sufficient to distinguish infringing compounds from non-infringing compounds, or infringing methods from non-infringing methods.

*Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 926 (Fed. Cir. 2004).

## II.    VIZGEN'S MOTIONS TO EXCLUDE EXPERT OPINIONS

### A.    Dr. Quackenbush and Ms. Davis's Opinions on Damages Should be Excluded

10x contends that Ms. Davis did not arbitrarily select a weight of ▮▮▮▮▮ for non-comparable patents because she relied on a conversation with Dr. Quackenbush ahead of her initial report. Opp'n at 17-18. 10x cites only the identification of a conversation with Dr. Quackenbush in the "information relied upon" to support its argument that Dr. Quackenbush assigned a weight ▮▮▮▮▮ to certain patents. *Id.* Carefully reviewing Ms. Davis's report, however, demonstrates that Ms. Davis did not rely on Dr. Quackenbush for that conclusion. Indeed, nowhere in Ms. Davis's report does she credit Dr. Quackenbush for valuing the non-comparable patents ▮▮▮▮▮ ▮▮▮▮▮ *See* Ex. 2[2] at 35-36 (noting ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮). Nor does 10x point the Court to any such citation in Ms.

---

[2]    Unless otherwise indicated, references to numerical exhibits (*i.e.*, Exs. 1, 2, etc.) refer to the exhibits to Vizgen's Huang Declaration in Support of Its Opening Brief (D.I. 565) and Huang Declaration in Support of Its Reply Brief filed herewith.

Davis's report because it cannot.[3]   As explained in Vizgen's Motion, Ms. Davis's random assignation of value to patents is improper and should be excluded under *Daubert*.

10x next tries but fails to show that Dr. Quackenbush provided necessary support for the numerical valuation relied on by Ms. Davis.  *See* Opp'n at 19-20.  Nowhere does 10x show that Dr. Quackenbush weighted certain patents ████ *Id.*  Indeed, the concept of a numerical weight appears ***nowhere*** in his opening report.  *See* Quackenbush Att. A (D.I. 595) ¶¶ 528-56.

10x points to the inconsistencies in Dr. Quackenbush's *Prognosys* analysis to suggest that Vizgen takes issue with Dr. Quackenbush's conclusions and not his methodology.  *Id.*  As an initial matter, 10x is incorrect that in the *Prognosys* case Dr. Quackenbush was comparing the Prognosys patents to the ReadCoor patents.  Dr. Quackenbush clearly compared different ReadCoor patent families in valuing the importance of the patents.  *See* D.I. 559 ("Mot.") at 13.  Yet in making that comparison—the same one done in this case—Dr. Quackenbush arrived at a different result, which 10x claims is unsurprising because his analysis includes "patents that have issued since his *Prognosys* opinion."  Opp'n at 20.  Yet, had Dr. Quackenbush applied his alleged "methodology" consistently and still included newly issued patents, Ms. Davis's arithmetic would have been significantly different (████████████).  *See* Davis Att. B (D.I. 594) at 8 n. 37-38.  Allegedly applying the same methodology and arriving at different results is the epitome of unreliable methodology.  *See* Fed. R. Evid. 702; *Lippe v. Bairnco Corp.*, 99 F. App'x 274, 279 (2d Cir. 2004) (holding failure to "yield similar results" after the expert admitted two analyses should

---

[3]  Ms. Davis's opening report is clear; she did not rely on the alleged conversation with Dr. Quackenbush for her valuation of ████  Only after Vizgen's expert pointed out the lack of support for Ms. Davis's valuation did she suddenly find proof for her valuation in Dr. Quackenbush's ***reply*** report.  *See* Ex. 19 at ¶ 128.  Dr. Quackenbush himself admitted that the valuation must be ████████████, *see id.*, meaning the valuation was not explicit.

is one of many "indicia of unreliability").

Finally, 10x claims that Ms. Davis determined a royalty rate for "each asserted patent" because the comparable license terms would apply to ████████████████████. Opp'n at 18. 10x and Ms. Davis pick and choose at whim which license terms they wish to rely on to arrive at the largest possible royalty rate. *See* Davis Decl., Att. A at 33-37 (mixing the Harvard-ReadCoor license terms with the 10x-ReadCoor merger valuation). On one hand, Ms. Davis ignores the ██ ██ royalty rate in the Harvard-ReadCoor license in favor of an implied royalty rate Ms. Davis calculated from the 10x-ReadCoor merger. *See* Davis Att. A (D.I. 594) at 37 (noting the Harvard-ReadCoor royalty rate and "implied royalty rate" from the 10x-ReadCoor merger valuation). But instead of apportioning down to only the asserted patents—as she must—Ms. Davis relies on ██ ███████████████████████████ to justify a royalty rate that includes the whole family. Neither 10x nor Ms. Davis seems to suggest that Vizgen would be licensing the whole patent family in the hypothetical negotiation. Yet, 10x offers no rational reason why Vizgen would agree to pay a ████████████████████ for only the five asserted patents. Mot. at 15; Opp'n at 18. Ms. Davis has not apportioned to the asserted patents, and her damages opinion should be excluded for this additional reason.

