# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| 10x GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Plaintiffs,<br><br>v.<br><br>VIZGEN, INC.,<br><br>    Defendant. | C.A. No. 22-595-MFK<br><br>**PUBLIC VERSION** |
| VIZGEN, INC.,<br><br>    Counterclaim-Plaintiff,<br><br>v.<br><br>10x GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Counterclaim-Defendants |  |

## [PROPOSED] JOINT PRETRIAL ORDER

# TABLE OF CONTENTS

I.    JURISDICTION ..................................................................................... 1

II.    CLAIMS ................................................................................................ 1

III.    RELIEF SOUGHT ................................................................................ 3

    A.    Relief Sought by 10x and Harvard.......................................... 3

    B.    Relief Sought by Vizgen ......................................................... 4

IV.    WITNESSES AND OBJECTIONS THERETO ................................... 7

    A.    Trial Witness List .................................................................... 7

    B.    Witnesses Appearing By Deposition ....................................... 7

    C.    10x and Harvard's Objections to Vizgen's Witness List and Designations ........ 10

        1.    Objection to Vizgen's Identification of Keith Crandell as a Live Witness ................................................................... 10

        2.    Designated Untimely Testimony Exceeding Vizgen's Permissible Deposition Time ..................................... 12

        3.    Prejudicial Designation of Testimony Where A Non-Corporate Witness Lacked Foundation To Provide A Substantive Response ....................... 12

        4.    Exclude Designated Deposition Testimony That Was Timely Objected to on Attorney-Client Privilege Grounds .................................................................. 12

    D.    Vizgen's Objections to 10x's and Harvard's Witness Lists and Designations.... 14

        1.    Expert Witnesses Not Disclosed and Offering Improper and Prejudicial Testimony ................................ 14

        2.    Witnesses Not Unavailable Within the Meaning of FRE 804(b)(1)........ 15

        3.    Witnesses For Whom 10x Served Untimely Designations and For Whom Vizgen Did Not Have an Opportunity and Motive to Develop Testimony Within the Meaning of FRE 804(b)(1) .................................................. 17

V.    EXHIBITS AND OBJECTIONS THERETO ................................... 18

VI.    LENGTH AND TYPE OF TRIAL ................................................... 20

    A.    Issues to be Decided by the Court........................................... 21

i

      1.    Vizgen's Position ................................................................. 21

      2.    10x and Harvard's Position ................................................ 23

VII.    PROPOSED VOIR DIRE QUESTIONS ................................................. 24

VIII.   PROPOSED JURY INSTRUCTIONS ...................................................... 25

IX.     PROPOSED VERDICT FORM ................................................................ 25

X.      MOTIONS *IN LIMINE* ........................................................................... 25

XI.     ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF TRIAL ................... 25

    A.    Order of Presentation ................................................................. 25

    B.    Agreements Regarding Exchanges During Trial ................................. 27

      1.    Exchanges of Exhibits to Be Used With Opening Arguments ............... 27

      2.    Exchange Of Exhibits And Illustratives To Be Used With Witnesses During Trial ........................................................... 28

      3.    Identification of Order of Witnesses as Trial Process ........................... 29

      4.    Presentation Of Deposition Designations ................................. 30

      5.    Outside Attorneys' Eyes Only Information ............................. 32

    C.    Juror Notebooks ................................................................. 33

    D.    Resolution Of Claim Construction Disputes ...................................... 33

    E.    Deposition of Gabriella Behm ............................................... 35

**TABLE OF ATTACHMENTS & EXHIBITS**

| Attachment | Description |
|---|---|
| 1 | Witness Lists |
| 1A | Plaintiffs' witness list and Vizgen's objections |
| 1B | Vizgen's witness list and 10x and Harvard's objections |
| 2 | Tables, listing by page and line, of the testimony designated by 10x, Vizgen's objections and counter-designations, and 10x's objections to Vizgen's counter-designations |
| 2A | Brittany Auclair |
| 2B | Joseph Beechem |
| 2C | Alistair Boettiger |
| 2D | Michaeline Bunting |
| 2E | Long Cai |
| 2F | Vikram Devgan |
| 2G | George Emmanuel |
| 2H | Douglas Farrell |
| 2I | Brad Gray |
| 2J | Jiang He |
| 2K | Elizabeth Hicks-Kridel |
| 2L | Sean Kendall |
| 2M | Dale Levitzke |
| 2N | Terry Lo |
| 2O | Beth Nye |
| 2P | Mickael Ploquin |
| 2Q | Paul Rasmussen |
| 2R | David Walt |
| 2S | Peidong Wang |
| 2T | Siyuan Wang |
| 3 | Tables, listing by page and line, of the testimony designated by Harvard, Vizgen's objections and counter-designations, and Harvard's objections to Vizgen's counter-designations |
| 3A | Evan Daugharthy |
| 3B | George Emanuel |
| 3C | Sean Kendall |
| 3D | David Walt |
| 3E | Peidong Wang |
| 3F | Eric Whitaker |
| 3G | Terry Lo |
| 4 | Tables, listing by page and line, of the testimony designated by Vizgen, 10x's and Harvard's objections and counter-designations, and Vizgen's objections to 10x's and Harvard's counter-designations |
| 4A | John Aach |
| 4B | Michaeline Bunting |

| Attachment | Description |
|---|---|
| 4C | George Church |
| 4D | James Culverwell |
| 4E | Evan Daugharthy |
| 4F | Jessica Duda |
| 4G | Jordan Grant |
| 4H | Mira Grigorova |
| 4I | Isaac Kohlberg |
| 4J | Melissa Korf |
| 4K | Je Lee |
| 4L | Dale Levitzke |
| 4M | Sam Liss |
| 4N | Shawn Marcell |
| 4O | Nikhil Rao |
| 4P | Serge Saxonov |
| 5 | The Parties' objection keys |
| 6 | The Parties' Joint Trial Exhibit List |
| 7 | Plaintiffs' Trial Exhibit List, including Vizgen's specific objections thereto |
| 8 | Vizgen's Trial Exhibit List, including 10x and Harvard's specific objections thereto |
| 9 | Proposed Voir Dire |
| 10A | Proposed Preliminary Jury Instructions |
| 10B | Proposed Final Jury Instructions |
| 11 | Plaintiffs' proposed verdict form |
| 12 | Vizgen's proposed verdict form |
| Exhibit A | [Vizgen Exhibit] Vizgen's Nov. 20, 2023 ROG Responses (Excerpted) |
| Exhibit B | [Vizgen Exhibit] Excerpts of Deposition Testimony cited herein by Vizgen |
| Exhibit C | [Vizgen Exhibit] Vizgen's May 31, 2024 Responses to 10x's Interrogatories (Excerpted) |
| Exhibit D | [Plaintiffs Exhibit] Email re: Vizgen's Initial List of Expected MILs, dated January 6, 2025 |
| Exhibit E | [Plaintiffs Exhibit] Expert Report of Michael L. Metzker, Ph.D. Regarding the Invalidity of U.S. Patent nos. 11,021,737, 11,293,051, 11,293,052 and 11,549,136, dated August 14, 2024 (Excerpted) |

Plaintiffs 10x Genomics, Inc. and President and Fellows of Harvard College and Defendant Vizgen, Inc. (the "Parties") offer the following proposed Joint Pretrial Order.

The Parties have followed Judge Kennelly's Final Pretrial Order requirements in preparing this proposed Pretrial Order, as well as the requirements of the Pretrial Schedule (D.I. 571).[1]

This Order will control the course of the trial and may not be amended except by consent of the Parties, or by order of the Court.

## I.    JURISDICTION

This Court has jurisdiction over 10x and Harvard's Counts I-V pursuant to 28 U.S.C. §§ 1331 and 1338(a).

This Court has jurisdiction over Vizgen's Counterclaim Counts I, IV, V, VI-XV, and XXI pursuant to 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act); 35 U.S.C. § 1 (Patent Laws); and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

The Parties do not dispute subject matter jurisdiction, personal jurisdiction, or venue for purposes of this action.

## II.    CLAIMS

10x and Harvard accuse Vizgen of infringing U.S. Patent Nos. 11,021,737 ("the 737 Patent"), 11,293,051 ("the 051 Patent"), 11,293,052 ("the 052 Patent"), 11,299,767 ("the 767 Patent"), and 11,549,136 ("the 136 Patent") (collectively, the "Asserted Patents") (Counts I – V). Vizgen is accused of infringing the Asserted Patents directly by using the Accused Instrumentalities, including Vizgen's MERSCOPE Platform and associated products, both for internal purposes and on behalf of its customers through Vizgen Lab Services. Vizgen is also accused of indirectly infringing the Asserted Patents by inducing others to infringe and by

---

[1] https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_judges/KENNELLY/FinalPretrialOrder.pdf

contributing to the infringement by others. Vizgen is also accused of willfully infringing the Asserted Patents since at least February 28, 2022, as to the 737 Patent, at least May 2, 2022, as to the 767, 051, and 052 Patent, and at least February 2, 2023, as to the 136 Patent. *See* Second Amended Complaint (D.I. 123); March 11, 2024 10x's Final Infringement Contentions.

Vizgen denies 10x and Harvard's infringement claims and denies that its conduct has been willful. Vizgen counterclaims for declaratory judgment of non-infringement and invalidity of the Asserted Patents (Counts VI-XV). Vizgen also asserts affirmative defenses to 10x and Harvard's Counts I-V, including Noninfringement; Invalidity; 35 U.S.C. § 287; No Equitable Relief; Equitable Defenses (license, laches, consent, waiver, estoppel, acquiescence, payment, and release); Judicial Estoppel; Patent Misuse; and Unclean Hands. *See* Vizgen's Amended Answer and Counterclaims at pp. 8-15 (D.I. 440).

