IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Plaintiffs,<br><br>  v.<br><br>VIZGEN, INC.,<br><br>    Defendant | C.A. No. 22-595-MFK |
| VIZGEN, INC.,<br><br>    Counterclaim-Plaintiff,<br><br>  v.<br><br>10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Counterclaim-Defendants | |

**VIZGEN INC.'S SUMMARY OF ITS AFFIRMATIVE DEFENSES**

**(IN RESPONSE TO ITEM NO. 2, ORAL ORDER, JANUARY 22, 2025)**

1

Following the pretrial conference of January 21, 2025 and in response to Item No. 2 of the Court's Oral Order of January 22, 2025, Vizgen hereby provides the following summary of facts and law underlying the affirmative defenses it intends to pursue.

At trial, Vizgen intends to assert the following affirmative defenses to rebut liability as to Harvard's and 10x's claims of patent infringement: (1) implied license (by acquiescence, legal estoppel, conduct, and/or equitable estoppel), (2) equitable estoppel, and (3) unclean hands. These are the "equitable defenses"—and they are for the Court to decide based on underlying facts that will be developed at trial. In addition, Vizgen intends to assert that it does not infringe the asserted patents and/or that the patents are invalid. Non-infringement and invalidity are the "patent defenses"—which are for the jury to decide. After trial, this Court may consider equitable relief (including injunctive relief) and Vizgen reserves the right to raise additional equitable factors depending on the post-trial issues and remedies to be resolved.

In response to Item No. 5 of the Court's Oral Order of January 22, 2025, with respect to Vizgen's implied license defense, Vizgen is concurrently filing proposed jury interrogatories regarding certain underlying facts.

In light of the conduct underlying implied license, equitable estoppel, and unclean hands, Vizgen does not intend to pursue the following affirmative defenses to liability at this time: 35 U.S.C. § 287, Laches, Consent, Waiver, Payment, Release, Judicial Estoppel, and Patent Misuse.

As stated above, Vizgen intends to assert the following affirmative defenses:

### I. IMPLIED LICENSE

Vizgen asserts implied license as a defense to infringement of the asserted patents and to Plaintiffs' request for an injunction. Implied license is an equitable defense to be decided by the Court. *Wang Labs, Inc. v. Mitsubishi Elecs.*, 103 F.3d 1571, 1578-1580 (Fed. Cir. 1997).

Vizgen may establish implied license to the asserted patents through acquiescence, legal estoppel, conduct, or equitable estoppel. *Tenneco Auto. Operating Co. v. Visteon Corp.*, 375 F. Supp. 2d 375, 384 (D. Del. 2005) (citing *Wang Labs*, 103 F.3d at 1580). As described below, the evidence supports each of these alternative bases for implied license, which are "not different kinds of licenses, but rather different categories of conduct, which lead to the same conclusion: an implied license." *Wang Labs*, 103 F.3d at 1580.

Harvard's course of conduct that leads to an implied license includes: (1) entering a license agreement with Vizgen in 2019 with an "all fields" scope for Harvard's Zhuang patents that required Vizgen to commercialize MERSCOPE, (2) requiring and obtaining progress reports from Vizgen about its commercialization efforts of MERSCOPE, (3) receiving upfront money and ongoing royalties from Vizgen for the commercialization and sales of MERSCOPE in fulfillment of Vizgen's obligations, (4) assuring Vizgen there was no conflict with another Harvard IP license, (5) having confidential information about MERSCOPE, its patent filings and business plans, and (6) after the afore-mentioned conduct, continuing to receive royalties from Vizgen for MERSCOPE and asserting MERSCOPE infringes other Harvard patents—namely, the Church patents that Harvard expanded and prosecuted after learning of Vizgen's commercial plans. *See* DX-0114,[1] DX-0598, DX-0087, DX-0089 (Vizgen License and amendments); DX-81 (exemplar Vizgen Milestone Report); DX-1366 (summary of Vizgen payments to Harvard).

