IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PRESENTIDENT AND FELLOWS OF HARVARD COLLEGE, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 22-cv-595-MFK |
| VIZGEN, INC., | ) ) |
| Defendant. | ) ) |

## ORDER REGARDING CERTAIN MOTIONS IN LIMINE AND CERTAIN MATTERS IN THE FINAL PRETRIAL ORDER

In this order, the Court rules on certain of the parties' motions *in limine*, as well as certain other matters discussed at the January 21, 2025 telephonic hearing. The parties should be prepared to argue at the final pretrial conference any motion not ruled on in this order, as well as a handful of points specifically referenced in the order.

A.   Defendant's motions *in limine*

   1.   NIH inquiry

In August 2023, in response to an inquiry by NanoString, the National Institutes of Health asked Harvard about the NIH grant that funded the Church patents that are at issue in this case. NIH's letter stated that "Harvard promised in the [grant] application it would make subject inventions widely available," and it requested information regarding Harvard's "compliance" with its undertakings. Def.'s Mot. In Limine, Ex. 1. Harvard responded in October 2023 with information about its licensing practices. *Id.*, Ex. 2. In November 2023, NIH sent Harvard a four-sentence letter stating:

> Dear Ms. Korf:
>
> Thank you for providing the requested supporting documentation regarding Harvard's exclusive and non-exclusive licensing of patented intellectual property developed under NIH award P50 HG005550. Also, that you for providing the additional, surrounding context regarding this matter.
>
> Based on our review of the submitted material, NIH does not have any further questions at this time regarding Harvard's licensing or reporting of usage of intellectual property developed under the award in question. Thank you again for meeting with us to discuss this matter and providing the requested, supporting documentation.

*Id.*, Ex. 4. Plaintiffs want to introduce this exchange—in particular the November 2023 NIH letter—as evidence of "the state of mind of Harvard's purported counter-party," NIH—in other words, how NIH understood the grant and application and how it viewed Harvard's conduct with respect to compliance with the terms of the application and grant.

The Court grants Vizgen's motion *in limine* to exclude this evidence. First of all, the evidence is barely probative of NIH's "state of mind." NIH's letter does not indicate any conclusions or determinations; it simply says it has no more questions "at this time." It's speculative, to say the least, to infer from the letter that NIH saw things the way Harvard did—which is exactly what plaintiffs are attempting to derive from NIH's letter. Rather, there are any number of reasons why NIH may have determined not to pursue the matter further at the time. No party in this case obtained any discovery that sheds any light on why NIH acted as it did. And for these reasons, introduction into evidence of this exchange, or testimony about it, would invite the jury to speculate on what NIH intended. There is a significant risk that the jury would draw unwarranted conclusions. This far outweighs the evidence's probative value. The Court excludes this evidence

under Federal Rule of Evidence 403.

The Court also notes that if offered to show that NIH saw things Harvard's way, its November 2023 letter—which is the core of the inquiry here—is hearsay, not admissible under any exception.  The letter is not *actually* probative of NIH's "state of mind," as plaintiffs contend, for the reasons discussed in the preceding paragraph.  And the letter is not admissible under Federal Rule of Evidence 803(8)(A) as plaintiffs contend.  Specifically, NIH's letter is not admissible under Rule 803(8)(A)(iii) because it includes no "factual findings"; it is not admissible under Rule 803(8)(A)(ii) because it does not identify "a matter observed while under a legal duty to report"; and it is not probative of "the office's activities" under Rule 803(8)(A)(i) because it does not actually say anything about what NIH determined or any action it took.

Apart from the Rule 403 ruling, the Court also overrules plaintiffs' contention that the evidence is admissible under Rule 807's "residual" exception to the hearsay rule. Among other things, plaintiffs have made no effort to show that the evidence—specifically with regard to what NIH determined (if anything)—"is more probative on the point for which it is offered than any other evidence that [plaintiffs] can obtain through reasonable efforts."  Fed. R. Evid. 807.  Plaintiffs say this in their response to the motion, but they don't support the contention that they couldn't have obtained further evidence regarding what (if anything) NIH concluded, and thus they have forfeited the point.

    2.    **Dr. Ploquin**

Vizgen asks the Court to exclude evidence that Mickael Ploquin, its regional director for Europe, the Middle East, and Africa, was previously employed at 10x and

3

was accused of trade secret misappropriation or other misconduct while there. In response, plaintiffs state that they are not offering any evidence regarding the accusations or proceedings against Ploquin. The Court agrees that such evidence would be inadmissible under Rule 403, for two reasons. First, as discussed later in this order, a party cannot call an adverse witness just to impeach the witness. Second, any claimed misconduct by Ploquin regarding trade secret misappropriation has extremely limited probative value given the topic(s) of his testimony in this case—a relatively focused point regarding determination of an appropriate royalty rate, and methods of competition as relevant to Vizgen's tortious interference claim. This minuscule probative value would be far outweighed by the diversion of the jury's attention would result from introduction of evidence of unrelated claimed misconduct by Ploquin. For these reasons, if plaintiffs, despite the statements in their response to the motion *in limine*, have designated deposition testimony by Ploquin that involves the trade secret misappropriation accusations against him—not just the proceedings arising from those accusations—the Court will exclude it as irrelevant and under Rule 403. Further details will have to await the parties' submissions of their final deposition designations and objections.

