# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>Plaintiffs,<br><br>vs.<br><br>VIZGEN, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 22-cv-595-MFK<br>)<br>)<br>)<br>)<br>) |

## ORDER ON REMAINING MOTIONS IN LIMINE

MATTHEW F. KENNELLY, District Judge:

In this order, the Court rules on the parties' remaining motions *in limine*.

**A.  Plaintiffs' remaining motions**

   **1.  10x litigation with other parties**

The Court grants in part plaintiffs' motion to bar Vizgen from offering evidence regarding other lawsuits by 10x. Vizgen contends evidence about other lawsuits that 10x initiated is relevant to help establish the reasons why Vizgen lost customers—they were afraid of being sued by 10x. But for that purpose, it is sufficient for Vizgen to introduce testimony (assuming it is available) that Vizgen had a *reputation* for litigiousness. Such testimony is relevant and not inadmissible under Federal Rule of Evidence 403. The Court excludes evidence regarding specific lawsuits under Rule 403, as it could lead the jury to speculate regarding the results of particular cases or could end up in a detour into the relative merit or lack of merit of particular cases.

### 4. Evidence and argument regarding Harvard-Vizgen license

Plaintiffs ask the Court to preclude evidence or argument regarding negotiations of the Harvard-Vizgen license, saying that the parol evidence rule precludes such testimony with respect to Vizgen's counterclaim for breach of the implied covenant of good faith and fair dealing with respect to that license. It is correct, as Vizgen points out, that "[t]he very phrase 'implied covenant' . . . contemplates an obligation that is *not* express in the contract." *Classic Restaurant Concepts, LLC v. Pres. and Fellows of Harvard Coll.*, 104 Mass. App. Ct. 323, 331, 238 N.E.3d 777, 786 (2024). It is also the case that neither the existence of a contractual integration clause nor the parol evidence rule precludes enforcement of the implied covenant. *Id.* at 332, 238 N.E.3d at 787. But this does not mean that the assertion of a claim for breach of the implied covenant wipes the parol evidence rule off the table; neither *Classic Restaurant Concepts* nor any other case cited by Vizgen so holds. In short, the good faith/fair dealing claim cannot be used to read into the license, for purposes of that claim, any sort of a *specific promise or representation* that Vizgen may contend Harvard made during negotiations. The covenant of good faith and fair dealing means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," *id.* at 328-29, 238 N.E.3d at 786; it does not work as a crowbar allowing assertion, in an action for breach, of earlier claimed specific promises not included in the integrated contract.

This, however, does not warrant exclusion of this evidence for all purposes. Harvard cites no law supporting the proposition that the parol evidence rule restricts Vizgen's 93A claim, which is based on allegations of deceptive and unfair conduct by

2

Harvard. The Court declines to preclude the negotiation-related testimony as it relates to this claim. And to anticipate an argument by Harvard, the 93A claim *is not* simply a duplicate of the good faith/fair dealing breach of contract claim, nor has the Court previously so held.[1] So the exclusion of the evidence in question as to one of the claims does not bar it with respect to the other. Because Harvard has not persuasively shown that the evidence it references in this motion is inadmissible on the 93A claim, the Court denies the motion to that extent.

6. **Anticipation opinions/argument based on "incorporation by reference"**

Plaintiffs ask the Court to preclude anticipation opinion testimony and argument based on: (a) the Larsson dissertation incorporating by reference the Goransson 2009 article, and (b) the Gunderson 2004 article incorporating by reference the Levsky 2002 article. The standard for incorporation by reference, for purposes of an anticipation defense, is "whether one reasonably skilled in the art would understand the [host document] as describing with sufficient particularity the material to be incorporated." *Harari v. Lee*, 656 F.3d 1331, 1334 (Fed. Cir. 2011). But "a single footnote reference, without more, cannot support a finding of incorporation by reference." *Baxalta Inc. v. Bayer Healthcare LLC*, 513 F. Supp. 3d 426, 446 (D. Del. 2021). Incorporation by reference is considered by the Federal Circuit to be a question of law for a court to decide. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1283 (Fed. Cir.

