# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Plaintiffs,<br><br>    v.<br><br>VIZGEN, INC.,<br><br>    Defendant. | C.A. No. 22-cv-595-MFK<br><br>**PUBLIC VERSION** |

**PLAINTIFFS' CLAIM CONSTRUCTION POSITION STATEMENT**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. THE CLAIMED INVENTION............................................................................................ 2

III. THE ORDINARY MEANING OF THE CLAIMS INCLUDES "IN SITU" DETECTION ........................................................................................................................ 3

IV. BOTH PARTIES' EXPERTS HAVE OPINED THAT THE CLAIMS REQUIRE *IN SITU* DETECTION................................................................................................................ 4

V. BOTH PARTIES' EXPERTS HAVE OPINED THAT THE CLAIMS REQUIRE MULTIPLEXING ................................................................................................................ 5

I.     **INTRODUCTION**

On the eve of trial, after being denied summary judgment for no invalidity, Vizgen claims that Plaintiffs' expert, Dr. Rahul Satija, applied new claim constructions that add requirements to the claims of "*in situ*" detection and "multiplexing." But there is no dispute that both parties' experts have opined consistently that the claims do relate to increasing multiplexing capabilities of *in situ* assays (*see, e.g.*, 051 Patent at 19:56-20:1 63:56-57; Metzker Rpt. (Ex. 1), ¶¶ 210-11, 252, 910, 912, 931-32, 933-34; Satija Rpt. (Ex. 2), ¶¶ 56, 59-64, 133-34, 284). Vizgen itself has based its invalidity case around the contention that the claims require *in situ* detection (and are allegedly not described or enabled for that reason) and that the prior art contained a motivation to combine the claimed concepts of *in situ* detection and multiplexing as the basis for obviousness. Both sides' experts have used the shorthand of "*in situ*" and "multiplexing" in reference to the claims because the claims contain these concepts.

However, these are concepts that emerge from the plain language of the claims, and there is no reason to depart from the ordinary meaning. The claims are clear on what they require: a temporal detection method that occurs by delivering reagents to the cell or tissue sample and is used to identify an analyte(s) of the cell or tissue sample and its spatial location in the sample. The claims are thus directed to an *in situ* method—the steps are performed "in" a cell or tissue sample, and the result is determining a location in that sample. The claims are also directed to multiplexing capabilities (through the claimed temporal detection, which builds a code usable to distinguish many analytes from each other) while many of the claims can be met through detection of a singular analyte in an assay. At the same time, claims that require detection of a "plurality of analytes" also require multiplexed detection to show infringement. The claims should be given their ordinary meaning to the extent not already construed, and the experts should be permitted to summarize the relevant concepts without changing the meaning of the claims.

## II. THE CLAIMED INVENTION

The Asserted Patents are directed to methods of *in situ* multiplex analyte detection where analytes are detected based upon a temporal order of signal signatures. 051 Patent, 3:62-4:1; 9:25-30; 20:44-54. The methods are based on the use of a novel detection reagent that allows for temporal detection cycles, where the consecutive cycles produce a temporal sequence. The temporal sequence serves as a barcode that can identify a target analyte at a specific location within the sample. *Id.*, 3:62-4:55; 10:44-12:7; 19:48-20:53; 70:16-76:24; 79:60-82:54.

The patent specification explains that its goal was to "significantly increase the number of different probes (and corresponding analytes) that can be simultaneously detected in a multiplex assay, as compared to an traditional assay where each probe is labeled with only fluorescent labels or quantum dots, and thus multiplexing is limited by the number of available and practically usable colors." 051 Patent, 19:56-62; *see id.*, 63:56-57 ("As with other fluorescence-based techniques, FISH is limited to the number of colors available to the microscopy."). The temporal barcode enables the increase in plexy: "because the detection reagents described herein are detected and/or imaged in a temporal series of steps, the number of probes (and corresponding analytes) that can be detected in a multiplex assay grows multiplicatively with the number of detection steps in a time series." 051 Patent, 19:62-20:1; *see id.* 37:37-67.

