# EXHIBIT 1

```
                                                                          1

  1                  IN THE UNITED STATES DISTRICT COURT
                        DISTRICT OF DELAWARE (WILMINGTON)
  2

  3
      10X GENOMICS, INC., et al.,         )  Docket No. 22 C 595
  4                                        )
                          Plaintiffs,      )
  5                                        )
                    vs.                    )  Chicago, Illinois
  6                                        )  October 18, 2024
      VIZGEN, INC.,                        )  8:30 o'clock a.m.
  7                                        )
                          Defendant.       )
  8

  9                       TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE MATTHEW F. KENNELLY
 10

 11   APPEARANCES:

 12
      For the Plaintiffs:    TENSEGRITY LAW GROUP LLP
 13                          BY:  MR. PAUL EHRLICH
                             555 Twin Dolphin Drive, Suite 650
 14                          Redwood Shores, CA   94065
                             (650) 802-6000
 15

 16
                             RICHARDS LAYTON & FINGER
 17                          BY:  MR. JASON J. RAWNSLEY
                             One Rodney Square
 18                          920 North King Street
                             Wilmington, DE   19801
 19                          (302) 651-7700

 20

 21

 22

 23   Court Reporter:        MS. CAROLYN R. COX, RPR, CRR, FCRR
                             Official Court Reporter
 24                          219 S. Dearborn Street, Suite 2102
                             Chicago, Illinois   60604
 25                          (312) 435-5639
```

## Page 2

```
APPEARANCES CONTINUED:

For the President
and Fellows of
Harvard College:     FOLEY & LARDNER, LLP
                     BY:  MR. MICHAEL J. TUTEUR
                     111 Huntington Avenue, Suite 2500
                     Boston, MA 02199
                     (617) 342-4000

                     MORRIS JAMES
                     BY:  MR. CORTLAN S. HITCH
                     500 Delaware Avenue, Suite 1500
                     Wilmington, DE 19801
                     (302) 888-6800

For Defendant
Vizgen, Inc.:        QUINN EMANUEL
                     BY:  MR. BRIAN C. CANNON
                     555 Twin Dolphin Dr., 5th Floor
                     Redwood Shores, California 94065
                     (650) 801-5000

                     QUINN EMANUEL
                     BY:  MR. ANDREW TIGCHELAAR
                     51 Madison Avenue, 22nd Floor,
                     New York, New York 10010
                     (212) 849-7000

                     YOUNG, CONAWAY, STARGATT & TAYLOR LLP
                     BY:  MS. JENNIFER P. SIEW
                          MS. PILAR KRAMAN
                     Rodney Square
                     1000 North King Street
                     Wilmington, DE  19801
                     (302) 576-3586
```

## Page 3

(The following proceedings were had telephonically:)

THE CLERK:  Case 22 C 595, 10X Genomics v. Vizgen.

THE COURT:  All right.  I know this is pretty much the same people, but we're going to go through the names again just so it's clear on the record for this case.

So starting off with counsel for 10X.

MR. EHRLICH:  Good morning, your Honor.  Paul Ehrlich from Tensegrity Law Group for 10X.  And, again, I have Jason Rawnsley from Richards Layton.

THE COURT:  Thanks.

Counsel for Harvard.

MR. HITCH:  Good morning, your Honor.  It's Cortlan Hitch from Morris James, and I have with me Ruben Rodrigues from Foley & Lardner.

THE COURT:  Thanks.

And last but not least, counsel for Vizgen.

MS. SIEW:  Good morning, your Honor.  On behalf of Vizgen, this is Jennifer Siew from Young Conaway.  With me, I also have Pilar Kraman from Young Conaway, Brian Cannon from Quinn Emanuel, who will be speaking today, and Andrew Tigchelaar also from Quinn Emanuel.

THE COURT:  Okay.  So on this one, I have a couple of questions.  And so just when you're talking, just make sure you say who you are at the beginning so the court reporter can get it down.