### B. Professor Eisenberg's Testimony Should Be Excluded

#### 1. Professor Eisenberg's Legal Opinions Must Be Excluded

Plaintiffs do not challenge that an expert is forbidden from testifying regarding contractual interpretation and the meaning of the law. That is exactly the purpose for which Plaintiffs offer a University of Michigan law professor to testify in this case: to supplant the role of the Court and have the professor instruct the jury as to how to interpret the Harvard's Grant Application in light of the (inapplicable) Bayh-Dole Act, parroting legal arguments that Harvard makes in its summary judgment brief. Plaintiffs try to couch her testimony within an argument that the promises in the

8

Grant Application are ambiguous and require extrinsic evidence to be understood.  For the reasons stated in Vizgen's Opp'n (D.I. 586) at 48-52, Plaintiffs are wrong.  In any event, Professor Eisenberg offers nothing beyond legal opinions designed to supplant this Court's role.  She testified that her only official work with the NIH was to serve on a committee over **twenty years ago** and she has not served in any official capacity with the NIH since.  *Id.*, Ex. 26 at 32:11-17.  Further, Professor Eisenberg has never drafted a request for proposal, program announcement, or notice of award on behalf of NIH or any federal agency (*id.* at 34:11-35:24), and was not personally involved in any of the examples of DECs she cites to in her report.  Nor, did she consider any correspondence in the record in this case, beyond letters between NIH and Harvard in 2023, long after the grant was applied for and awarded—offering her **personal interpretation** of the grant promises and letters between Harvard and NIH, without any further investigation.  *Id.* at 245:11-15 (████████████████████████████████████████████████

████████████████████████████████████).

Professor Eisenberg's testimony is unlike the expert testimony allowed by the court in *United States v. Leo*, cited by Plaintiffs (Opp'n at 22), where the court allowed testimony from an expert in government contracting concerning the relevant **"customs and practices"** of that industry. 941 F.2d 181, 196-97 (3d Cir. 1991).  Professor Eisenberg does not attempt to opine on customs and practices, such as NIH's internal procedures, but merely provides her interpretation of Bayh-Dole.  Ex. 24 ¶¶ 19-29.

### 2.    Professor Eisenberg Cannot Opine Directly on the Substantive Law of Bayh-Dole

Plaintiffs do not cite any case where an expert was allowed to opine directly on Bayh-

Dole.[4] Courts in this district have a "well-established practice of excluding the testimony of legal experts, absent *extraordinary circumstances*." *AstraZeneca UK Ltd. v. Watson Lab'ys, Inc. (NV)*, 2012 WL 6043266, at *1 (D. Del. Nov. 14, 2012).  Further, courts draw a distinction between expert analysis that aids in understanding complex factual matters, and testimony that directly interprets legal standards. *Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, 2010 WL 3907490, at *2 (D. Del. Sept. 21, 2010) (while experts may testify as to factual matters such as the practices and procedures of the PTO, the "law of this district is clear that experts in patent cases may not . . . provide legal conclusions.").  Rather than providing clarification regarding a technical or factual matter, Professor Eisenberg's testimony merely falls into the prohibited category of directly opining on substantive law, something an expert cannot do. *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (precluding expert testimony that "consists of nothing more than drawing inferences from the evidence that [experts are] no more qualified than the jury to draw").

## III.    CONCLUSION

Vizgen respectfully requests the Court grant its Summary Judgment and *Daubert* motions.

---

[4] Plaintiffs' citations (Opp'n at 23-24) do not suggest otherwise.  *See In re Testosterone Replacement Therapy Prod. Liab. Litig.*, No. 14 C 1748, 2017 WL 1836443, at *15 (N.D. Ill. May 8, 2017) (excluding testimony regarding "purely legal issue[s]"); *Smith v. I-Flow Corp.*, 2011 WL 12556366, at *5-6 (N.D. Ill. May 3, 2011) (prohibiting "expert testimony as to legal conclusions"); *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 2019 WL 5206273, at *3 (N.D. Ill. Mar. 13, 2019) (expert may not cross the line into impermissible testimony regarding another person's intent); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2015 WL 6750899, at *16 (E.D. Pa. Nov. 5, 2015) (allowing expert testimony regarding Hatch-Waxman in the context of explaining arguments made during a separate litigation); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 2015 WL 12815314, at *4 (D. Del. Nov. 20, 2015) (allowing testimony regarding PTO practices and procedures).