In its counterclaims, Vizgen accuses Harvard of Breach of the Implied Covenant of Good Faith and Fair Dealing (Count I) and accuses 10x of Tortious Interference with Vizgen's Advantageous Business Relations (Count IV). Vizgen further alleges that Harvard violated Massachusetts law Chapter 93A (Counts V & XXI), which prohibits unfair or deceptive conduct.

10x and Harvard deny Vizgen's counterclaims and defenses. Plaintiffs further deny that Vizgen's Count IV has any scope beyond 10x's alleged interference with certain Vizgen customers (D.I. 641 at 36). Plaintiffs deny that Vizgen's defense of license (part of the Sixth Defense) survived the Court's February 2, 2023 order dismissing Vizgen's breach of warranty counterclaims. D.I. 114. *See also* Plaintiffs' MIL 4 (seeking to exclude evidence or argument inconsistent with the unambiguous language of the contract and the order on the motion to dismiss). Plaintiffs deny that Vizgen has asserted an implied license defense. *See* D.I. 440 at 9-11. 10x asserts defenses to Vizgen's counterclaims, including infringement and validity of 10x and

Harvard's asserted patents (denials joined by Harvard) against Vizgen's declaratory judgment claims; failure to state a claim; no exceptional case that would entitle Vizgen to attorney's fees; preemption, immunity, and First Amendment; justification/privilege; unclean hands; location of alleged acts; statute of limitations; waiver or acquiescence; lack of injury, loss, damages, and causation; failure to mitigate damages; consent; laches; estoppel; and no public harm. Harvard asserts defenses of failure to state a claim; statute of frauds; waiver, estoppel, laches; unclean hands; lack of injury, no loss or damage, no causation; accord and satisfaction; limitations on liability; Massachusetts Gen Laws Ch. 231, § 85K; no conduct of any trade or commerce; federal preemption, and First Amendment; accordance with Massachusetts General Laws c. 93A, § 3; no public harm; location of alleged actions; and failure to mitigate.

The operative pleadings are 10x and Harvard's Second Amended Complaint (D.I. 123), Vizgen's Amended Answer, Defenses, and Counterclaims (D.I. 440), Harvard's Answer to Vizgen's Amended Counterclaims (D.I. 465), and 10x's Answer to Vizgen's Amended Counterclaims (D.I. 466). Certain Vizgen counterclaims in these pleadings have been dismissed by the Court. D.I. 114; D.I. 641.

## III.    RELIEF SOUGHT

### A.    Relief Sought by 10x and Harvard

Plaintiffs seek reasonable royalties for Vizgen's infringement totaling $9,216,673 (for the period from Q3 2021 to Q1 2024 based on financial information produced prior to expert discovery). Plaintiffs also seek supplemental damages for any infringement subsequent to the damages period presented to the jury. Specifically, upon a finding of Vizgen's liability at trial, Plaintiffs will seek an accounting of updated financial information (including projections through judgment) so that any award of reasonable royalties can be updated from Q1 2024 through final judgment. 10x also seeks injunctive relief to guard against future infringement and seeks enhanced

damages pursuant to 35 U.S.C. § 284 upon a finding of willful infringement. To the extent any on-going uses of the Accused Instrumentalities fall within an injunction carve-out or any other on-going uses permitted by the Court, Plaintiffs will seek a running royalty on such permissible uses. Plaintiffs seek a declaration on Defendant's Sixth through Fifteenth Counterclaims that the Asserted Patents are infringed and valid. Plaintiffs also seek fees and costs pursuant to 35 U.S.C. § 285. Plaintiffs also seek pre-judgment and post-judgment interests.

10x and Harvard deny that Vizgen is entitled to any relief. 10x and Harvard seek a judgment that Vizgen's Amended Counterclaims be dismissed with prejudice and Vizgen take nothing; that 10x and Harvard be awarded such other and further relief on Vizgen's Amended Counterclaims against 10x as the Court may deem appropriate; that judgment be entered in favor of 10x and Harvard against Vizgen and on Vizgen's Amended Counterclaims against 10x and Harvard; and that Vizgen be required to pay 10x's attorneys' fees and costs. In the event that the jury decides that the elements of Vizgen's counterclaims are met, 10x and Harvard also seek findings for their affirmative defenses.

**Vizgen's Response to Relief Sought by Plaintiffs:**

To the extent any of the claims of the Asserted Patents are found to be infringed and not invalid, Vizgen contends that the appropriate measure of damages is a royalty rate of between approximately 1.4%-7.4% applied to the proper royalty base. In such an event, Vizgen also seeks findings regarding its affirmative defenses.

**B.      Relief Sought by Vizgen**

Vizgen seeks damages against 10x and Harvard based on the conduct underlying Vizgen's Counterclaims, including all amounts accrued prior and after trial. As described in the Opening and Reply Reports of James R. Kearl (August 14, 2024 and October 16, 2024), Vizgen presents three approaches to calculate its present damages: Lost Enterprise ($245,000,072.73), Lost

Enterprise-Scrap ($250,000,000 to $374,113,000), and Lost Profits ($91,336,417 to $235,660,153). Dr. Kearl's damages approaches and liability analysis do apply to Vizgen's claims that are live in the case, aside from his discussion of his proposed relevant antitrust relevant market. Vizgen will oppose Plaintiffs' motion *in limine* regarding Dr. Kearl's analysis.

With respect to Harvard, in addition to the above damages, Vizgen seeks all amounts paid and accrued prior and after trial under the Vizgen-Harvard license agreement and all other damages sustained as a result of Harvard's wrongdoing, including litigation fees and expenses.

Pursuant to Massachusetts Ch. 93A § 11, Vizgen seeks an injunction against Harvard to cease the conduct at issue, including but not limited to an injunction preventing Harvard from asserting the Asserted Patents against Vizgen. In response to Harvard's below statement, Vizgen indeed sought all legal and equitable relief in its Counterclaims (D.I. 440 at 130), including that Plaintiffs "grant[] Defendant Vizgen a license to the Asserted Patents" (*Id.*). Vizgen expressly and repeatedly pled violations of Ch. 93A § 11, which expressly states that upon a violation "***the court shall award*** such other equitable relief, including an injunction, as it deems necessary and proper." The Parties have all been well aware of Vizgen's request for injunctive relief under Ch. 93A § 11. *See also* D.I. 253 at 15 (Oct. 30, 2023) (expressly discussing Vizgen's request for an injunction under Ch. 93A § 11 as a basis for its anti-suit injunction).

Pursuant to Massachusetts Ch. 93A § 11, Vizgen also seeks treble damages, attorneys' fees, and costs.

Vizgen also seeks pre-judgment and post-judgment interest.

Vizgen denies that 10x and Harvard are entitled to any relief. Vizgen seeks a declaration that the Asserted Patents are not infringed and/or are not valid. Vizgen also seeks fees and costs pursuant to 35 U.S.C. § 285.

To the extent any of the claims of the Asserted Patents are found to be infringed and not invalid, Vizgen seeks findings from the jury regarding its affirmative defense of implied license, and from the Court regarding its other affirmative defenses.

**Plaintiffs' Response to Relief Sought by Vizgen:**

Above Vizgen describes three approaches to damages: Lost Enterprise, Lost Enterprise-Scrap; and Lost Profits. Although all but Tortious Interference (Count IV) against 10x and the covenant of good faith and fair dealing (Count I) and unfair and deceptive practices (Ch. 93A) (Counts V and XXI) against Harvard were dismissed on summary judgment, Vizgen asserts below that its claims for relief remain unchanged. Vizgen's expert does not opine on liability for these defenses and never quantified alleged damages based on these claims, thus the relief it purports to seek below is unsupported. *See* Plaintiffs' MIL 5.

Plaintiffs oppose Vizgen's request to seek findings from the jury on implied license. *See* Plaintiffs' MIL 4.

10x denies that Vizgen is entitled to any damages or any other relief for tortious interference (Count IV). Harvard denies that Vizgen is entitled to any damages or any other relief for any alleged breach of the implied covenant of good faith and fair dealing (Count I). Harvard denies that Vizgen is entitled to any damages, attorneys fees, trebled damages, or any other relief for any alleged violations of Massachusetts Ch. 93A (Counts V and XXI)). Harvard denies that Vizgen is entitled to any injunctive relief pursuant to Massachusetts Ch. 93A, nor has Vizgen pleaded any request for injunctive relief under Massachusetts Ch. 93A (*See* D.I. 440).

10x and Harvard also deny that Vizgen is entitled to any pre-judgment and post-judgment interest.

10x and Harvard deny that Vizgen is entitled to any relief on any declaratory judgment claims, including with respect to infringement and validity of the asserted patents.

10x and Harvard deny that Vizgen is entitled to any fees and costs pursuant to 35 U.S.C. § 285.

## IV.    WITNESSES AND OBJECTIONS THERETO

### A.    Trial Witness List

Plaintiffs' witness list and Vizgen's objections are appended hereto in Attachment 1A. Vizgen's witness list and 10x and Harvard's objections are appended hereto in Attachment 1B. Attachments 1A and 1B include witnesses: (a) who will be called; (b) who may be called; and (c) whose deposition will be used at trial.

### B.    Witnesses Appearing By Deposition

The Parties provide designations, objections, and counter-designations here. However, except as identified in high-priority objections or motions *in limine*, the Parties ***are not asking the Court*** to review and rule on the objections at the pre-trial conference. The Parties are continuing to negotiate and narrow the designations and objections and also believe that many designations and objections may be resolved by pending motions. To the extent the Parties do not resolve these issues cooperatively, they will provide the remaining objections to the Court according to the procedures described below in Section XI.B.4.