A. **Acquiescence**

An implied license by acquiescence arises where a "plaintiff was bound to know that the royalties it received were for devices corresponding to the patent in suit, [thus justifying] defendant ... in concluding that plaintiff consented to the manufacture of the accused devices within the scope

---

[1] Vizgen cites herein certain exemplar documents from its Exhibit list.

of the asserted patent." *Sun Microsystems, Inc. v. Versata Enterprises, Inc.*, 630 F. Supp. 2d 395, 411 (D. Del. 2009) (quoting *AMP, Inc. v. United States*, 389 F.2d 448, 452 n.4 (1968)).

The evidence will show that Harvard repeatedly accepted royalties from Vizgen for sales of MERSCOPE—including after the lawsuit was filed. Yet if Plaintiffs establish infringement, under the circumstances, including Harvard's involvement in the patent prosecution of the asserted Church patents and as further evidenced by its own assertions in this case regarding the scope of those patents, Harvard must have known that the royalties derived from sales practicing the asserted Church patents. Harvard's actions, including accepting the royalties on sales of MERSCOPE, reasonably justified Vizgen in believing that Harvard consented to the use of the asserted Church patents.

**B.     Legal Estoppel**

An implied license by legal estoppel exists when the plaintiff asserting the patents: "(1) licensed or assigned a right; (2) received consideration for that right; and (3) then sought to derogate from the right granted." *Tenneco*, 375 F. Supp. 2d at 384 (citing *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1375 (Fed. Cir. 2001), *opinion corrected*, 275 F.3d 1344 (Fed. Cir. 2001); *Wang Labs*, 103 F.3d at 1581).

Vizgen will establish each of these elements: (1) Harvard licensed rights to Vizgen via the Harvard-Vizgen license agreement, (2) Harvard received consideration from Vizgen for those rights, including substantial licensing fees and royalties, and (3) Harvard then sought to derogate from the rights granted to Vizgen.

Harvard's derogation of Vizgen's rights includes, for example, Harvard's conduct in "destroy[ing] the value of Vizgen's license" by expanding ReadCoor's field of use in 2020 to "put Vizgen on a collision course with ReadCoor" via "an expansion that connects, with a direct line, to 10x and Harvard's filing of the present patent infringement lawsuit." D.I. 641 (MSJ Order) at

4

33-34. While it is not necessary for Vizgen to prove Harvard's ***intentional*** derogation of Vizgen's rights in order to establish implied license,[2] Harvard indeed recognized the consequences of expanding ReadCoor's field, yet chose to derogate Vizgen's rights when ReadCoor "dangl[ed] a significant financial reward." *Id.* Harvard initially recognized a covenant not to sue another Harvard licensee would be a necessary condition of any ReadCoor field expansion to avoid creating a direct conflict with Vizgen. Yet, "Harvard ultimately gave in on that and also agreed to a joinder provision requiring Harvard to join an infringement suit brought by ReadCoor." *Id.* at 32. Harvard's conduct in derogating Vizgen's rights under the license also includes engaging in targeted patent prosecution to put "MERFISH in 10x's crosshairs," and then suing Vizgen for infringement of the asserted Church patents. *Id.* at 34. *See also* DX-78, DX-100.

### C. Conduct

An implied license by conduct exists when "(1) a relationship existed between plaintiff and defendant; (2) within that relationship, plaintiff granted defendant a right to use plaintiff's patents; (3) plaintiff received valuable consideration for the grant of right; (4) plaintiff's statements and conduct created the impression that plaintiff consented to defendant's use of plaintiff's patents; and (5) plaintiff denied that defendant had an implied license." *Tenneco Auto. Operating Co.*, 375 F. Supp. 2d at 384.

The evidence will show each of these elements: (1) a relationship existed between Harvard and Vizgen; (2) within that relationship, Harvard granted Vizgen a right to use certain patents; (3) Harvard received valuable consideration for the grant of right, including millions of dollars in

---

[2] *Moy's Walker on Patents*, Implied Licenses, § 19:36 (4th ed.) (Implied license is not "not based on any actual intent on the part of the parties, and licensure can be implied in law even if the patent owner has attempted to impose contrary restrictions on the patented article expressly.")