    3.    **Willfulness**

The Court overrules Vizgen's request to exclude evidence or argument regarding willful infringement. Vizgen did not move for summary judgment on this point. It cannot properly obtain via a motion *in limine* a substantive ruling regarding the viability of plaintiffs' willfulness claim. *See, e.g., Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012) ("[S]ufficiency of the evidence might be a proper

4

argument for summary judgment or judgment as a matter of law, [but] it is not a proper basis for a motion to exclude evidence prior to trial.") (citation omitted).

4. **Availability of enhanced damages**

All parties are precluded from offering evidence and argument regarding the availability of enhanced damages on any claim (e.g., willful patent infringement) or counterclaim (e.g., the 93A counterclaim). This is irrelevant to any matter to be decided by the jury, as well as unfairly prejudicial, and allowing it would create a significant risk of jury confusion.

6. **Prior engagements of experts by opposing counsel/parties**

The Court grants Vizgen's motion to preclude each party from introducing evidence that any expert in the case has been retained by the other side's counsel in the past. The fact that a party has retained a particular expert in a separate matter in the past has no bearing on whether the expert's testimony in the present matter is persuasive. The door to admission of such evidence may be opened, however, if a party via its cross-examination attempts to show that a particular expert has a bias in favor of the party that retained it (aside from the standard questioning about fees paid and due). But any contention that the door has been opened in this regard must be raised with the Court outside the jury's presence before party making the contention attempts to introduce evidence covered by this motion *in limine*. In other words, a party cannot take it upon itself to decide that the door has been opened.

7. **Russell Slifer**

The Court precludes all parties from making any reference to the fact that defense expert Russell Slifer's law firm has represented Harvard. The Court previously

5

concluded that there is no disabling conflict of interest.  This evidence—which does not concern any previous work for Harvard by Slifer himself—has no appreciable probative value, either in attempting to undercut or bolster Slifer's testimony in this case.

### 8. 10x v. NanoString/Bruker lawsuit

Plaintiffs evidently want to introduce evidence concerning Case No. 21-cv-653 (D. Del.), *10x Genomics v. NanoString* (now Bruker), for two purposes.  10x prevailed in that lawsuit; Vizgen was not a party.  One purpose plaintiffs have is to rebut arguments that 10x has a history of "using litigation to bully rivals."  Put this way, it's an easy one.  That sort of argument is inappropriate—it's irrelevant, has next to no probative value, and would take the jury on a long frolic and detour into the merits of other litigation.  Any such argument by Vizgen, and thus any counter-reference to the 21-cv-653 lawsuit as a meritorious case, are excluded.

Plaintiffs also intends to introduce, via damage expert witness Julie Davis, evidence regarding the jury's determination of a 12.5% royalty for a license in the patent in that case.  Plaintiffs contend that this is relevant in assessing the results of a hypothetical negotiation over a reasonable royalty.  For this purpose, the determination in the other lawsuit has some potential relevance.  *See, e.g., Spring Comm'cns Co. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 981 (Fed. Cir. 2018).  The problem is the collateral effect of introducing another patent infringement jury verdict in favor of one of the parties in this case, specifically, the high potential of confusing and unfairly prejudicing the jury in 10x's favor.  At the pretrial conference on January 27, plaintiffs should be prepared to explain *exactly* how they and Davis intend to introduce evidence regarding the *10x v. NanoString* verdict—as well as what other comparisons Davis relies

upon and will offer to establish a reasonable royalty—so that the Court can assess whether the potential for unfair prejudice and confusion from admission of the jury verdict significantly outweighs the probative value of this particular item of evidence.

B.  **Plaintiffs' motions** *in limine*

   2.  **Third party commentary on litigation**

The Court grants plaintiffs' motion to exclude commentary by non-parties—including a February 2024 article in a publication called *GenomeWeb*—regarding the claimed inappropriateness and adverse effect of litigation generally in this field of research, or this lawsuit in particular.  Vizgen says that "[t]his commentary goes directly to the state of mins of Vizgen's customers (scientific researchers)" and thus shows why they may "shy away from Vizgen."  Def.'s Resp. to Pls.' Mots. In Limine at 2.  That's too much of a stretch:  general commentary by article-writers on the effect of litigation has no probative value regarding the effect of *this* litigation on anyone.  The articles are not relevant, and even if they were arguably relevant their probative value is so tiny that it would be vastly outweighed by the potential for unfair prejudice to plaintiffs that would result from introduction of the evidence.