---

[1] In ruling on summary judgment, the Court stated that the 93A claim "essentially tracks" the good faith/fair dealing claim *and* its tortious interference claim, *see* Dkt. 641 at 37, but the Court was describing the factual underpinnings of the claims, not their respective legal bases. They are distinct types of legal claims with distinct required elements.

3

2000).

The Gunderson reference states, "Finally, fluorescence in situ hybridization (FISH), a powerful class of methods with many applications, could be applied to 1000s of genes simultaneously.  To illustrate, FISH with combinatorially labeled oligonucleotide probes has been used to measure transcription from 10 genes in a single cell (Levsky et al. 2002)."  Pls.' Mots. In Limine, Ex. 14 at 875.  This, in the Court's view, does not identify *specific material* from the Levsky reference that is being incorporated into the primary Gunderson reference.  It's the equivalent of a bare footnote—though that article did not use footnotes as such, but rather parenthetical citations in the text as just quoted.  The Court precludes any "incorporated by reference" testimony or argument concerning this reference.

The Court reaches the opposite conclusion regarding the Larsson reference. *See* Pls.' Ex. 12.  Larsson discusses the Goransson reference in three passages.  Vizgen's expert witness Dr. Michael Metzker, has opined that a person of reasonable skill in the art would have understood Larsson to incorporate specific teachings from the Goransson reference.  The Court declines to preclude this testimony.

### 10. Vizgen's "interpretations of alleged contract between Harvard and NIH"

In its motion *in limine* 10, Harvard asks the Court to preclude Vizgen "from offering argument concerning the proper interpretation of an alleged contract between NIH and Harvard."  It focuses on what it believes to be Vizgen's contention that "this alleged contract included a promise by Harvard not to exclusively license patents that arose from the grant funding—despite no express language to that effect in the grant application."  Pls.' Mots. In Limine at 19.  At the final pretrial conference, the Court

4

asked what particular evidence Harvard believed Vizgen was offering that would run afoul of this, and Vizgen's counsel was unable to identify anything other than a handful of "assumptions" used as the underpinnings for aspects of defense expert Dr. Kearl's opinion testimony. The Court partially granted this motion—excluding Vizgen from introducing those assumptions—but otherwise deferred it to objections at trial. The Court did this largely because Harvard could not identify any other particular evidence it was targeting with this motion.

The Court has reconsidered this deferred based on its further review of Vizgen's motion *in limine* 9, in which Vizgen asks to exclude evidence and argument on the Bayh-Dole Act. It appears from Harvard's response to the motion that its justification for offering such testimony is to attempt to rebut what it calls "Vizgen's novel claim that Harvard and NIH formed a contract that barred Harvard from exclusively licensing any patents derived from research funded by the NIH grant." Pls.' Resp. to Def.'s Mots. In Limine at 15-16. In short, Vizgen motion *in limine* 9 is tied directly to the "Harvard-NIH contract" issue at issue in plaintiffs' motion *in limine* 10. The Court has thus reconsidered and will address the remainder of plaintiffs' motion 10.

Harvard suggests in its motion that the Court has already ruled on this issue. It says that "[a]s this Court has already recognized, interpretations by non-parties to an agreement should not control. *See* D.I. 641 at 10 . . . ." Pls.' Mots. In Limine at 20 (remainder of citation omitted). That is a bit misleading. The Court's comments—in its summary judgment ruling—did not involve the Harvard-NIH arrangement at all, but rather a term in 10x's license with Harvard. *See* Dkt. 641 at 9-10. And the issue the Court was addressing there did not concern Vizgen's counterclaims, but rather the

5

availability of lost profits damages on a particular aspect of plaintiffs' patent infringement claims.  There's a bit more to it than that, but suffice it to say that contrary to Harvard's suggestion, the Court has not yet ruled on the issue presented in plaintiffs' motion 10.