The parties agree that the problem the patents solved using temporal detection was increasing plexy of *in situ* assays. *See, e.g.*, Metzker Rpt. (Ex. 1), ¶ 252 ("The state of the art at the time of filing, provided motivation to the skilled artisan by both identifying the problem (multiplexing) and suggesting a solution (decoding algorithms)."); *id.*, ¶ 910 (emphasis added):

> As the specification describes, the Asserted Claims of the TOSS Patents relate to "the development of a multiplexed biological assay and readout, in which a multitude of detection reagents comprising one or more probes and/or probe types are applied to a sample, allowing the detection reagents to bind target molecules or analytes, which can then be optically identified in a temporally-sequential manner."

2

In particular, the TOSS Patents relate to methods of analyzing the identity and spatial location of analytes *in situ*.

## III. THE ORDINARY MEANING OF THE CLAIMS INCLUDES "IN SITU" DETECTION

The claims cover "*in situ*" detection without further construction in the sense that the assay is performed "in place," in the sample itself. That concept is clear from the ordinary meaning of multiple parts of the claim. For example, claims require "a cell or tissue sample," recite multiple operations on the sample itself, and end with identifying a location <u>in the sample</u>. Claim 24 of the 737 patent is representative:

> 24. A method for biological analysis, comprising:
>
> (a) providing a cell or tissue sample, wherein said cell or tissue sample comprises an analyte at a location of said cell or tissue sample;
>
> (b) binding a detection reagent to said analyte at said location; wherein said detection reagent comprises (i) a probe that binds to said analyte and (ii) one or more pre-determined subsequences;
>
> (c) detecting a temporal order of signal signatures at said location, wherein said temporal order of signal signatures is associated with said one or more pre-determined subsequences; and
>
> (d) using said temporal order of signal signatures to identify said location of said analyte in said cell or tissue sample.

The "cell or tissue sample" language does not require construction. The surrounding claim language does not limit the types of cell or tissue sample but does describe that the sample contains the analyte, that the reagents will be delivered to the sample, and a temporal order will be detected at a location in the sample, and the temporal will be used to identify the analyte and its location.

Cell and tissue samples are described broadly in the patents. *See, e.g.*, 051 Patent at 4:23-26, 21:49-67, 22:1-6; 34:60-35:14; 60:49-50. The specification describes that "[t]he term 'cells' used herein refers to any cell, prokaryotic or eukaryotic, including plant, yeast, worm, insect and mammalian." *Id.* at 34:60-62. The specification provides "a sample can comprise one or more cells,

3

one or more tissues, one or more fluids, or any combinations thereof. In some embodiments, the sample can comprise a tissue sample." *Id.* at 4:23-25. The specification describes that "[s]amples can be either paraffin-embedded or frozen tissue." *Id.* at 60:49-52. The specification also describes preprocessing techniques to be performed on a cell or tissue sample prior to contacting the sample with detection reagents. *See, e.g.*, 051 Patent, at 4:56-59 ("[T]he method can further comprise processing the sample before contacting with the plurality of detection reagents."); *id.* at 4:15-26, 21:49-67, 22:1-6, 34:60-35:14, 60:49-50.

### IV. BOTH PARTIES' EXPERTS HAVE OPINED THAT THE CLAIMS REQUIRE *IN SITU* DETECTION

Both Vizgen and Dr. Metzker previously agreed the claimed detection in a cell or tissue sample is *in situ* detection (as opposed to methods that require steps to be performed off of the sample). *See, e.g.*, Metzker Rpt. (Ex. 1), ¶ 303, "*in situ* (*i.e.*, in a cell or tissue sample);" *see id.*, ¶¶ 348, 568; 3/11/2024 Vizgen Invalidity Contentions (Ex. 3) at 54, 65. Vizgen and Dr. Metzker have used these phrases repeatedly, including for its own affirmative arguments of motivation. *See, e.g.*, Metzker Rpt. (Ex. 1), ¶ 210 ("In addition, a POSA would consider the transfer of the Goransson (2009) detection methods to an *in situ* environment as the next logical and common sense step after the successful application of an *in vitro* multiplex method for the detection of ASMs."). Vizgen has also contended that the Asserted Patents are invalid for failing to describe or enable *in situ* and multiplex detection. *See, e.g.*, ¶¶ 931-932 (lack of written description for performing the method in a cell or tissue sample because "no other disclosures, including by way of examples or figure, in the specification for practicing the entire claimed methods in situ. . . . This description is insufficient to show possession of in situ implementation"); *id.* at ¶¶ 933-934 (no written description because "[w]hile prior art techniques relating to **in situ** applications such as FISH may render obvious the claimed methods, there is no disclosure in the specification of the

4

invention with all the claimed elements. The lack of disclosure of the claimed methods *in situ* is further supported by the inventor testimony."); *id.*, ¶ 912 (claims not enabled because "the specification lacks . . . any working example of the claimed invention performed in situ to detect nucleic acids.").