## Page 4

So to start off with, my main questions, I think, are for Vizgen.  And this -- just to be clear for the record, this concerns a motion to strike the expert report of a gentleman by the name of Russell -- I assume it's pronounced Slifer, S-l-i-f-e-r, and he's been -- the 26(a)(2) disclosures made by Vizgen relating to Mr. Slifer.

So on page 3 of your letter, which is docket number 526, I'm going to read a couple of sentences here.  I don't think any of this is particularly confidential.  Mr. Slifer -- it's the second full paragraph.  It's the paragraph that's entitled Mr. Slifer's Report is Appropriate Rebuttal:  Mr. Slifer's report does respond to plaintiffs' opening reports; in particular, plaintiffs' expert, Dr. Quackenbush's, infringement opinions, which interpreted the patent claims to encompass the combined subject matter of the two patent families in its CIP.  And CIP stands for continuation in part.  The breadth of the infringement theory leads to the rebuttal.  The early filing dates do not support such breadth.

Okay.  So what I need you to do, and I need you -- I'm not going -- I need you to -- this is the patent law for dummies explanation that you're going to give here -- I need you to explain how Mr. Slifer's report rebuts what you say it rebuts.

Go ahead.

## Page 5

MR. CANNON:  Thank you.  Brian Cannon for Vizgen, your Honor.  So the issue here is the CIP application, which was filed July 29th, 2020.  And what a CIP is is it adds new subject matter.

So what happened, and this is laid out in our very first pleading, the very first counterclaim, is there were two separate patent applications that Harvard filed, one in 2011, and we call those the TOSS patents or the seek tag approach patents, and the other completely separate patent application was filed in 2013, and we call that the 3-D matrix application.

So those two patent applications were proceeding in the Patent Office, and then in July 2020, a very unusual event happened.  Harvard combined those two patent applications into a single combination application.  And then four of the patents-in-suit arose from that kind of combination application, and that implicates a lot of particular issues because -- and that's laid out early in our pleading.

So the reason that it is a rebuttal based upon the paragraph that your Honor read is that until you see the scope of the claims, the actual infringement report from Dr. Quackenbush, who is the infringement expert for Harvard and 10X, the scope of the claim combines elements from the two separate patent applications.

So it's like as if you have to combine the 3-D matrix

6

1  application from 2013 with the T-O-S-S, the TOSS application,
2  from 2011 in order to cover what Vizgen's product -- Vizgen's
3  product is called MERFISH.  In order to cover MERFISH, you
4  have to pull material from both of those early separate
5  applications to cover MERFISH.  And that is why in one sense
6  once you see the actual final infringement report, then to
7  rebut that, you say, no, that can't be right because MERFISH
8  was actually -- actually preceded the date that those two
9  separate applications were combined.
10          So MERFISH was published and offered for sale took
11 place before July 29, 2020.  And so the actual infringement
12 allegation, if the priority date failed, the infringement
13 allegation invalidates their own patent.
14          Does that make sense, your Honor, or would you like
15 more detail?
16          THE COURT:  No, I get that.  No, that's actually
17 quite helpful.
18          And so what is it that Mr. Slifer says that addresses
19 those points that you've just identified?  Again, you can give
20 me kind of the executive summary -- the executive summary.
21          MR. CANNON:  Sure thing.  So Mr. Slifer, who was a
22 preceding guy at the Patent Office, he was a deputy director
23 at the Patent Office, he walks through what is honestly a
24 fairly complicated set of procedures that Harvard -- that
25 Harvard did in the Patent Office, and he explains why -- what