Dated: December 10, 2024

Respectfully submitted,

*Of Counsel*:
David Bilsker
Adam B. Wolfson
Sam Stake
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
davidbilsker@quinnemanuel.com
samstake@quinnemanuel.com
adamwolfson@quinnemanuel.com

Kevin Johnson
Victoria Maroulis
Brian C. Cannon
Andrew Bramhall
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
kevinjohnson@quinnemanuel.com
victoriamaroulis@quinnemanuel.com
briancannon@quinnemanuel.com
andrewbramhall@quinnemanuel.com

Patrick D. Curran
Eric D. Wolkoff
Kathleen Marini
Angela Nelson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100
patrickcurran@quinnemanuel.com
ericwolkoff@quinnemanuel.com
kathleenmarini@quinnemanuel.com
angelanelson@quinnemanuel.com

Angus Chen
Catherine T. Mattes
David D. LeRay
Andrew Tigchelaar
Neil Bhargav Setlur
QUINN EMANUEL URQUHART & SULLIVAN, LLP

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Jennifer P. Siew*
James L. Higgins (No. 5021)
Pilar G. Kraman (No. 5199)
Jennifer P. Siew (No. 7114)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jhiggins@ycst.com
pkraman@ycst.com
jsiew@ycst.com

*Attorneys for Vizgen, Inc.*

11

51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
anguschen@quinnemanuel.com
catherinemattes@quinnemanuel.com
davidleray@quinnemanuel.com
andrewtigchelaar@quinnemanuel.com
bhargavsetlur@quinnemanuel.com

Michael J. Songer
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
michael.songer@whitecase.com

Henry Y. Huang
Tiffany Huynh
WHITE & CASE LLP
3000 El Camino Real
Palo Alto, CA 94306
(650) 213-0300
henry.huang@whitecase.com
tiffany.huynh@whitecase.com

Alexandra J. Cho
Samantha J. Kokonis
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
alexa.cho@whitecase.com
samantha.kokonis@whitecase.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 10, 2024, a copy of the

foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Kenneth L. Dorsey
Cortlan S. Hitch
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
kdorsney@morrisjames.com
chitch@morrisjames.com

Geoffrey M. Raux
Ruben J. Rodrigues
Michael J. Tuteur
Lea Gulotta James
Lucas I. Silva
Amani S. Kmeid
Foley & Lardner LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199

Sarah E. Rieger
Kate E. Gehl
Ian T. Hampton
Sydney K. Hecimovich
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202

Jarren N. Ginsburg
Alan D. Rutenberg
Foley & Lardner LLP
Washington Harbour
3000 K Street NW, Suite 600
Washington, DC 20007

Jared J. Braithwaite
Maren Laurence
Foley & Lardner LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111

Frederick L. Cottrell, III
Jason J. Rawnsley
Alexandra M. Ewing
Gabriela Z. Monasterio
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com
monasterio@rlf.com

Samantha Jameson
Kiley White
Ron Pabis
Joanna R. Schacter
Azra M. Hadzimehmedovic
Aaron M. Nathan
Parshad K. Brahmbhatt
Grace Getes
Tensegrity Law Group LLP
1676 International Drive, Suite 910
McLean, VA 22102

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
William P. Nelson
Tensegrity Law Group LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065

10x_Vizgen_Service@tensegritylawgroup.com

Marguerite M. Sullivan
Molly M. Barron
Christopher John Brown

Andrew M. Gross
Foley & Lardner LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654

BOST-F-10Xv.Vizgen@foley.com

*Attorneys for President and Fellows of Harvard College*

Brian Barrows Goodell
Sahdia Khan
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
marguerite.sullivan@lw.com
molly.barron@lw.com
chris.brown@lw.com
brian.goodell@lw.com
sahdia.khan@lw.com

Kelly Fayne
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
kelly.fayne@lw.com

*Attorneys for 10X Genomics, Inc*

Young Conaway Stargatt & Taylor, LLP

*/s/ Jennifer P. Siew*
James L. Higgins (No. 5021)
Pilar G. Kraman (No. 5199)
Jennifer P. Siew (No. 7114)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jhiggins@ycst.com
pkraman@ycst.com
jsiew@ycst.com

*Attorneys for Vizgen, Inc.*