A summary and concise statement of 10x and Harvard's high priority objections to Vizgen's witness list and designations and Vizgen's responses are provided below in Section C. A summary and concise statement of Vizgen's high priority objections to 10x and Harvard's witness list and designations and 10x's and/or Harvard's responses are provided below in Section D.

Attachment 2 includes a listing, by page and line, of the testimony designated by 10x, Vizgen's objections and counter-designations, and 10x's objections to Vizgen's counter-designations. A concise statement of the asserted general basis of admissibility is provided in the following table.

| | | |
|---|---|---|
| **Attachment 2A** | Brittany Auclair | FRE 801(d)(2): Vizgen 30(b)(6) |
| | | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2B** | Joseph Beechem | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2C** | Alistair Boettiger | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2D** | Michaeline Bunting | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2E** | Long Cai | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2F** | Vikram Devgan | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2G** | George Emmanuel | FRE 801(d)(2): Vizgen 30(b)(6) |
| **Attachment 2H** | Douglas Farrell | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2I** | Brad Gray | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2J** | Jiang He | FRE 801(d)(2): Vizgen 30(b)(6) |
| | | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2K** | Elizabeth Hicks-Kridel | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2L** | Sean Kendall | FRE 801(d)(2): Vizgen 30(b)(6) |
| | | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2M** | Dale Levitzke | FRE 801(d)(2): Vizgen 30(b)(6) |
| | | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2N** | Terry Lo | FRE 801(d)(2): Vizgen 30(b)(6) |
| **Attachment 2O** | Beth Nye | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2P** | Mickael Ploquin | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2Q** | Paul Rasmussen | FRE 801(d)(2): Vizgen 30(b)(6) |
| | | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2R** | David Walt | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2S** | Peidong Wang | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 2T** | Siyuan Wang | FRE 804(b)(1): Declarant Unavailable |

Attachment 3 includes a listing, by page and line, of the testimony designated by Harvard, Vizgen's objections and counter-designations, and Harvard's objections to Vizgen's counter-designations. A concise statement of the asserted general basis of admissibility is provided in the following table.

| Harvard Designation & Vizgen Objections | Witness | Harvard's Statement of Admissibility of Deposition Testimony |
|---|---|---|
| Attachment 3A | Evan Daugharthy | FRE 804(b)(1): Declarant Unavailable |
| Attachment 3B | George Emanuel | FRE 801(d)(2): Vizgen 30(b)(6) |
| Attachment 3C | Sean Kendall | FRE 804(b)(1): Declarant Unavailable FRE 801(d)(2): Vizgen 30(b)(6) |
| Attachment 3D | David Walt | FRE 804(b)(1): Declarant Unavailable |
| Attachment 3E | Peidong Wang | FRE 804(b)(1): Declarant Unavailable |
| Attachment 3F | Eric Whitaker | FRE 801(d)(2): 10x 30(b)(6) |
| Attachment 3G | Terry Lo | FRE 801(d)(2): Vizgen 30(b)(6) |

A summary and concise statement of Vizgen's high priority objections to 10x's and Harvard's witness lists and designations and 10x's and Harvard's responses are provided below in Section D.

**Attachment 4** includes a listing, by page and line, of the testimony designated by Vizgen, 10x's and Harvard's objections and counter-designations, and Vizgen's objections to 10x's and Harvard's counter-designations. A concise statement of the asserted general basis of admissibility is provided in the following table.

| Vizgen Designation & Pltffs' Objections | Witness | Vizgen's Statement of Admissibility of Deposition Testimony |
|---|---|---|
| Attachment 4A | John Aach | FRE 804(b)(1): Declarant Unavailable FRE 801(d)(2): Harvard 30(b)(6) |
| Attachment 4B | Michaeline Bunting | FRE 804(b)(1): Declarant Unavailable |
| Attachment 4C | George Church | FRE 801(d)(2): Harvard 30(b)(6) |
| Attachment 4D | James Culverwell | FRE 801(d)(2): Harvard 30(b)(6) |
| Attachment 4E | Evan Daugharthy | FRE 804(b)(1): Declarant Unavailable |
| Attachment 4F | Jessica Duda | FRE 804(b)(1): Declarant Unavailable |
| Attachment 4G | Jordan Grant | FRE 801(d)(2): Harvard 30(b)(6) |
| Attachment 4H | Mira Grigorova | FRE 804(b)(1): Declarant Unavailable |
| Attachment 4I | Isaac Kohlberg | FRE 804(b)(1): Declarant Unavailable |
| Attachment 4J | Melissa Korf | FRE 801(d)(2): Harvard 30(b)(6) |
| Attachment 4K | Je Lee | FRE 804(b)(1): Declarant Unavailable |
| Attachment 4L | Dale Levitzke | FRE 804(b)(1): Declarant Unavailable |
| Attachment 4M | Sam Liss | FRE 801(d)(2): Harvard 30(b)(6) |
| Attachment 4N | Shawn Marcell | FRE 804(b)(1): Declarant Unavailable |
| Attachment 4O | Nikhil Rao | FRE 804(b)(1): Declarant Unavailable |
| Attachment 4P | Serge Saxonov | FRE 804(b)(1): Declarant Unavailable |

| **Attachment 4Q** | Michael Schnall-Levin | FRE 801(d)(2): 10x 30(b)(6) |
| **Attachment 4R** | Richard Terry | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 4S** | Eric Whitaker | FRE 801(d)(2): 10x 30(b)(6) |
| **Attachment 4T** | Grant Zimmermann | FRE 801(d)(2): Harvard 30(b)(6) |

The Parties' objection keys are provided as **Attachment 5**.

10x and Harvard reserve the right to designate personal testimony of George Emanuel, Dale Levitzke, Terry Lo, Jeffrey Moffitt, and Xiaowei Zhuang if Vizgen withdraws them as live witnesses. Vizgen reserves the right to designate personal testimony of George Church, James Culverwell,[2] Jordan Grant, Melissa Korf, Sam Liss, Michael Schnall-Levin, Eric Whitaker, and Grant Zimmermann if 10x or Harvard withdraw them as live witnesses.

## C. 10x and Harvard's Objections to Vizgen's Witness List and Designations

### 1. Objection to Vizgen's Identification of Keith Crandell as a Live Witness

10x and Harvard object to Vizgen's identification Keith Crandell as a live witness as untimely disclosed. This witness was not identified by any party in timely Rule 26(a) disclosures and timely pre-trial disclosures of designations were not provided.

Vizgen never named Keith Crandell on its Rule 26(a) disclosures. While Vizgen generically referred to all employees, partners, and/or agents of ARCH Venture Partners, ARCH and Vizgen chose to put forward Sean Kendall as the corporate witness representing ARCH during discovery—Sean Kendall was the primary negotiator of the Vizgen-Harvard license on behalf of Vizgen and ARCH. Sean Kendall was deposed at length on the Vizgen/ARCH side of the license negotiation. Now, Vizgen seeks to supplement his testimony at trial by bringing another ARCH partner, Keith Crandell, who was not deposed. Mr. Crandell's testimony is cumulative of Sean

---

[2] **Vizgen's Statement:** Harvard informed Vizgen on January 13, 2025—the day before the PTO was filed—that James Culverwell is no longer a "will call live" witness for Harvard. Vizgen thus intends to designate personal testimony of Mr. Culverwell in advance of trial.

Kendall's but was not subject to cross examination via deposition. Vizgen's proffer of Mr. Crandall as a live trial witness without deposition is prejudicial and unnecessary.

Vizgen's position that this is proper because Mr. Crandall is one of dozens of individuals Plaintiffs have "long known about" is no justification for permitting trial testimony without discovery. Under Vizgen's reasoning it could bring any employee or Vizgen or ARCH to trial who was not deposed in discovery so as to limit Plaintiffs' ability to cross examine with prior sworn testimony. Mr. Crandall should be precluded from testifying or Vizgen must put Mr. Crandall up for a day of deposition before he takes the stand.

**Vizgen's Response:**  Plaintiffs have long known about Keith Crandell, the Co-Founder and Managing Director of ARCH Ventures who sits on Vizgen's Board of Directors, and Vizgen and ARCH provided discovery regarding Mr. Crandell. Vizgen's Initial Disclosures have included "Employees, partners, and/or agents of ARCH Venture Partners" since September 13, 2022. Harvard and 10x's respective disclosures each also identify ARCH Ventures and its current and former representatives, employees, agents. Moreover, on November 20, 2023, Vizgen responded to Harvard's Interrogatories identifying Keith Crandell as an ARCH individual involved on Vizgen's behalf in licensing discussions with Harvard. **Exhibit A**, Vizgen's Nov. 20, 2023 ROG Responses (Excerpted) ("The individuals involved in those discussions and/or meetings on Vizgen's behalf acting as Vizgen's agents included Keith Crandell, Sean Kendall, and Corey Ritter of ARCH Venture Partners."). Harvard and 10x each subpoenaed ARCH Ventures on August 28, 2023 and September 26, 2023, respectively. Plaintiffs were well aware of Mr. Crandell, even asking questions about him in depositions, yet made the decision not to depose him in this matter. *See e.g.*, **Exhibit B**, Depo. Excerpts (Peidong Wang Depo. Tr. 17:8-17; 41:1-4; Kendall Tr. 29:8-9, 29:23-30:6, 33:6-33:9, 168:12-177:22, 262:18-263:24). There is no undue prejudice, surprise or

lack of disclosure, nor is there just cause for Plaintiffs' untimely deposition request, for which

Plaintiffs never allocated their deposition hours during fact discovery.

### 2. Designated Untimely Testimony Exceeding Vizgen's Permissible Deposition Time

10x and Harvard object to Vizgen's designations of depositions taken in the Bruker

litigation (261 Case) as testimony to be used at trial. *See* Plaintiffs' MIL 7.