5

licensing fees and royalty payments; (4) Harvard's statements and conduct, including but not limited to requiring and encouraging Vizgen to commercialize MERFISH, accepting royalties for MERFISH, making representations to Vizgen about, *inter alia* its valuable proprietary market position and ability to continue to enforce against competitors, created the impression that Harvard consented to Vizgen's alleged use of the asserted patents; and (5) Harvard has since denied that Vizgen had an implied license. *See* DX-385; DX-085; D.I. 641 (MSJ Order) at 33 ("Vizgen points to evidence indicating that, initially, Harvard entered into a license with Vizgen for certain patents understanding that Vizgen would use the license to commercialize its MERSCOPE product, and encouraging Vizgen to do exactly that … Harvard argues that there is no viable contention that it assured Vizgen that it had freedom to operate with respect to its MERSCOPE project. But the Harvard-Vizgen license agreement included a representation by Harvard to the effect that to the best of OTD's knowledge, the Vizgen license did not conflict with any other intellectual property license that Harvard had granted to anyone else.").

### D.   Implied License by Equitable Estoppel

An implied license by equitable estoppel is established when: "(1) the patentee, through statements or conduct, gave an affirmative grant of consent or permission to make, use, or sell to the alleged infringer; (2) the alleged infringer relied on that statement or conduct; and (3) the alleged infringer would, therefore, be materially prejudiced if the patentee is allowed to proceed with its claim." *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001), *opinion corrected*, 275 F.3d 1344 (Fed. Cir. 2001).

The evidence will show that (1) Harvard gave an affirmative grant of consent or permission to Vizgen to license the MERFISH patents and commercialize them, (2) Vizgen relied on Harvard's statements and conduct, including by investing significantly in its business and

commercialization plans, all the while paying Harvard licensing fees and royalties, and (3) due to its reliance, Vizgen will be materially prejudiced if Harvard is allowed to proceed with its claims.

## II. EQUITABLE ESTOPPEL

Vizgen also asserts general equitable estoppel as an affirmative defense. Equitable estoppel is a defense to be decided by the Court.

In a patent case, equitable estoppel requires that: "(1) the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer, (2) the alleged infringer relies on that conduct, and (3) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim. *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371 (Fed. Cir. 2001) (citation omitted). Conduct giving rise to equitable estoppel "may include specific statements, action, ***inaction, or silence*** where there was an obligation to speak." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010) (emphasis added). "In deciding whether to bar the suit on estoppel grounds, the court must consider all evidence relevant to the equities." *Id.*

As noted above, Vizgen also asserts implied license by equitable estoppel. The primary difference between implied license by equitable estoppel and general equitable estoppel is that "implied license looks for an affirmative grant of consent or permission to make, use, or sell: *i.e.*, a license … . Equitable estoppel, on the other hand, focuses on 'misleading' conduct suggesting that the patentee will not enforce patent rights." *Wang Labs*, 103 F.3d at 1581.

While the legal elements differ, the same overall facts supporting Vizgen's implied license defense, as described above in Section I, also support Vizgen's defense of equitable estoppel and are incorporated by reference: namely, Harvard's misleading conduct, including but not limited to its acceptance of Vizgen's royalty payments, encouragement of Vizgen's commercialization efforts, and silence regarding Vizgen's purported infringement of the asserted Church patents until

filing suit, all suggested that Harvard would not enforce the asserted Church patents against Vizgen. Vizgen relied on Harvard's conduct and would be materially prejudiced by Harvard's about-face.

### III. UNCLEAN HANDS

Vizgen asserts unclean hands as an affirmative defense. Unclean hands is an equitable issue for the Court to decide.

"[A] determination of unclean hands may be reached when 'misconduct' of a party seeking relief 'has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation,' *i.e.*, 'for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court.'" *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). Unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant, and requires that claimants 'have acted fairly and without fraud or deceit as to the controversy in issue.'" *Id.* "[T]he misconduct supporting unclean hands does not need to rise to the level of a crime or tort." *Staton Techiya, LLC v. Samsung Elecs. Co.*, 2024 WL 4850513, at *32 (E.D. Tex. May 9, 2024). "Unclean hands is especially important and applicable in the patent context" given the public interest inherent in the possession of and assertion of patent rights. *Id.* A finding of unclean hands can be based on improper pre-litigation conduct by a patentee. *Gilead Scis., Inc.*, 888 F.3d at 1247.