Vizgen also says that even if this evidence is excluded, "Vizgen's experts are nonetheless able to rely on such statements for their opinions." *Id.* at 2-3.  Wrong.  It's true that an expert may sometimes rely on hearsay, but that's only if "experts in the particular field would reasonably rely on" such evidence "in forming an opinion on the subject."  Fed. R. Evid. 703.  Vizgen has made no effort to establish that predicate, thus forfeiting the point.  In any event, it's one thing for an expert to *rely* on inadmissible evidence, but *disclosing such evidence to the jury* is a different matter.  Before an expert

may do that, the proponent must show that the probative value of the otherwise inadmissible evidence "substantially outweighs [its] prejudicial effect." *Id.* In this situation it does not.

### 3. "Improper connections between 10x's or Harvard's patent prosecution and Vizgen's commercial product"

Plaintiffs ask the Court to preclude evidence or argument "suggesting there was anything improper about 10x and Harvard's lawful patent prosecution actions." Pls.' Mots. In Limine at 4. In denying Harvard's motion for summary judgment on certain of Vizgen's counterclaims, however, the Court found that a particular continuation-in-part patent application by Harvard in July 2020 "is part of the chain of events that would permit a reasonable jury to find that Harvard consciously took actions that had the effect of destroying or injuring Vizgen's rights under its license and did so with a dishonest purpose." Dkt. 641 at 34. The Court thus effectively concluded that this patent application was relevant. A motion *in limine* is not an appropriate occasion for rearguing a point decided on summary judgment. *See, e.g., ART+COM Innovationpool GmbH v. Google Inc.*, No. 1:14-217, 2016 WL 11531119, at *2 (D. Del. May 16, 2016). The Court denies plaintiffs' motion.

### 5. Dr. James Kearl

Vizgen expert Dr. James Kearl offered opinions on counterclaims that have been dismissed—and any opinions relating only to those claims are thus inadmissible—but he also offered opinions that are relevant on counterclaims that have not been dismissed. This includes his opinions regarding harm to Vizgen resulting from Harvard's claimed misconduct—conduct that includes the claims that survived summary judgment, not just the dismissed antitrust claims. Contrary to plaintiffs' argument, the

Court finds persuasive Vizgen's contention that Dr. Kearl's "lost enterprise value" and "lost profits" opinions are relevant and admissible on the remaining counterclaims. For these reasons, plaintiffs' motion to exclude Dr. Kearl's testimony in its entirety lacks merit.

Plaintiffs separately argue that although Dr. Kearl is not offering any liability opinions, he is being used by Vizgen to communicate factual contentions to the jury under the guise of expert opinion. That is a valid concern, but plaintiffs do not identify anything in particular in this regard, aside from an overly-broad and unexplained general reference to forty-eight paragraphs of Dr. Kearl's expert report. It is unlikely, given the time limitations under which the parties are operating, that Vizgen actually intends to use Dr. Kearl this way. To the extent Vizgen *does* attempt to elicit from him the factual basis for his opinion, this is best addressed by specific objections and appropriate limiting instructions to the jury regarding its consideration of the recited basis for Dr. Kearl's opinions.

For these reasons, the Court denies plaintiffs' motion.

### 9. "I don't know"/"I don't remember" testimony by Isaac Kohlberg

The Court denies plaintiffs' motion to exclude in its entirety designated testimony from Isaac Kohlberg, who oversees Harvard's Office of Technology Development, claiming lack of knowledge or recollection on a number of points. Vizgen contends that Kohlberg's testimony in this regard lacks credibility and goes to "his own and Harvard's consciousness of guilt." Def.'s Resp. to Pls.' Mots. In Limine at 19. But "[i]t is well established that a party may not call a witness for the sole purpose of impeaching him." *United States v. Kielar*, 791 F.3d 733, 744–45 (7th Cir. 2015) (internal quotation marks

and citation omitted). Thus the question is whether Kohlberg's denial of recollection or knowledge is relevant for some purpose other than to show he is lying. Vizgen should be prepared to explain this with particularity at the final pretrial conference.

### 10. Argument regarding Vizgen's interpretation of Harvard-NIH contract

Plaintiffs ask the Court to preclude Vizgen "from offering argument concerning the proper interpretation of an alleged contract between the NIH and Harvard." Pls.' Mots. In Limine at 19. Part of plaintiffs' argument, however, is based on its contentions regarding the import of NIH's "[no] further questions" letter, evidence that the Court has excluded. The Court will therefore disregard that argument in assessing plaintiffs' motion.