The Court *did* deal with the Harvard-NIH arrangement much earlier, in addressing plaintiffs' motion to dismiss a counterclaim by Vizgen.  The particular counterclaim alleged breach of what Vizgen contended was a contract between Harvard and NIH to offer open and non-exclusive licensing arrangements for the innovations the particular NIH grant funded, which include the Church patents at issue in this case.  *See 10x Genomics, Inc. v. Vizgen, Inc.*, 681 F. Supp. 3d 252, 261 (D. Del. 2023).  The plaintiffs contended that the Harvard-NIH arrangement was not a contract at all, but the Court concluded, after extended discussion, that Vizgen had adequately alleged, for purposes of a Rule 12(b)(6) motion, the existence of a contract.  *See id.* at 263.  The Court nonetheless dismissed Vizgen's breach of contract claim, finding that as a matter of law, Vizgen could not be considered a third-party beneficiary entitled to enforce the claimed Harvard-NIH contract in an action for breach.  *See id.* at 265.  The Court did not say anywhere in that ruling, however, that Vizgen's understanding of the Harvard-NIH arrangement was out of bounds in the case generally; the issue was not raised.

The question remains whether Vizgen's contention regarding the import of the Harvard-NIH arrangement is relevant regarding its remaining counterclaims, specifically its claim for breach of Harvard's duty of good faith and fair dealing arising from Harvard's agreement(s) with Vizgen, or its claim under Massachusetts General Laws chapter 93A.  Vizgen says, in response to Harvard's motion *in limine*, that its 93A claim "is not premised on the existence of [a] breach of any contract with the NIH."  Def.'s

6

Resp. to Pls.' Mots. In Limine at 20. But it does contend that Harvard's allegedly unfair and deceptive conduct violative of 93A, and it includes the alleged NIH undertaking in this summary of that claim:

> Vizgen allege[s] Harvard acted in an unfair or deceptive way *by inducing the NIH to award $20M expressly conditioned on commitments regarding non-exclusive and open licensing; exclusively licensing the resulting Church Patents to Church's own company and making no effort to license the patents nonexclusively*; concealing the licensing commitments for years by publishing and submitting a truncated version of the grant to the PTO; refusing to offer Vizgen a non-exclusive license to the Church Patents despite an express request from Vizgen once it discovered Harvard's representations; and all the while enabling 10x to assert the exclusively licensed Church Patents against Vizgen, to try to eliminate Vizgen from the market, and to nullify any value of the IP Vizgen licensed from Harvard.

*Id.* (emphasis added). The Court is not persuaded at this point that Vizgen's contentions regarding the import of Harvard's claimed "commitments" to NIH are irrelevant or otherwise inadmissible on the 93A claim, so it denies that aspect of plaintiffs' motion 10. That said, because it is likely that this will come up only in argument, not via any evidence that Vizgen is introducing, Harvard may renew its motion in advance of closing argument if it wants.

**B.    Defendant's remaining motions**

    **8.    10x v. NanoString lawsuit**

The one piece of Vizgen's motion *in limine* 8 that remains under advisement concerns plaintiffs' damages expert Julie Davis's reliance on the jury's finding of a 12.5 percent royalty rate for different patents that were at issue in *10x Genomics v. NanoString*, Case No. 21-cv-653 (D. Del.). The parties' argument on the present motion clarified that this testimony is offered as one piece of Davis's analysis and largely as a confirmatory support for the rate otherwise reached via her "hypothetical negotiation"

7

analysis. The Court excludes reference to the jury's determination in the previous lawsuit. It has some probative value, but as a confirmatory support (and not a primary data point in assessing the hypothetical negotiation) its probative value is relatively modest. And this would be significantly outweighed by the risk of unfair prejudice resulting from the jury learning that another jury in this case found in 10x's favor in a patent infringement suit involving another patent in the same field.

### 9. Bayh-Dole Act

Vizgen asks the Court to preclude any testimony regarding the Bayh-Dole Act, 35 U.S.C. § 201 *et seq.*, the determination of exceptional circumstances (DEC) under the Act, or march-in rights under the Act. Harvard says that testimony regarding the Act "is directly relevant to Vizgen's novel claim that Harvard and NIH formed a contract that barred Harvard from exclusively licensing any patents derived from research funded by the NIH grant." Pls.' Resp. to Def.'s Mots. In Limine at 15-16. That takes the Court back to plaintiffs' motion *in limine* 10, discussed earlier, in which Harvard asked the Court to preclude Vizgen from contending that Harvard had made any such commitment to NIH. The Court has now denied that motion. Bringing things forward to Vizgen's motion 9, Vizgen is asking the Court to preclude Harvard from offering testimony that the law governing its NIH grant did not, in fact, preclude it from making an exclusive license deal with 10x, and that this informed how Harvard proceeded vis-à-vis 10x.