Dr. Satija responded in kind in response to those arguments, including why a POSA would not be motivated to combine in situ art with multiplexing (non-in situ) art. Satija Rpt. (Ex. 2), ¶¶ 343-371. In response to Dr. Metzker's lack of enablement argument regarding no working example of an *in situ* experiment, Dr. Satija opined that: "A POSA would not agree with Dr. Metzker's conclusion that an *in situ* experiment requires a probe reagent to enter an individual cell. Instead, a POSA would understand that the phrase 'in a cell or tissue sample' requires the *in situ* analysis to be performed within a group of cells or a piece of biological tissue." Satija Rpt. (Ex. 2), ¶ 267.

Vizgen has even moved for summary judgment for lack of enablement relying on Example 1 not being an *in situ* experiment[1]. *See* D.I. 559 at 8. *See also id.* at 5 (asserted patents are invalid for "failing to disclose in situ, multiplexed detection of the full range of analytes").

## V. BOTH PARTIES' EXPERTS HAVE OPINED THAT THE CLAIMS REQUIRE MULTIPLEXING

The Court has also requested the parties' positions as to whether the claims require "multiplexing." "Multiplexing" is detecting multiple analytes at the same time with plexy being the number of analytes to be detected. Both parties have agreed that the claims require multiplexing. For example, Dr. Metzker has relied on the multiplexing requirement for his obviousness and lack of enablement opinions:

---

[1] Plaintiffs disagree that Example 1 is not a working example of the claimed invention, including because the plain claim language requires the claimed detection method is performed in a sample, not inside a cell. Plaintiffs contend this issue be reserved for trial.

5

> Moreover, the same rationales provided for the combination of the Larsson Dissertation (incorporating Larsson (2004))) and Göransson 2009, applies equally to the combination of the Göransson Dissertation (incorporating the Göransson 2009 paper) and the Larsson Papers. ***The state of the art at the time of filing, provided motivation to the skilled artisan by both identifying the problem (multiplexing) and suggesting a solution (decoding algorithms).*** As detailed *supra*, that motivation includes: a) the ISH and IHC techniques were well established in 2011 (and as detailed in Section IV); b) the field was moving in the direction of single mRNA molecule ***detection in situ providing motivation for multiplexing*** (and building on RNASeq and array based technologies doing the same without the context of the cell architecture) along with a general consensus in the art that there was a need and a desire for imaging techniques to ***expand the number of targets*** identified in one cell. . .

Metzker Rpt. (Ex. 1), ¶ 252.

> The TOSS Patents Asserted Claims also are not enabled because the Common Specification fails to teach high multiplexed detection of analytes in a cell or tissue sample, including at the level achieved by Vizgen's MERSCOPE® platform as accused by 10x.

D.I. 559 (Vizgen's Summary Judgment Motion) at 8.

This is of no surprise because the patents explain that its goal was to "significantly increase the number of different probes (and corresponding analytes) that can be simultaneously detected in a multiplex assay, as compared to an traditional assay where each probe is labeled with only fluorescent labels or quantum dots, and thus multiplexing is limited by the number of available and practically usable colors." 051 Patent, 19:56-62. This is achieved through the temporal order detection method. *See, e.g.*, 051 Patent, 70:31-38 ("detecting in a temporally-sequential manner said plurality of the pre-determined subsequences of said detection reagents, wherein said detection of the subsequences each generates a signal signature corresponding to said subsequence, and wherein a temporal order of the signal signatures corresponding to said plurality of the subsequences of said detection reagent identifies a subpopulation of the detection reagents."). There is no dispute that the temporal order detection (along with the detection reagent and its use in the temporal detection method) is the inventive aspect that allows for the increase in plexy. The

6

patent explains that "because the detection reagents described herein are detected and/or imaged in a temporal series of steps, the number of probes (and corresponding analytes) that can be detected in a multiplex assay grows multiplicatively with the number of detection steps in a time series and the number of optical labels being used." 051 Patent, 19:62-20:1.