7

1  a CIP is and why -- and that this was an unusual and material
2  change to the patent prosecution strategy to combine it.
3          But I will say it has to be combined with the
4  technical report, the technical rebuttal report, we put in
5  from our technical expert, Dr. Metzger (phonetic), who
6  explained the technical content of the separate -- the
7  separate -- the separate application and then compares them to
8  the combination application and then compares that to the
9  infringement allegations of Dr. Quackenbush.
10          So Mr. Slifer, Russ Slifer, describes the Patent
11 Office procedures, and then parallel, Dr. Metzger describes
12 the technical content of the various applications at issue.
13 So you sort of have to look at both sets of facts parallel --
14          THE COURT:  And the -- and the ultimate conclusion as
15 it relates to the CIP is what exactly?
16          MR. CANNON:  So there's -- there's two conclusions,
17 your Honor.
18          The first conclusion, and you need the technical
19 report for this, is that given the infringement contention,
20 there is insufficient support in either of the earlier
21 separate applications to support the priority date.
22          And then as a matter of law, the -- because what is
23 accused of infringement predates the combination application
24 in July 2020, it -- the claims are invalid as a matter of law.
25 That's sort of the patent side of the case.

8

1          Then there is the antitrust and unfair competition
2  side of the case, and there Vizgen alleges that Harvard and
3  10X engaged in a scheme to dominate the market and in
4  particular target Vizgen by combining the application and
5  basically seeking to target Vizgen by combining the 3-D matrix
6  application with the TOSS application in such a way that they
7  can target Vizgen and drive Vizgen out of the market even
8  though Vizgen was also a Harvard licensee.
9          So that's sort of the antitrust unfair competition
10 side of the case.
11          Is that enough detail, your Honor?
12          THE COURT:  That's enough detail.
13          Okay.  So I'm going to turn over to opposing counsel
14 at this point.  And, again, what I'm focusing on is whether
15 this is a proper rebuttal report or not.
16          What would you like to tell me based on what I was
17 just told?
18          MR. RODRIGUES:  Sure.  Thank you, your Honor.  This
19 is Ruben Rodrigues of Foley & Lardner.
20          Just to make sure, since I haven't spoken, can you
21 hear me?
22          THE COURT:  I can hear you fine.
23          MR. RODRIGUES:  Thank you.  Okay.
24          So I think it's notable that Mr. Cannon focused on
25 characterizing the Harvard conduct here as very unusual and he

9

1  led with this idea that the Slifer report is important because
2  it characterizes Harvard's conduct as very unusual.
3          Well, I don't think that actually has anything to do
4  with rebutting Mr. Quackenbush's report and is really about
5  their theories of counterclaims, such as the (unintelligible)
6  report, and they haven't demonstrated any good cause as to why
7  it should've been put forth.
8          With regard to what Mr. Slifer actually said about
9  the Quackenbush report, at paragraph 15 of his report, he says
10 Dr. John Quackenbush did not offer any opinions regarding the
11 priority in his opening report.  He doesn't talk about
12 infringement, he doesn't talk about how -- the
13 characterization, and that's because, as Mr. Cannon said,
14 that's really the technical expert's doing, right?  And all
15 that's left is their counterclaims.
16          And there's really nothing that we see in the
17 Quackenbush report, nothing -- sorry, not Quackenbush
18 report -- the Slifer report, there's nothing you see in the
19 Slifer that is actually a rebuttal to anything.  And every
20 time they try to explain it, they keep going to their
21 counterclaims.  And if it's really in support of the
22 counterclaims, it should've been in opening report.  And
23 there's no good cause to allow it after they provided it.
24          THE COURT:  Okay.  My next question is for you, and
25 it has -- Mr. Ruben -- it has to do with what in the Third