**Vizgen's Response:** Vizgen disagrees with Plaintiffs' objection. Vizgen's position on this

issue will be briefed in its response to Plaintiffs' motion *in limine*, due on January 20, 2025.

### 3. Prejudicial Designation of Testimony Where A Non-Corporate Witness Lacked Foundation To Provide A Substantive Response

10x and Harvard object to Vizgen's designations of non-corporate testimony where the

witness testified to lack of knowledge. *See* Plaintiffs' MIL 9.

**Vizgen's Response:** Vizgen disagrees with Plaintiffs' objection. Vizgen's position on this

issue will be briefed in its response to Plaintiffs' motion *in limine*, due on January 20, 2025.

### 4. Exclude Designated Deposition Testimony That Was Timely Objected to on Attorney-Client Privilege Grounds

Pursuant to Rules 401, 402, and 403, Plaintiffs object to Defendant's improper designation

of deposition testimony where the witness was unable to answer on the basis of privilege.

Courts prohibit reading deposition objections to the jury as irrelevant and because any

probative value is outweighed by the risk of unfair prejudice and misleading the jury. *Pinn, Inc. v.

Apple, Inc.*, No. 8:19-CV-01805-DOC-(JDEx), 2021 U.S. Dist. LEXIS 200942, at \*28-31 (C.D.

Cal. Mar. 9, 2021) (prohibiting objections to discovery requests or testimony including assertions

of privilege or work producer from being read to the jury, as "Defendant fails to identify any

specific probative value of objections (or of counsel instructing a witness not to answer based on

privilege or work product protection), and to whatever extent probative value can be inferred, any

12

probative value is substantially outweighed by the dangers of 'unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time.'"); *McQuiston v. Helms*, No. 1:06-cv-1668-LJM-DML, 2009 U.S. Dist. LEXIS 19141, at *33 (S.D. Ind. Mar. 4, 2009) (excluding "[a]ny testimony, evidence or reference to the fact that Defendants made an objection to certain discovery or asserted a claim of privilege during pre-trial proceedings in this case.").

Here, James Culverwell is an attorney who works in the Harvard Office of Technology Development. Defendant deposed Mr. Culverwell and asked questions that implicated the attorney-client privilege. Harvard's counsel objected to those questions on the basis of attorney-client privilege and instructed Mr. Culverwell not to answer the questions. Mr. Culverwell complied. Defendant did not move to compel on Harvard's privilege objections, so the privilege objections stand. Undeterred, defendants designated the objected-to questions and Harvard's objections to be read to the jury. Defendant's designations and Plaintiffs' objections are as follows:

| Vizgen's Opening Designations | Harvard's Objections |
|:---:|:---:|
| 61:1-3 | 403; 602 |
| 61:4-9 | 403; 602 |
| 67:2-12 | 403; 611 |
| 67:14-20 | 403; 602; 611 |
| 67:22 | |
| 67:24-68:7 | 403; 611 |
| 197:20-198:1 | 106; 401/402; 403; 602; 611 |
| 198:5-6 | |

Mr. Culverwell's privileged non-response and counsel's privilege objections are not relevant to any issue in this case at least because there were no answers. In addition, any probative value (there is none) is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. Defendant's designations are designed to prejudice Harvard and

to confuse and mislead the jury into thinking that Havard was not forthcoming in discovery. The Court should exclude any objected-to questions and Harvard's objections to the questions.

**Vizgen's Response:** Vizgen first learned of Harvard's "high priority" objection to Vizgen's deposition designations of James Culverwell (served by Vizgen on December 13, 2024) on January 13, 2025, the day before the pretrial order was due to be filed. Vizgen made a proposal to Plaintiffs regarding use of designations that elicit privilege objections or instructions or otherwise call for privileged communications, but the parties were unable to reach agreement. Vizgen then received Harvard's above position statement at 5:42 pm eastern, well after the deadline to serve the pretrial order—giving Vizgen no time to formulate a substantive response. The privilege objections relate to Plaintiffs' MIL 3, in which Harvard seeks a ruling or presumption that its prosecution efforts targeting Vizgen were lawful—even though Harvard asserted privilege over the reasons for patent prosecution. Vizgen will respond to the MIL in due course. Vizgen is amenable to continuing to work with Plaintiffs to resolve this objection, and to the extent the parties are unable to resolve the objection prior to the pretrial conference, Vizgen will provide its updated position to the Court at that time.

### D.    Vizgen's Objections to 10x's and Harvard's Witness Lists and Designations

#### 1.    Expert Witnesses Not Disclosed and Offering Improper and Prejudicial Testimony

As described in Vizgen's motion *in limine*, Vizgen objects to 10x designating testimony from Alistair Boettiger, Long Cai, and Siyuan Wang. Vizgen's MIL 5 (D.I. 648 at 11-14). Alistair Boettiger and Siyuan Wang are '303 Patent inventors, and Long Cai is an alleged prior artist to the '303 Patent. The '303 Patent claim is being litigated separately on a different case schedule. These witnesses' testimony constitutes improper and undisclosed expert testimony, and their

testimony is irrelevant to any issues in dispute in this case and would be unduly prejudicial and confusing.

**Plaintiffs' Response:** Plaintiffs disagree with Vizgen's objection. These witnesses provided relevant fact testimony. Plaintiffs' position on this issue will be briefed in its response to Vizgen's motion *in limine*, due on January 20, 2025.

### 2.    Witnesses Not Unavailable Within the Meaning of FRE 804(b)(1)

Vizgen objects to Plaintiffs designating testimony from the following individuals who are not "unavailable":

David Walt: Plaintiffs have each designated David Walt's testimony. Like George Church, David Walt is a Harvard professor at Harvard's Wyss Institute and Harvard Medical School, and is under Harvard's control.[3] **Exhibit B,** Depo. Excerpts (D. Walt Tr. 8:16-18 (Q. And Dr. Walt, you are a professor at Harvard Medical School? A. That's correct.)). Indeed, Harvard lists David Walt as employed by/affiliated with "Harvard Medical School" in Harvard's own designations. **Attachment 3D**. Harvard cannot establish David Walt is unavailable to it and therefore cannot introduce David Walt's deposition testimony. Harvard also cannot sidestep David Walt's lack of unavailability under FRE 804(b)(1) by having its co-Plaintiff designate Harvard's own employees' testimony. 10x has not demonstrated that David Walt, its co-Plaintiffs' employee, is unavailable to 10x.

Ting Wu: Vizgen also objects to 10x's designation of Ting Wu's testimony. Like George Church and David Walt, Ting Wu is a Harvard professor. 10x has similarly not demonstrated that Ting Wu, its co-Plaintiffs' employee, is unavailable to Plaintiffs under FRE 804(b)(1).

---

[3]    *See also* David Walt, Harvard Webpages, available at https://wyss.harvard.edu/team/core-faculty/david-walt/ and https://dms.hms.harvard.edu/people/david-r-walt.

<u>Eric Whitaker:</u> Harvard designated testimony of Eric Whitaker, 10x's Chief Legal Officer. Harvard's co-Plaintiff 10x has indicated it will call Eric Whitaker to testify live, such that he is not "unavailable." To the extent Harvard seeks to introduce Eric Whitaker's 30(b)(6) testimony, Harvard is not "an adverse party" under FRE 32(a)(3), and such testimony and such testimony is not "offered against an opposing party" within FRE 801(d)(2).

<u>Sean Kendall:</u> Vizgen's witness, Sean Kendall, will testify live at trial as confirmed in Vizgen's witness list. Vizgen therefore objects to Plaintiffs designation of Sean Kendall's 30(b)(1) testimony.

**Plaintiffs' Response:** David Walt is not employed by Harvard and is not under Harvard's control. While Dr. Walt appears on Harvard webpages, his mere "affiliation" with Harvard does not give Harvard control over his appearance at trial. Dr. Walt is under Vizgen's control, not Harvard's, as a member of Vizgen's Board of Directors.

Sean Kendall is a partner at Arch Venture Partners. He resides in London and was Vizgen's Rule 30(b)(6) corporate representative witness on a number of topics including negotiation of the Harvard/Vizgen License, the NIH grant application, and Vizgen's decision to launch the accused products. Plaintiffs designated testimony is within the scope of his corporate designations. Vizgen has represented that it "may call" Mr. Kendall to testify at trial. To the extent, the Court determines that any of Mr. Kendall's testimony is deemed outside of the scope of those designations, Plaintiffs will make adjustments to his designations accordingly if Mr. Kendall is called live at trial.

Regarding 10x's designation of Ting Wu, 10x has withdrawn its deposition designation based on Vizgen's representation that she will not be called live at trial.

Regarding Harvard's designation of Erik Whitaker, Harvard intends to call Mr. Whitaker to testify live if he is available. However, Mr. Whitaker is an employee of 10x and is outside

Harvard's control. Should Mr. Whitaker not be available, Harvard reserves the right to have him testify via deposition designation.

### 3. Witnesses For Whom 10x Served Untimely Designations and For Whom Vizgen Did Not Have an Opportunity and Motive to Develop Testimony Within the Meaning of FRE 804(b)(1)

Vizgen objects to 10x's designations of testimony from Bruker employees Beth Nye, Joseph Beechem, Vikram Devgan, Douglas Farrell, and Brad Gray from the Bruker litigation ('261 Case). 10x served its initial designations for these witnesses on December 20, 2024, a week after the December 13, 2024 deadline for such disclosures. (D.I. 571 at 2). This testimony is also hearsay as relied on by 10x, does not fit within the hearsay exception 10x seeks to rely on (FRE 804(b)(1)), and should otherwise be precluded under FRE 403. 10x offers this testimony *against Vizgen*, but as Plaintiffs admit the depositions were conducted "without Vizgen's participation." D.I. 647 at 15.