The basis for Vizgen's unclean hands defense includes, for example, Harvard's improper and inequitable conduct in knowingly destroying Vizgen's rights under the Vizgen-Harvard license agreement via the 2020 ReadCoor license amendment and targeting Vizgen through calculated patent prosecutions leading to the asserted patents. D.I. 641 (MSJ Order) at 33-34.

In addition, unclean hands applies with respect to the NIH-funded Church patents. In order to obtain nearly $20 million in public funding, Harvard and George Church made statements in the NIH application to the federal government regarding open and non-exclusive licensing of resulting patents. Harvard and Church ignored these commitments and engaged in self-dealing by exclusively licensing the asserted patents to Church's own company and Harvard spinout, ReadCoor. *See* D.I. 586 (Vizgen's Opp. to MSJ) at 5-9. Harvard and Church thereafter concealed the NIH grant application commitments by publishing (and submitting to the PTO) a misleading, truncated version of the application. DX-129. Harvard and 10x (ReadCoor's successor by law) thereafter asserted the NIH-funded Church patents against Vizgen, refusing to honor the NIH grant commitments. All of this conduct is inextricably related to and in fact directly enabled Plaintiffs' lawsuit against Vizgen.

## IV. NONINFRINGEMENT

Vizgen asserts noninfringement as an affirmative defense under 35 U.S.C. § 282(b)(1). Noninfringement is an issue for the jury to decide.

Plaintiffs bear the burden of proving infringement of the Asserted Patent claims by a preponderance of the evidence. Vizgen has asserted counterclaims for declaratory judgment of noninfringement. Vizgen will present evidence that use of the Accused Instrumentalities, by Vizgen itself and by Vizgen's customers and end-users, does not infringe any of the Asserted Patent claims because it does not perform one or more of the claim limitations. Vizgen will also present evidence that it has a reasonable belief that the asserted claims are invalid and that it has not infringed them.

## V. INVALIDITY

Vizgen asserts invalidity as an affirmative defense. Invalidity is an issue for the jury to decide. Vizgen bears the burden of proving by clear and convincing evidence that the asserted

9

claims of the patents are invalid under either 35 U.S.C. § 102, §103, or § 112. Vizgen has asserted counterclaims for declaratory judgment of invalidity. Vizgen will present evidence that prior art existing before the relevant priority dates of the asserted patents alone or in combination with other references teaches each and every element of the asserted claims. Where Vizgen relies on a combination of references, Vizgen will present evidence demonstrating that one of skill in the art would have been motivated to combine the teachings of the prior art references to arrive at the asserted claims. Vizgen will also present evidence that one of skill in the art would not have understood the patents to enable the full scope of the claims and that the claims are not supported by adequate written description.

## VI.     NO EQUITABLE RELIEF

Vizgen asserts no equitable relief as an affirmative defense to Plaintiffs' request for an injunction. Plaintiffs' request for equitable relief in the form of an injunction is a matter for the Court to decide following trial if any of Plaintiffs' asserted claims are found valid and infringed. Vizgen maintains its defense of no-equitable relief in response to Plaintiffs' request, and reserves the right to rely on all evidence presented at trial as well as any other relevant evidence necessary to respond to any post-trial briefings on this issue to the extent they occur.