The Court will need to hear further argument on this motion at the final pretrial conference on January 27.

### C. Various matters from the final pretrial order

#### 1. Gabrielle Behm

In the final pretrial order, filed on January 14, 2025, Vizgen requested leave to take the deposition of Gabriella Behm for purposes of presentation during trial. *See* Proposed Final Pretrial Order at 35. Behm lives in Sweden and is offered by Vizgen on a narrow point: to establish that two particular prior art references were publicly available. Vizgen indicated during a hearing on January 21 that it had anticipated that plaintiffs would stipulate to these references and that it would not need to call Behm, but this did not occur. That, however, is not an excuse for failing to take Behm's deposition when discovery was open; there is no indication of any assurances by plaintiffs *at that time* that they would stipulate about the references. Thus Vizgen should have hedged

10

its bets, as with any other witness who is beyond the Court's subpoena power. Vizgen's failure to do so is not a basis to reopen discovery now. The Court therefore denies Vizgen's request to take a deposition.

The Court concludes, however, that Vizgen has established a sufficient basis under Fed. R. Civ. P. 43(a) to present Behm's testimony by contemporaneous video or audio transmission. This is so because of the narrow and focused nature of her anticipated testimony and the hardship to both Behm and Vizgen in attempting to bring her from Sweden to Delaware for what is likely to amount to 15 minutes of testimony. Vizgen's ability to present Behm's testimony this way will depend, of course, on making appropriate technological arrangements that will permit transmission of Behm's testimony during the regular court day.

### 2. Certain witnesses designated by plaintiffs

Vizgen objects to plaintiffs calling in their case in chief witnesses it contends have, "at absolute most[,] marginal relevance to Plaintiffs' patent infringement claims" and whose testimony is primarily relevant on Vizgen's counterclaims. Final Pretrial Order at 27. It contends that by calling in plaintiffs' case witnesses whose testimony is, at most, marginally relevant on their affirmative claims, plaintiffs are attempting "to prejudice Vizgen's ability to present its case-in-chief for its counterclaims." *Id.* at 27. The witnesses in question are: Jordan Grant, Grant Zimmerman, Melissa Korf, Sam Liss, Isaac Kohlberg, Xiaowei Zhuang, and Sean Kendall, *see id.*, as well as Eric Whitaker and Michael Schnall-Levin.

The Court directed the parties to submit plaintiffs' Rule 26(a)(1) disclosures for these witnesses. For some of them—Zhuang, Kendall, Schnall-Levin—plaintiffs'

disclosures identify topics related to matters on which they bear the burden of proof, as well as matters on which Vizgen bears the burden of proof. Plaintiffs may call these witnesses in their case in chief. The Court, exercising its authority under Federal Rule of Evidence 611 and its commentary, directs that these witnesses, if called live by plaintiffs, will be treated as on the witness stand for all purposes; there will be no restriction on the scope of cross-examination by Vizgen; and all questioning of the witnesses is to be completed during their appearance in plaintiffs' case, except for matters that could not reasonably be anticipated at that time. If plaintiffs present these witnesses' testimony by deposition, Vizgen may (at its option) defer presentation of deposition designations relevant only to its defenses and counterclaims and may offer those in its own case in chief. Plaintiffs are directed to inform Vizgen of their intentions in this regard by January 29 so that the parties have enough time to make and submit appropriate designations and counter-designations.

For other witnesses covered by Vizgen's objection—Grant, Liss, Zimmerman, Whitaker, and Korf—plaintiffs' Rule 26(a)(1) disclosures appear to identify as topics only matters relating to Harvard's licensing practices; the contractual relationship between Harvard and Vizgen; and/or Harvard's NIH grant application. The Court is inclined to conclude that these witnesses' testimony overwhelmingly bears on matters on which Vizgen bears the burden of proof (counterclaims and/or affirmative defenses). If so, the Court likely will preclude plaintiffs from calling these witnesses in their case in chief.[1]

---

[1] If the Court does so, and a Rule 50(a) motion on plaintiffs' claims is made by Vizgen prior to presentation of these witnesses' testimony, plaintiffs should be sure to advise the Court that witnesses have yet to be presented whose testimony may bear on the merits of Vizgen's Rule 50(a) motion.

*See* Fed. R. Evid. 611(a) (court should exercise reasonable control over moder and order of examining witnesses). The Court could not find a Rule 26(a)(1) disclosure by plaintiffs for Kohlberg and infers from this that Kohlberg falls into the same category as these latter witnesses. The Court wants to hear brief, and focused, argument regarding these witnesses during the final pretrial conference on January 27 (including on whether they will be called live or via deposition).

Date: January 27, 2025

_____<br>
MATTHEW F. KENNELLY<br>
United States District Judge