In this regard, it's only fair to conclude that Vizgen's expressed intention to offer evidence and argument that Harvard's NIH grant was expressly (or even impliedly) conditioned on a commitment to non-exclusive licensing—if Vizgen carries through on that—enables (opens the door, in effect) Harvard to offer evidence showing that's not

8

what it did at all. And part of this, from Harvard's perspective, involves the Bayh-Dole Act. Thus unless Vizgen commits not to introduce evidence or argument regarding the purported commitment by Harvard to NIH, there is no viable basis for the blanket exclusion of Bayh-Dole evidence that Vizgen seeks.

That, however, does not mean that anything goes. Harvard may offer evidence from fact witnesses regarding its *contemporaneous understanding* of the import of the Bayh-Dole Act as it bears on Harvard's actions at the relevant time (i.e., up to and including the time that it entered into the exclusive license with 10x). Harvard's counsel indicated during the final pretrial conference that it will offer testimony to this effect, though perhaps from a "habit and practice" perspective as opposed to testimony focused on this particular license. The Court concludes this sort of evidence is relevant given the nature of Vizgen's counterclaim and denies Vizgen's motion *in limine* 9 to that extent.

But the primary focus of Vizgen's motion *in limine* involves expert witness testimony from Rebecca Eisenberg, a law professor. In broad terms, Eisenberg is being presented to testify regarding the Bayh-Dole Act and how it works in practice; how it affected or would have affected Harvard's and/or NIH's understanding at the time; and how Harvard's undertaking vis-à-vis NIH should be interpreted, and/or how Harvard and the NIH understood (or likely understood) it.

Vizgen argues this testimony is inadmissible because, among other reasons, it is inappropriate for an expert witness to testify regarding matters of law. But as the Court has said elsewhere, "[t]here is no *per se* rule barring expert testimony on matters of law." Specifically, when a matter to be decided by the jury involves a highly complex

9

field of regulation, a jury may reasonably require assistance to understand it. *See In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2017 WL 1836443, at *15 (N.D. Ill. May 8, 2017).

The Court has reviewed Eisenberg's 70-page report in its entirety. Her testimony regarding how the Bayh-Dole Act impacts NIH grants and grantees, including with regard to DECs and march-in rights, is relevant and properly admissible under the standard just referenced. But this is dependent on Harvard first laying a foundation that the impact (or its understanding of the impact) of the Bayh-Dole Act *actually affected* its conduct that is challenged in this case—even if that testimony is habit and practice testimony as previously discussed. That foundation will have to be laid—either via witness testimony or an offer of proof outside the jury's presence—before Eisenberg may testify about the Bayh-Dole Act.

At a number of junctures in her report, Eisenberg offers opinions or conclusions about what Harvard, NIH, or others would have understood about the impact of the Bayh-Dole Act. The Court precludes all such testimony by Eisenberg. It is tantamount to an opinion regarding someone else's intent or state of mind, which is inappropriate. *See, e.g., In re Rosuvastatin Calcium Pat. Litig.*, MDL No. 08-4909, 2009 WL 4800702, at *8 (D. Del. Dec. 11, 2009) (Stark, J.). And even if somehow relevant, the evidence extremely unfairly prejudicial and would be inadmissible under Federal Rule of Evidence 403. The same is true regarding Eisenberg's attempt, at various junctures in her report, to render opinions on what Harvard and/or NIH would have understood regarding the undertakings in Harvard's grant application or regarding NIH's award of the grant. These subjects are out of bounds.

The Court trusts that this provides plaintiffs' counsel with sufficient guidance regarding what is permitted and what is precluded in Eisenberg's testimony; the Court is not going to make a paragraph-by-paragraph ruling regarding her 70-page report. If counsel have any questions or require clarification, they should raise it outside the jury's presence during trial before Eisenberg is called to testify.

Date: January 30, 2025

                                                                                              _____
                                                                                               MATTHEW F. KENNELLY
                                                                                               United States District Judge