Vizgen now seems to dispute that the claims that recite detection of "an analyte" as opposed to a "plurality of analytes") do not require multiplexing.[2] While the claims that recite "an analyte" (claim 47 (737), claim 35 (052 Patent) and claim 7 (136 Patent)[3]) do not require multiple analytes to be detected to infringe the claims, a POSA reading the claims in light of the specification would understand that analyte is detected in a multiplex assay. A POSA would understand that when the claims include the term "temporal order," the temporal order is providing multiplex capabilities as described above. *See, e.g.*, 051 Patent, at 19:56-20:3, 37:37-67.

If the Court finds that the claims do not require "*in situ*" or "multiplexing," then that puts into question the experts' opinions related to at least all of the issues identified above, including lack of written description for the claimed method to be performed in a cell or tissue sample, lack of enablement arguments, and motivation to combine for obviousness.

---

[2] Claim 85 of the 051 Patent requires an assay where at least 50 different detection reagents (with at least 20 detection reagents each in the first and second cycles) are used to detect a plurality of analytes, which Plaintiffs understand Vizgen is not disputing is multiplex analysis.
[3] Claim 7 of the 136 Patent does not recite "temporal order" but instead describes a combinatorial detection method through the use of multiple detection reagents, and it is those detection reagents with the multiple pre-determined subsequences that enable the temporal barcode and multiplexing.

7

Respectfully Submitted,

| | |
|---|---|
| *Of Counsel:*<br>TENSEGRITY LAW GROUP LLP<br><br>Matthew D. Powers<br>Paul Ehrlich<br>William P. Nelson<br>Stefani Smith<br>Robert Gerrity<br>Li Shen<br>555 Twin Dolphin Drive<br>Suite 650<br>Redwood Shores, CA 94065<br>Tel: (650) 802-6000<br><br>Azra M. Hadzimehmedovic<br>Aaron M. Nathan<br>Samantha A. Jameson<br>Ronald J. Pabis<br>Kiley White<br>Joanna R. Schacter<br>Parshad K. Brahmbhatt<br>Grace Gretes<br>1676 International Drive<br>Suite 910<br>McLean, VA 22102-3848<br>Tel: (650) 802-6000<br><br>10x_Vizgen_Service@tensegritylawgroup.com<br><br>LATHAM & WATKINS LLP<br>Marguerite M. Sullivan<br>Christopher John Brown<br>Brian Barrows Goodell<br>Sahdia Khan<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C. 20004<br>(202) 637-2200<br>marguerite.sullivan@lw.com<br>chris.brown@lw.com<br>brian.goodell@lw.com<br>sahdia.khan@lw.com | RICHARDS, LAYTON & FINGER, P.A.<br><br>*/s/ Jason J. Rawnsley*<br>Frederick L. Cottrell, III (#2555)<br>Jason J. Rawnsley (#5379)<br>Alexandra M. Ewing (#6407)<br>Gabriela Z. Monasterio (#7240)<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>cottrell@rlf.com<br>rawnsley@rlf.com<br>ewing@rlf.com<br>monasterio@rlf.com<br><br>*Attorneys for 10x Genomics* |

Kelly Fayne
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
kelly.fayne@lw.com

*Of Counsel*:

| | |
|---|---|
| Michael J. Tuteur | MORRIS JAMES LLP |
| Ruben J. Rodrigues | |
| Geoffrey M. Raux | */s/ Kenneth L. Dorsney* |
| Lea Gulotta James | Kenneth L. Dorsney (#3726) |
| Lucas I. Silva | Cortlan S. Hitch (#6720) |
| Amani S. Kmeid | 500 Delaware Ave., Suite 1500 |
| James W. Matthews | Wilmington, DE 19801-1494 |
| FOLEY & LARDNER LLP | (302) 888-6800 |
| 111 Huntington Avenue | kdorsney@morrisjames.com |
| Boston, MA 02199 | chitch@morrisjames.com |
| (617) 502-3284 | |
| | *Attorneys for President and Fellows of Harvard College* |

Sarah E. Rieger
Kate E. Gehl
Ian T. Hampton
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 271-2400

Jarren N. Ginsburg
Alan D. Rutenberg
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 295-4071

Jared J. Braithwaite, Esq.
Maren Laurence, Esq.
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, Utah 84111
(801) 401-8920

Andrew M. Gross, Esq.
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000

9

Chicago, IL 60654
(312) 832-4532

BOST-F-10Xv.Vizgen@foley.com

Dated: January 24, 2025