## Page 10

1  Circuit, as you guys all know, are called the Pennypack
2  factors, spelled just like it sounds.
3        And one of the things that is also found on page 3 of
4  Vizgen's submission is that you guys have got one more chance
5  to do expert reports.  There is a date for what are called
6  reply reports in the scheduling order.
7        And so in assessing prejudice and so on, you'll
8  have a -- this isn't like it's going to go unrebutted or that
9  you wouldn't have a chance to rebut it.
10       What would you like to say about that?
11       MR. RODRIGUES:  So to be candid, we have prepared a
12 rebuttal report and have served it.  I think it's still
13 prejudicial to have done that on the schedule.
14       I think part of the other prejudice here, I know your
15 Honor has to focus on the rebuttal aspect of it, but we do
16 think there's a significant prejudice angle that plays into
17 the improper rebuttal aspect having Schwegman (phonetic),
18 which is plaintiffs' counsel, actually have an attorney
19 testify as an expert against us is actually very prejudicial,
20 and had there been more time, perhaps there's a way to resolve
21 that.
22       THE COURT:  Okay.  So let me back up to the -- so
23 there are really two issues raised, if I can -- or sub-issues,
24 that they kind of collect under these two issues.
25       Number one, that Mr. Slifer can't appropriately

## Page 11

1  testify because his law firm is represented -- is representing
2  Harvard, which is an opposing party in this case.
3        And, secondly, it's this rebuttal issue that we've
4  been discussing.
5        So on the first issue, I am persuaded that the
6  engagement of the law firm and this expert witness assignment
7  are completely unrelated.
8        There's a reference to some theoretical possibility
9  that there's -- you know, that Dr. Church, who is one of the
10 inventors, is involved in one of the things that the law firm
11 that Mr. Slifer's with is involved in, but I don't think
12 that's enough to make these things touch each other or overlap
13 in any way.  So I think it's completely unrelated.
14       So there's no actual conflict, and I don't regard
15 this as a sufficient appearance of impropriety to disqualify
16 him.
17       You know, we'll have to do some things at the trial
18 to kind of -- and I'm guessing there'll be a motion in limine
19 practice on both sides -- or one side or both sides relating
20 to what, if anything, can be said about that particular issue,
21 but that's an issue for down the road.
22       So that's the first thing.
23       The second thing is is I think -- and I think the
24 best way for me to put this, I think that this is rebuttal
25 enough, I mean, I do think that there is a decent point that

## Page 12

1  at least -- that what Dr. -- that what Mr. Slifer is saying
2  does bear on an affirmative claim that Vizgen is making and in
3  that sense maybe isn't, technically speaking, a rebuttal
4  report, but I do think also that part of what he's saying is
5  it folds in with the technical expert that was referenced by
6  Mr. Cannon.  It makes it rebuttal enough to Dr. Quackenbush's
7  report.
8        And considering the Pennypack factors, you know,
9  plaintiffs had a chance to respond to this, they'll have a
10 chance to depose Mr. Slifer, and those factors weigh against
11 exclusion.
12       So the request to exclude Dr. Slifer is denied for
13 those reasons.
14       I think I'm -- I don't remember which case is which,
15 but I think I'm talking to you all in maybe a week and a half
16 or something like that on the -- maybe I haven't set it yet.
17 I know there's an issue in one of these cases about a stay
18 pending another party's review.  Is that 261 or 595 or both,
19 or maybe --
20       MR. CANNON:  261, your Honor.
21       THE COURT:  It's 261.
22       And I'm blanking.  I don't know whether I sent this
23 order out yet.
24       Have I set a date for a telephonic hearing on that?
25       That tells me no.

## Page 13

1        MR. EHRLICH:  This is Paul Ehrlich.  I believe there
2  is an order for --
3        THE COURT:  Yeah, it would have just been entered in
4  the last day or two.
5        MR. EHRLICH:  The 30th.
6        THE COURT:  I know I had -- yeah, that sounds right,
7  the 30th.  Okay.  So I'll be talking to you in about a week
8  and a half.
9        All right.  Thanks very much for calling in today.  I
10 appreciate it.
11       MR. Cannon:  Thank you, your Honor.
12   (Which were all the proceedings had in the above-entitled
13 cause on the day and date aforesaid.)
14   I certify that the foregoing is a correct transcript from
15   the record of proceedings in the above-entitled matter.
16 _____          _____
   Carolyn R. Cox                    Date
   Official Court Reporter
17 Northern District of Illinois
   /s/Carolyn R. Cox, RPR, CRR, FCRR