**Plaintiffs' Response:** Vizgen cannot claim to be unaware of the Bruker case depositions or to have not been given a chance to participate. The parties expressly negotiated cross-use Protective Orders so that there would be no barriers for use of timely disclosed materials. Vizgen cannot now claim that those cross-use provisions limit Plaintiffs' ability to rely on those materials but Vizgen is unconstrained. This is especially problematic where the Bruker case depositions make available more than 22 hours of deposition time beyond Vizgen's court-ordered limits while denying that discovery and use thereof from 10x. The Bruker case depositions all took place after the close of fact discovery in the Vizgen case. As for Ms. Nye's testimony from the Bruker litigation (261 Case), that testimony is relevant to Vizgen's *dismissed* antitrust claims and tortious interference claims against 10x. Vizgen has made no discernable narrowing it its evidence on those issues in response to the summary judgment order. Ms. Nye's deposition took place in the Bruker case, just like the depositions of BioTechne (corporate testimony provided by Ms. Bunting, limited

17

to corporate topics around market definitions) and Serge Saxonov. These depositions were both severely limited in both time and scope, and at least Harvard had no notice that any of the issues were relevant to claims against Harvard. Harvard was not on notice that Dr. Saxonov's deposition in the Bruker case was in any way related to Vizgen's claims against Harvard, denying Harvard sufficient notice and opportunity to participate. Due to the coordinated nature of discovery in these cases, the Bruker depositions should be treated the same: they should all be out as after the close of fact discovery; or they should be in to the extent they are relevant to the remaining issues in the case and not subject to another objection.

## V.    EXHIBITS AND OBJECTIONS THERETO

The Parties' Joint Trial Exhibit List is appended hereto as **Attachment 6**.

Plaintiffs' Trial Exhibit List,[4] including Vizgen's specific objections thereto, is appended hereto as **Attachment 7**.

Vizgen's Trial Exhibit List, including 10x and Harvard's specific objections thereto, is appended hereto as **Attachment 8**.

Except as identified in motions *in limine*, the Parties *are not asking the Court* to review and rule on the objections to specific trial exhibits at the pre-trial conference. The Parties are continuing to deduplicate the exhibits lists and to cooperatively resolve objections. The Parties also believe that many objections may be resolved by pending motions. To the extent the Parties

---

[4] **Vizgen's Statement:** On December 9, 2024, Harvard and 10x served separate exhibit lists, with duplicative exhibits and different proposed numbering. Vizgen promptly requested that Plaintiffs at least consolidate and submit a single joint exhibit list related to their claims against Vizgen to allow for the efficient management of exhibits at trial and to allow the parties to effectively confer and narrow disputes. At 11:23pm on January 13—the day before this Pretrial Order was due—Plaintiffs provided a joint Plaintiffs' exhibit list of 1,761 documents that purported to narrow Plaintiffs' exhibits. **Plaintiffs' Statement:** 10x and Harvard diligently combined and de-duplicated their exhibit lists *at Vizgen's request* in time for submission with the pre-trial order. Plaintiffs do not understand Vizgen's complaint.

do not resolve these issues cooperatively, they will provide remaining objections to the Court according to the procedures described below in Section XI.B.2.

The Parties agree that trial exhibits must be introduced through an appropriate sponsoring witness to be admitted, even if there is no objection to the exhibit. Experts may sponsor exhibits they rely upon. Each party reserves the right to object to a fact witness's sponsoring of an exhibit for which the witness has no personal knowledge or foundation.

The Parties agree that any description of a document or other material on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document or material. The listing of a document on a side's exhibit list or the Joint Trial Exhibit List is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to admit the document. Each party reserves the right to object to the admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

The Parties agree that if any party removes or otherwise withdraws an exhibit from its Exhibit List, another party may amend its Exhibit List to include that same exhibit. The Parties also agree that the Parties may make objections to such exhibit, other than an objection based on untimely listing. Each party reserves the right to use any exhibit identified by another party or parties. The Parties agree that the rules regarding exhibits in this section apply to exhibits for both the parties' cases in chief and rebuttal cases, but they do not limit a party's ability to use otherwise permissible but unlisted materials for **[Plaintiffs' proposal:[5] cross or]** impeachment. E.g., a party may not use unlisted materials that are excluded by a Court's ruling on a motion *in limine*.

---

[5] **Vizgen's Position:** Vizgen's position is that only documents on the Parties' respective exhibit lists can be admitted, whether on direct or cross.

The Parties will exchange final digital copies of their exhibits, with exhibit numbers, on January 13, 2025 (D.I. 571) at 9 p.m. The Parties shall make available for inspection, at a mutually convenient time, any physical exhibits to be used at trial, labeled with an exhibit number. The final digital copy of each exhibit page will be endorsed with a unique page identifier, including the exhibit prefix, exhibit number, and page numbers of the electronic document. The exhibit prefixes shall be: "JX" for exhibits on the Joint Exhibit List; "PX" for exhibits on Plaintiffs' Exhibit List, and "DX" for exhibits on Vizgen's Exhibit List. The page numbering shall begin at 1 for the first page of each exhibit and the numbering on each page should include the trial exhibit number and the physical page number separated by a decimal.  For example, page 62 of Joint Exhibit 5 would be endorsed / paginated as either: "JX-005.062" or "JX-5.62."

## VI.    LENGTH AND TYPE OF TRIAL

This trial will be a jury trial. This case is set for a jury trial of 8 days, starting on February 3, 2025. D.I. 637. Trial time is limited to 16 hours for Plaintiffs in the aggregate and 16 hours for Defendant. D.I. 642. The parties understand that the time spent on jury selection and the jury instruction conference does not count against the allocation of trial time. Time will be counted whenever a party is arguing before the jury or the Court (including on evidentiary objections); questioning a witness; and presenting deposition testimony. D.I 637.

The parties understand that opening statements are limited to 40 minutes per side. Closing arguments are limited to 75 minutes per side total. All time used on openings and closings counts against the overall allocation. D.I 637.

The parties understand that counsels are to be present and ready each trial day at 8:45 a.m. The trial day will run until approximately 5:00 p.m. D.I 637.

The Courtroom Deputy will keep a running total of trial time used by counsel.

A.    **Issues to be Decided by the Court**

The Parties anticipate that the Court will rule on equitable issues, including the Parties' respective injunctive requests and equitable defenses, after the jury has rendered its verdict. The Court will determine whether it will take additional evidence to adjudicate any such remaining equitable issues and will determine the need for any proposed findings of fact and conclusion of law.

1.    **Vizgen's Position**

Vizgen agrees with the above procedure for issues to be decided by the Court except that Vizgen's position is that its affirmative defense of implied license should be submitted to the jury. Plaintiffs do not consent under Fed. R. Civ. P. 39(c)(2), and Vizgen requests that the Court allow an advisory opinion from the jury pursuant to Fed. R. Civ. P. 39(c)(1).

Vizgen alleges it has an implied license based on Harvard's conduct in licensing patents to Vizgen, based on Harvard's acquiescence by taking royalties from Vizgen for sale of MERFISH products that Harvard alleges practice the asserted patents, and/or based on Harvard's statements to the NIH in the grant application. Vizgen may prove an implied license by conduct, by legal estoppel, by equitable estoppel, or by acquiescence. *See Tenneco Auto. Operating Co. v. Visteon Corp.*, 375 F. Supp. 2d 375, 384-86 (D. Del. 2005) (explaining alternative methods of proving implied license). Vizgen's proposed jury instructions for implied license are straightforward. **Attachment 10B**, Proposed Final Jury Instructions, Vizgen's Instruction No. 31. There is nothing to suggest that a jury would be unable to follow instructions for this defense.

An advisory verdict is appropriate here because the same evidence and facts support both Vizgen's counterclaims against Harvard and Vizgen's implied license defense. The jury will already be hearing and weighing this evidence and making factual determinations. A jury verdict on implied license promotes judicial efficiency and reduces the risk of inconsistent findings.

Otherwise, given that the legal counterclaims and equitable defenses have "facts common to both," after trial the Court will have to "determine whether the jury verdict on the legal claims 'necessarily implie[s]' the resolution of any common factual issues," and "must follow the jury's implicit or explicit factual determinations in deciding the equitable claims." *Kairys v. S. Pines Trucking, Inc.*, 75 F.4th 153, 161 (3d Cir. 2023) (citations omitted). An advisory verdict on implied license helps to remove ambiguity from this process.

Plaintiffs have been on notice repeatedly of this defense—in both counterclaim pleadings and multiple discovery responses—and cannot claim surprise or prejudice. D.I. 440, Vizgen's Answer and Counterclaims at 9-11 (Sixth Defense – Equitable Defenses: "Plaintiffs' claims for relief are barred in whole or in part by *license*, laches, consent, waiver, estoppel, acquiescence, payment, and/or release"); *id.* at 9-11 (summarizing bases for license and other equitable defenses, including Harvard's conduct in licensing patents to Vizgen; Harvard's acquiescence by taking royalties from Vizgen for sale of MERFISH products that Harvard alleges practice the asserted patents; Harvard's statements in the NIH grant application); *id.* ¶ 76 ("Harvard provided an *implied license* to the ReadCoor technology"); *id.* ¶ 205 ("10x should have known of the existence and nature of the contractual relationship and the *implied licenses* granted to Vizgen from the facts and circumstances of which 10x was aware."); **Exhibit C**, Vizgen's Responses to 10x's Interrogatories (May 31, 2024) at 45 ("*Vizgen asserts*—just as 10x previously asserted—*that it is entitled to an implied license* arising from Vizgen's license agreement with Harvard and Harvard's conduct, including Harvard's acceptance of royalties from Vizgen and Harvard's various actions and inactions upon which Vizgen reasonably and detrimentally relied."); *id.* at 15 ("[T]he asserted claims of the 10x Asserted Patents are not enforceable against Vizgen […] Vizgen has at minimum an *implied license*."); *id.* at 44 ("10x's opposition to *Vizgen's implied license theory* this case is

irreconcilably inconsistent with 10x's prior position"); *id.* at 39-43 (describing in detail the factual support for Vizgen's equitable defenses, including license) (emphases added); D.I. 265 at 8 (***Plaintiffs*** acknowledging Vizgen's "license defense" in opposition brief). *See also Weyerhaeuser Co. v. Domtar Corp.*, 204 F. Supp. 3d 731, 737 (D. Del. 2016), *aff'd*, 721 F. App'x 186 (3d Cir. 2018) (defendant "does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in it's ability to respond.").