Dated: January 24, 2025

*Of Counsel:*

David Bilsker
Adam B. Wolfson
Sam Stake
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
davidbilsker@quinnemanuel.com
samstake@quinnemanuel.com
adamwolfson@quinnemanuel.com

Kevin Johnson
Victoria Maroulis
Brian C. Cannon
Andrew Bramhall
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
kevinjohnson@quinnemanuel.com
victoriamaroulis@quinnemanuel.com
briancannon@quinnemanuel.com
andrewbramhall@quinnemanuel.com

Angus Chen
Catherine T. Mattes
David D. LeRay
Andrew Tigchelaar
Neil Bhargav Setlur
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000
anguschen@quinnemanuel.com
catherinemattes@quinnemanuel.com
davidleray@quinnemanuel.com
andrewtigchelaar@quinnemanuel.com
bhargavsetlur@quinnemanuel.com

Patrick D. Curran
Eric D. Wolkoff
Kathleen Marini
Angela Nelson

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Jennifer P. Siew*
James L. Higgins (No. 5021)
Pilar G. Kraman (No. 5199)
Jennifer P. Siew (No. 7114)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jhiggins@ycst.com
pkraman@ycst.com
jsiew@ycst.com

*Attorneys for Defendant and Counterclaim-Plaintiff Vizgen, Inc.*

Q∪INN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100
patrickcurran@quinnemanuel.com
ericwolkoff@quinnemanuel.com
kathleenmarini@quinnemanuel.com
angelanelson@quinnemanuel.com

Michael J. Songer
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
michael.songer@whitecase.com

Henry Y. Huang
Tiffany Huynh
WHITE & CASE LLP
3000 El Camino Real
Palo Alto, CA 94306
(650) 213-0300
henry.huang@whitecase.com
tiffany.huynh@whitecase.com

Hallie Kiernan
Alexandra J. Cho
Samantha J. Kokonis
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
hallie.kiernan@whitecase.com
alexa.cho@whitecase.com
samantha.kokonis@whitecase.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 24, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Kenneth L. Dorsney
Cortlan S. Hitch
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
kdorsney@morrisjames.com
chitch@morrisjames.com

Geoffrey M. Raux
Ruben J. Rodrigues
Michael J. Tuteur
Lea Gulotta James
Lucas I. Silva
Amani S. Kmeid
James W. Matthews
Foley & Lardner LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199

Sarah E. Rieger
Kate E. Gehl
Ian T. Hampton
Sydney K. Hecimovich
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202

Jarren N. Ginsburg
Alan D. Rutenberg
Foley & Lardner LLP
Washington Harbour
3000 K Street NW, Suite 600
Washington, DC 20007

Jared J. Braithwaite
Maren Laurence
Foley & Lardner LLP
95 S. State Street, Suite 2500

Frederick L. Cottrell, III
Jason J. Rawnsley
Alexandra M. Ewing
Gabriela Z. Monasterio
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com
monasterio@rlf.com

Samantha Jameson
Kiley White
Ron Pabis
Joanna R. Schacter
Azra M. Hadzimehmedovic
Aaron M. Nathan
Parshad K. Brahmbhatt
Grace Getes
Tensegrity Law Group LLP
1676 International Drive, Suite 910
McLean, VA 22102

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
William P. Nelson
Tensegrity Law Group LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065

10x_Vizgen_Service@tensegritylawgroup.com

Marguerite M. Sullivan
Molly M. Barron
Christopher John Brown

| | |
|---|---|
| Salt Lake City, UT 84111<br>Andrew M. Gross<br>Foley & Lardner LLP<br>321 North Clark Street, Suite 3000<br>Chicago, IL 60654<br><br>BOST-F-10Xv.Vizgen@foley.com<br><br>*Attorneys for President and Fellows of Harvard College* | Brian Barrows Goodell<br>Sahdia Khan<br>Latham & Watkins LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C. 20004<br>marguerite.sullivan@lw.com<br>molly.barron@lw.com<br>chris.brown@lw.com<br>brian.goodell@lw.com<br>sahdia.khan@lw.com<br><br>Kelly Fayne<br>Latham & Watkins LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>kelly.fayne@lw.com<br><br>*Attorneys for 10X Genomics, Inc* |

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Jennifer P. Siew*
James L. Higgins (No. 5021)
Pilar G. Kraman (No. 5199)
Jennifer P. Siew (No. 7114)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jhiggins@ycst.com
pkraman@ycst.com
jsiew@ycst.com

*Attorneys for Vizgen, Inc.*