Contrary to Plaintiffs' suggestion, the Court's February 2, 2023 Order did not dismiss or preclude Vizgen's implied license defense. D.I. 114. The Court did not dismiss any of Vizgen's affirmative defenses, which require different elements and support. Vizgen's implied license defense does not allege anything contrary to the Court's Order.

### 2.    10x and Harvard's Position

Plaintiffs deny that Vizgen is entitled to an implied license and Plaintiffs further disagree with Vizgen's premise that it has pleaded an implied license defense in the case. First, the license defense that Vizgen pleaded makes no mention of implied license. Sixth Defense, D.I. 440 at 9-11. While Vizgen relies on general pleading of equitable defenses and later generic statements referring to some alleged "implied license," notably lacking from its pleading is any specific reference to "implied license" and the necessary elements thereof. This is insufficient to preserve Vizgen's rights to raise this specific affirmative defense at trial. Second, the question of whether Vizgen has a license to the asserted patents was the subject of the Court's order dismissing its breach of warranty claim. D.I. 114. Moreover, the Vizgen License Agreement expressly states that, "[e]xcept as expressly provided herein, nothing in this Agreement will be construed to confer any ownership interest, license or other rights upon Licensee by implication, estoppel or otherwise as to any technology, intellectual property rights, products or biological materials of Harvard or any other entity, regardless of whether such technology, intellectual property rights, products or

biological materials are dominant, subordinate or otherwise related to any Patent Rights or Copyrights" and further includes a binding integration clause. Vizgen-Harvard License Agreement at Section 2.7 ("No Other Grant of Rights"), Section 11.7 ("No Other Promises and Agreements; Representation by Counsel"). Vizgen should not be permitted to present evidence to the jury that is inconsistent with the Court's finding that Vizgen does not have a license as a matter of law or that is inconsistent with the language of the license itself that expressly excludes the possibility of any such implied license. *See* Plaintiffs' MIL 4. To the extent Vizgen has an implied license defense, it is an equitable issue and a question of law that should be decided by the Court. *Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1341 (Fed. Cir. 1999); *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-cv-1974, 2008 WL 5671886, at *1 (N.D.N.Y. Aug. 1, 2008) ("It is well-settled that the defense of implied license is equitable in nature and reserved for the trial judge.") (citing *Wang Labs., Inc. v. Mitsubishi Elec. Am., Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997)); *Kaneka Corp. v. SKC Kolon PI, Inc.*, 2015 WL 12683971, at *3 (C.D. Cal. June 25, 2015). To the extent the Court permits Vizgen to assert an implied license defense, it is especially appropriate here, where the Court has already made conclusions of law relating to the issue, to also decide the legal issue of implied license to avoid jury confusion and ensure that the implied license findings do not contradict the Court's findings. Vizgen offers no explanation for why the jury is well-positioned to address these issues in a very fast-moving and highly complex trial.

For these reasons, Plaintiffs do not consent to Vizgen's proposal under Fed. R. Civ. P. 39(c)(2) and oppose putting the question to the jury in an advisory opinion pursuant to Rule 39(c)(1).

## VII.    PROPOSED VOIR DIRE QUESTIONS

The Parties' proposed voir dire questions are attached hereto as **Attachment 9**.

## VIII.  PROPOSED JURY INSTRUCTIONS

The Parties' proposed preliminary jury instructions are attached hereto as **Attachment 10A.** The Parties' proposed final jury instructions are attached hereto as **Attachment 10B**. **Attachments 10A and 10B** contain agreed-upon instructions and disputed instructions.

The jury instruction conference will be held after the jury leaves at the end of February __ to resolve any issues in the final jury instructions. D.I. 637. For the preliminary and final instructions, Plaintiffs will project them for the jury when the Court reads them before opening statements and before closing statements. *Id*.

Plaintiffs will project the Federal Judicial Center video "The Patent Process: An Overview for Jurors" for the jury during the preliminary jury instructions.

## IX.  PROPOSED VERDICT FORM

10x and Harvard's proposed verdict form is attached hereto as **Attachment 11**. Vizgen's proposed verdict form is attached hereto as **Attachment 12.**

## X.  MOTIONS *IN LIMINE*

Pursuant to D.I. 640, the Parties filed opening motions *in limine* on January 13, 2025 (20 pages in aggregate per side) and will file responses to motions *in limine* (20 pages in aggregate per side) on January 20, 2025.

## XI.  ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF TRIAL

The Parties propose the following procedures to aid trial in the present action:

### A.  Order of Presentation

**Plaintiffs' Position:** Plaintiffs propose that the presentation at the jury trial will occur in the following order: (1) Plaintiffs will first present their patent infringement case; (2) Vizgen will present responses to Plaintiffs' patent infringement case and its counterclaims; and (3) Plaintiffs will present their responses to Vizgen's case. The parties will cooperate to ensure that witnesses

who are relevant to both sides' cases in chief need only appear once. Plaintiffs may recall their own witnesses in their rebuttal cases (3) as appropriate.

Vizgen asserts that 10x and Harvard should not be allowed to call witnesses in their case in chief whose "primary relevance" is to Vizgen's counterclaims. This limitation is inappropriate and unworkable. 10x and Harvard should be allowed to call any witnesses relevant to the presentation of their case-in-chief, which includes witnesses who will discuss the parties, the relationship between Harvard and its licensees, witnesses relevant to Vizgen's willful infringement of the Church patents and to patent damages, as well as witnesses relevant to Vizgen's patent defenses—whether or not those defenses overlap with Vizgen's counterclaims. The notion that certain witnesses are "primarily relevant" to Vizgen's counterclaims is an unworkable and ambiguous standard which appears designed solely to prejudice Harvard's presentation of its case than address any legitimate issue or concern.

Vizgen argues that Plaintiffs are trying to use this provision to ensure that Vizgen cannot control its own case. That is not accurate. The provision is designed to be protective of the witness who should only be obligated to appear once. For example, if Vizgen's Ms. Zhuang is called by Plaintiffs to testify about her early development efforts relating to the accused MERSCOPE platform and her knowledge of the Church portfolio and its relevance to willful infringement, then Vizgen may choose to examine her at that time on issues that relate to Vizgen's defenses and counterclaims. It may also elect to re-call her in Vizgen's case-in-chief (presuming Ms. Zhuang, who is controlled by Vizgen, is willing). Plaintiffs should be permitted to control their own case but will allow Vizgen to examine those witnesses out of turn if it does not impose upon the witnesses.

**Vizgen's Position:** Vizgen is amenable to a system where each witness appears once at trial, but not one where that procedure is used by Plaintiffs to prejudice Vizgen's ability to present its case-in-chief for its counterclaims. Plaintiffs have indicated they may call **all** of their employee or other affiliated witnesses in their case-in-chief, even those with at absolute most marginal relevance to Plaintiffs' patent infringement claims, in a clear attempt to improperly prebut Vizgen's case. Vizgen believes this is an abuse of the process Plaintiffs propose, contrary to FRE 611(a)(1), and would unduly prejudice Vizgen. The only proper witnesses for Plaintiffs' case-in-chief are witnesses who will testify regarding issues on which Plaintiffs bear the burden: alleged infringement and damages. For example, to the extent Plaintiffs intend to call Jordan Grant, Grant Zimmermann, Melissa Korf, Sam Liss, Isaac Kohlberg, Xiaowei Zhuang, or Sean Kendall in their case-in-chief, that is improper.

### B.    Agreements Regarding Exchanges During Trial

The Parties propose the following procedures to aid trial in the present action:

### 1.    Exchanges of Exhibits to Be Used With Opening Arguments

The Parties shall exchange on January 21, no later than 2:00 p.m., up to 30 trial exhibits (per side) that a party seeks to pre-clear of objections at the January 27 final pre-trial conference so that the Parties might use the documents in opening statements. The Parties shall exchange objections by 2:00 p.m. on January 23. If the Parties are unable to resolve the objections cooperatively, the documents and objections may be raised at the pre-trial conference or left to the regular exhibit objection process. A party is not required to disclose any or all of the exhibits it might use in opening as part of pre-clearance.

The Parties shall exchange illustratives, exhibits, and deposition testimony that they intend to use for opening statements no later than 3:00 p.m. on February 2, 2025. The Parties shall exchange any objections by 5:00 p.m. that evening. The Parties shall meet by 6:30 p.m. to resolve

any objections. Any objections to their use that cannot be resolved shall be raised with the Court on Monday morning before trial begins.

The Parties will not exchange illustratives for closing statements.

     **2.    Exchange Of Exhibits And Illustratives To Be Used With Witnesses During Trial**

**Cross and Adverse Direct Witnesses**. The parties agree that disclosure of exhibits in accordance with the below procedure is not required for cross and adverse direct examinations.

**Other Direct Witnesses.** By 7:00 p.m.[6] the night before a witness is put on the stand, each [**Plaintiffs' Proposal:** side; **Vizgen's Proposal:** party] offering the witness will identify exhibits that the party may use for its examination. By 7:00 p.m. the [**Plaintiffs' Proposal:** side; **Vizgen's Proposal:** party[7]] offering the witness will provide color, PDF copies of illustrative exhibits to be used with the witness. For any video or animations to be used, the [**Plaintiffs' Proposal:** side; **Vizgen's Proposal:** party] seeking to use illustrative exhibits will provide such illustrative exhibits in an electronic form that enables the receiving party to play the video or animation as it is intended to be used in court. For any physical exhibits to be used, the party seeking to use the exhibit must make it available for inspection. The Parties need not identify exhibits or illustrative exhibits for use in cross-examination.

---

[6] All times set forth herein are reflected in Eastern Time.

[7] **Vizgen's Statement:** Vizgen understood disclosures by "party" (not by "side") was agreed to based on prior exchanges of the Pretrial Order draft.
**Plaintiffs' Statement:** Plaintiffs never agreed to Vizgen's "per party" language and expressly informed Vizgen that it did not agree with this proposal in a meet and confer held on Friday, January 10. Vizgen's per party instead of per side proposal imposes an asymmetrical burden on 10x and Harvard to separately identify exhibits and illustratives for their witnesses and with no apparent benefit. The purpose of the disclosure is to give the witness notice of the topics in the upcoming exam, not to give opposing counsel information about what attorneys will be performing the exam. Vizgen gains no pertinent information in having Plaintiffs' exhibits broken down by <u>party</u>. 10x and Harvard are coordinating on their trial presentations and should be able to disclose exhibits on the per side basis to simplify the disclosure process.

By 9:00 p.m. the evening before a witness is put on the stand, the opposing side will identify any objections to the trial exhibits and illustrative exhibits.

The Parties shall meet and confer on any objections by 9:30 p.m. that evening.

Any unresolved issues will be presented to the Court the morning of the proposed use of the disputed trial exhibits and/or illustrative exhibits.

The notice provisions in this section do not apply to illustrative exhibits created in the courtroom, or to the enlargement, highlighting, ballooning, or excerpting of trial exhibits or of testimony by attorneys or by the witness.

The Parties agree to provide witness binders for each fact and expert witness for both direct examination and cross-examination. Any exhibit listed by a party may be offered as an exhibit by that party or by another party, subject to any evidentiary objections by the opposing party. Any exhibit, once admitted at trial, may be used equally by any party, subject to the Federal Rules of Evidence.

### 3. Identification of Order of Witnesses as Trial Process

Each side will identify all live trial witnesses in the order that the side expects to call them by 7:00 p.m. two (2) calendar days before the witness will be called (e.g., notice must be given by 7:00 p.m. on Monday for witnesses to be called on Wednesday).

A side shall provide reasonable notice if for any reason it does not intend to call a witness that it had previously indicated would appear live as a "will call" witness. In that event, the other side may designate and offer deposition testimony from such witness (subject to the Federal Rules of Evidence). Counter-designations may also be provided. If such designations cannot be completed by the times agreed to below, the sides shall work in good faith to set deadlines for the disclosure of such designations, counter-designations, and objections.

### 4.    Presentation Of Deposition Designations

All counter-designations will be played/read together with the affirmative designations in the order that the witness provided the testimony.

This pretrial order contains the universe of deposition designations, counter-designations, counter-counter designations, and objections to admissions of deposition testimony currently contemplated by the Parties; except as noted due to changes in live witnesses, none of the foregoing shall be supplemented without approval of all Parties or leave of the Court, on good cause shown.

Any party may use testimony that is designated and played for the jury by another party, to the same effect as if it had initially designated the testimony as its own, subject to all objections.

For those witnesses whose depositions will be played or read, the Parties shall be permitted to make brief transition statements to introduce the witnesses by name, position or title, and/or the company with which he or she is associated.

The side offering the witness will prepare the video clips/transcript to be played/read presenting all portions of the designated testimony in sequence. To that end, the following procedure will apply.

By 12:00 p.m. two calendar days before a witness is called by deposition, the side offering the witness will identify those portions of the transcript that will be presented to the jury and any exhibits that will be admitted through the testimony. If the side intends to include any colloquy between counsel or objections, they will be specifically and separately identified. Colloquy between counsel and objections will be eliminated when the deposition is played or read at trial

[**Plaintiffs' Proposal**: except where specifically and separately identified and any objection to the inclusion has been resolved][8].

By 6:00 p.m. two calendar days before the witness is called by deposition, the responsive side will identify any objections and counter-designate portions of the transcript that will be presented to the jury and identify any objections to the testimony. If the side intends to include any colloquy between counsel or objections, they will be specifically and separately identified. Colloquy between counsel and objections will be eliminated when the deposition is played or read at trial, except where specifically and separately identified and any objection to the inclusion has been resolved.

By 8:00 p.m. two calendar days before the witness is called by deposition, the side offering the witness will identify objections to the counter designations.

The Parties shall meet and confer on any objections by 9:00 p.m. two calendar days before the witness is called by deposition and will present any unresolved issues to the Court the following morning (one calendar day before the witness is to be called by deposition). The Parties shall submit (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; (ii) any exhibits to be introduced with the deposition testimony if there remains a pending objection to that exhibit; and (iii) a cover letter clearly identifying the pending objections (but does not include arguments).

---

[8] **Plaintiffs' Statement:** Plaintiffs' extremely limited designations of attorney colloquy is limited to an attorneys' unobjectionable clarification of questions and do not include any substantive objections or arguments. As such, the designated colloquy is relevant to the testimony and not prejudicial. **Vizgen's Statement:** Plaintiffs, particularly Harvard, have broadly designated attorney objections across their deposition designations. Those are objections for the judge to resolve, not to be played for the jury.

By 5:00 p.m. the evening before the witness is called by deposition, the side offering the witness will provide a copy of the video or transcript containing all Parties' designations, consistent with any objections resolved by the Court. [**Vizgen's Proposal**: Colloquy between counsel and objections will be eliminated when the deposition is played or read at trial]. [**Plaintiffs' Proposal:** All irrelevant and redundant material, including colloquy between counsel, objections, and pauses will be eliminated when the deposition is read or played at trial, unless there is good cause for the inclusion of such material.][9].

When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two (2) copies of the transcript of the designations and counter-designations will be played.

The Parties shall provide the Court with a per-side percentage breakdown of the testimony presented to the jury by deposition designations (D.I. 637).

The above procedures regarding deposition do not apply to portions of deposition transcripts and/or video used for impeachment or cross-examination of a witness.

### 5.    Outside Attorneys' Eyes Only Information

Any party may request that particular exhibits marked "OUTSIDE ATTORNEYS' EYES ONLY" under the Protective Order entered in this case be displayed on monitors visible only to the Court, the jury, and the Parties, but not otherwise be displayed in the courtroom during trial and not be filed publicly. Such requests should be made the morning before the exhibit will be used and must be supported by good cause.

---

[9] See footnote 8 for the parties' positions regarding attorney colloquy designations.

### C.      Juror Notebooks

The jurors shall be permitted to take handwritten notes on paper provided in a three-ring binder ("juror notebook") during the trial presentations. The three-ring binder should contain a copy of all the Asserted Patents and blank sheets for juror notes. The jurors are permitted to bring these juror notebooks into the deliberation room.

### D.      Resolution Of Claim Construction Disputes

**Vizgen's Position:** 10x's invalidity expert offered new claim constructions in his report that the parties did not request or brief during the *Markman* process. The Court should construe those terms before trial, under *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008). Dr. Rahul Satija opined that (1) "in a cell or tissue sample" means "*in situ*" and not "*ex situ*," and (2) "multiplexing" or "high multiplex" are limitations in the Asserted Claims. Neither construction was previously briefed, and Vizgen's expert disputes them, creating claim construction disputes that require resolution. Contrary to Plaintiffs' view, Vizgen's expert did not introduce new claim constructions, but responded to Plaintiffs' patent contentions about the scope of the Asserted Claims. The disputed terms affect the scope of invalidity arguments at trial.

Vizgen disclosed this dispute to Plaintiffs as a potential motion *in limine* for purposes of conferring, but concluded it is better resolved as a legal issue of claim construction for the Court to address, not an evidentiary dispute. Vizgen does not raise this issue here to avoid motion *in limine* page counts, and is willing to coordinate a briefing schedule with Plaintiffs, including suitable page counts, to allow argument and resolution at the final pretrial conference.

**Plaintiffs' Position:** There is no claim construction dispute requiring the Court's resolution. Both sides' experts have offered opinions that dispute, as an issue of fact, whether the claims are infringed, met by the prior art, or are described and enabled. It is Vizgen's expert, Dr. Metzker, rather than 10x's expert, Dr. Satija, that proffered opinions characterizing the claims in

terms of "in situ" and "multiplexing," which are concepts both sides agree are within the claims. *See, e.g.*, **Exhibit E** ¶ 912 ("I disagree because the specification lacks, among other things, any working example of the claimed invention performed *in situ* to detect nucleic acids"); ¶ 910 ("As the specification describes, the Asserted Claims of the TOSS Patents relate to 'the development of a multiplexed biological assay and readout, in which a multitude of detection reagents comprising one or more probes and/or probe types are applied to a sample, allowing the detection reagents to bind target molecules or analytes, which can then be optically identified in a temporally-sequential manner.' In particular, the TOSS Patents relate to methods of analyzing the identity and spatial location of analytes *in situ*. Although certain in situ analytical techniques had been developed around the time of the invention of the TOSS Patents, these methods had only been demonstrated for certain nucleic acid applications, not any type of analyte as encompassed by the Asserted Claims."). Further, Vizgen moved for summary judgment on the basis that the claims require these concepts and were allegedly not described or enabled. D.I. 559 at 5 (Vizgen's 11/5 Motion for Summary Judgment) ("The TOSS Patents Asserted Claims[1] are invalid for lack of enablement and written description because their shared specification ("Common Specification") does not provide support for and/or adequately describe the full scope of the claims, including failing to disclose *in situ*, multiplexed detection of the full range of claimed analytes.").

Now that Vizgen's motion for summary judgment was denied and the Court has left application of these concepts to the jury as a question of fact, Vizgen seeks to preclude 10x's expert testimony by reopening claim construction, but without a motion *in limine* or a motion under *Daubert*. Vizgen identified this issue in the January 6 exchange of MIL topics but chose not to include it in its opening MIL brief. **Exhibit D**; D.I. 648. Vizgen's request for additional pages now on an untimely motion is improper and is plainly an attempt to skirt the page limits for MILs and *Daubert* issues.

E.       **Deposition of Gabriella Behm**

Vizgen seeks to take the deposition of Gabriella Behm either de bene esse or during trial by video appearance.  Ms. Behm is a resident of Sweden and will be offered solely to establish that two references, the Larsson Dissertation (DTX-000325 and DTX-000326) and the Göransson Dissertation (DTX-000322 and DTX-000323), constitute prior art under the patent laws. Essentially, Ms. Behm will testify as to the public availability of these references.  Given the travel involved and the limited nature of her testimony, Vizgen seeks this relief for reasons of judicial economy.

Respectfully Submitted,

*Of Counsel:*
TENSEGRITY LAW GROUP LLP

Matthew D. Powers
Paul Ehrlich
William P. Nelson
Stefani Smith
Robert Gerrity
Li Shen
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000

Azra M. Hadzimehmedovic
Aaron M. Nathan
Samantha A. Jameson
Ronald J. Pabis
Kiley White
Joanna R. Schacter
Parshad K. Brahmbhatt
Grace Gretes
1676 International Drive
Suite 910
McLean, VA 22102-3848
Tel: (650) 802-6000

RICHARDS, LAYTON & FINGER, P.A.

 */s/ Jason J. Rawnsley*
Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
Gabriela Z. Monasterio (#7240)
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com
monasterio@rlf.com

*Attorneys for 10x Genomics*

35

10x_Vizgen_Service@tensegritylawgroup.com

LATHAM & WATKINS LLP
Marguerite M. Sullivan
Molly M. Barron
Christopher John Brown
Brian Barrows Goodell
Sahdia Khan
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200
marguerite.sullivan@lw.com
molly.barron@lw.com
chris.brown@lw.com
brian.goodell@lw.com
sahdia.khan@lw.com

Kelly Fayne
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
kelly.fayne@lw.com

Dated: January 14, 2025


*Of Counsel*:

Michael J. Tuteur
Ruben J. Rodrigues
Geoffrey M. Raux
Lea Gulotta James
Lucas I. Silva
Amani S. Kmeid
James W. Matthews
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
(617) 502-3284

Sarah E. Rieger
Kate E. Gehl
Ian T. Hampton
FOLEY & LARDNER LLP
777 East Wisconsin Avenue

MORRIS JAMES LLP

*/s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Ave., Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for President and Fellows of Harvard College*

Milwaukee, WI 53202
(414) 271-2400

Jarren N. Ginsburg
Alan D. Rutenberg
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 295-4071

Jared J. Braithwaite, Esq.
Maren Laurence, Esq.
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, Utah 84111
(801) 401-8920

Andrew M. Gross, Esq.
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654
(312) 832-4532

BOST-F-10Xv.Vizgen@foley.com

Dated: January 14, 2025

*Of Counsel:*

David Bilsker
Adam B. Wolfson
Sam Stake
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
davidbilsker@quinnemanuel.com
samstake@quinnemanuel.com
adamwolfson@quinnemanuel.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Pilar G. Kraman*
James L. Higgins (No. 5021)
Pilar G. Kraman (No. 5199)
Jennifer P. Siew (No. 7114)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jhiggins@ycst.com
pkraman@ycst.com
jsiew@ycst.com

*Attorneys for Vizgen, Inc.*

37

Kevin Johnson
Victoria Maroulis
Brian C. Cannon
Andrew Bramhall
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
kevinjohnson@quinnemanuel.com
victoriamaroulis@quinnemanuel.com
briancannon@quinnemanuel.com
andrewbramhall@quinnemanuel.com

Patrick D. Curran
Eric D. Wolkoff
Kathleen Marini
Angela Nelson
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100
patrickcurran@quinnemanuel.com
ericwolkoff@quinnemanuel.com
kathleenmarini@quinnemanuel.com
angelanelson@quinnemanuel.com

Angus Chen
Catherine T. Mattes
David D. LeRay
Andrew Tigchelaar
Neil Bhargav Setlur
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
anguschen@quinnemanuel.com
catherinemattes@quinnemanuel.com
davidleray@quinnemanuel.com
andrewtigchelaar@quinnemanuel.com
bhargavsetlur@quinnemanuel.com

Michael J. Songer
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
michael.songer@whitecase.com

Henry Y. Huang
Tiffany Huynh
WHITE & CASE LLP
3000 El Camino Real
Palo Alto, CA 94306
(650) 213-0300
henry.huang@whitecase.com
tiffany.huynh@whitecase.com

Alexandra J. Cho
Samantha J. Kokonis
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
alexa.cho@whitecase.com
samantha.kokonis@whitecase.com

Dated: January 14, 2025

SO ORDERED this _____ day of _____, 2025.

_____
THE HONORABLE MATTHEW F. KENNELLY
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 14, 2025, copies of the foregoing were served upon the following parties as indicated below:

| | |
|---|---|
| James L. Higgins (No. 5021)<br>Pilar G. Kraman (No. 5199)<br>Jennifer P. Siew (No. 7114)<br>YOUNG, CONAWAY, STARGATT & TAYLOR LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>YCST_vizgen@ycst.com<br><br>David Bilsker<br>Adam B. Wolfson<br>Sam Stake<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>50 California Street, 22nd Floor<br>San Francisco, California 94111<br>(415) 875-6600<br><br>Kevin P.B. Johnson<br>Victoria F. Maroulis<br>Andrew Bramhall<br>Brian C. Cannon<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>555 Twin Dolphin Dr., 5th Floor<br>Redwood Shores, California 94065<br>(650) 801-5000<br><br>Angus Chen, Ph.D.<br>Catherine T. Mattes<br>David D. LeRay<br>Andrew Tigchelaar<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br><br>Patrick D. Curran<br>Eric D. Wolkoff<br>Kathleen Marini<br>Angela Nelson | **Via E-mail**<br>YCST_vizgen@ycst.com<br>vizgen@quinnemanuel.com<br>wcvizgen-10xservice@whitecase.com<br>cicero@chipmanbrown.com |

| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>111 Huntington Avenue, Suite 520<br>Boston, MA 02199<br>(617) 712-7100<br><br>vizgen@quinnemanuel.com<br><br>Michael J. Songer<br>WHITE & CASE LLP<br>701 Thirteenth Street, NW<br>Washington, DC 20005<br>(202) 626-3647<br>wcvizgen-10xservice@whitecase.com<br><br>Henry Y. Huang<br>Tiffany T. Huynh<br>Hallie Kiernan<br>WHITE & CASE LLP<br>3000 El Camino Real<br>Palo Alto, CA 94306<br>(650) 213-0383<br>wcvizgen-10xservice@whitecase.com<br><br>Alexandra J. Cho<br>Samantha J. Kokonis<br>WHITE & CASE LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>(212) 819-8200<br>wcvizgen-10xservice@whitecase.com<br><br>Joseph B. Cicero<br>CHIPMAN BROWN CICERO & COLE, LLP<br>Hercules Plaza<br>1313 North Market Street, Suite 5400<br>Wilmington, DE 19801<br>(302) 295-0191<br>cicero@chipmanbrown.com<br><br>*Attorneys for Defendant Vizgen, Inc.* | |
| Kenneth L. Dorsney (#3726)<br>Cortlan S. Hitch (#6720)<br>**MORRIS JAMES LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801 | **Via E-mail**<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br>BOST-F-10Xv.Vizgen@foley.com |

(302) 888-6800
Kdorsney@morrisjames.com
Chitch@morrisjames.com

Geoffrey M. Raux, Esq.
Ruben J. Rodrigues, Esq.
Michael J. Tuteur, Esq.
Lea Gulotta James, Esq.
Lucas I. Silva, Esq.
Amani S. Kmeid, Esq.
**FOLEY & LARDNER LLP**
111 Huntington Avenue, Suite 2500
Boston, MA 02199
(617) 502-3284
(617) 502-3228

Sarah E. Rieger, Esq.
Kate E. Gehl, Esq.
Ian T. Hampton, Esq.
**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 271-2400

Jarren N. Ginsburg, Esq.
Alan D. Rutenberg, Esq.
**FOLEY & LARDNER LLP**
Washington Harbour
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 295-4071

Jared J. Braithwaite, Esq.
Maren Laurence, Esq.
**FOLEY & LARDNER LLP**
95 S. State Street, Suite 2500
Salt Lake City, Utah 84111
(801) 401-8920

Andrew M. Gross, Esq.
**Foley & Lardner LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654
(312) 832-4532

BOST-F-10Xv.Vizgen@foley.com

| ***Attorneys for President and Fellows of Harvard College*** | |
|---|---|

*/s/ Gabriela Z. Monasterio* (#7240)
Gabriela Z. Monasterio