# EXHIBIT 2

1    IN THE UNITED STATES DISTRICT COURT
     DISTRICT OF DELAWARE (WILMINGTON)
2

3
     10X GENOMICS, INC., et al.,      ) Docket No. 22 C 595
4                                     )
                     Plaintiffs,)
5                                     )
               vs.                    ) Chicago, Illinois
6                                     ) January 27, 2025
     VIZGEN, INC.,                    ) 10:15 o'clock a.m.
7                                     )
                     Defendant. )
8

9              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE MATTHEW F. KENNELLY
10

11   APPEARANCES:

12
     For the Plaintiffs:   TENSEGRITY LAW GROUP LLP
13                         BY:  MR. PAUL EHRLICH
                                MR. MATTHEW POWERS
14                              MS. STEFANI SMITH
                           555 Twin Dolphin Drive, Suite 650
15                         Redwood Shores, CA  94065
                           (650) 802-6000
16

17
                           RICHARDS LAYTON & FINGER
18                         BY:  MR. FRED COTTRELL, III
                                MR. JASON J. RAWNSLEY
19                         One Rodney Square
                           920 North King Street
20                         Wilmington, DE  19801
                           (302) 651-7700
21

22

23   Court Reporter:       MS. CAROLYN R. COX, RPR, CRR, FCRR
                           Official Court Reporter
24                         219 S. Dearborn Street, Suite 2102
                           Chicago, Illinois  60604
25                         (312) 435-5639

---

1   APPEARANCES (Cont'd):

2

3   For the President
    and Fellows of
    Harvard College:       FOLEY & LARDNER, LLP
4                          BY:  MR. RUBEN RODRIGUES
                                MR. JAMES W. MATTHEWS
5                               MR. JARREN N. GINSBURG
                                MS. SARAH E. RIEGER
6                          111 Huntington Avenue, Suite 2500
                           Boston, MA 02199
7                          (617) 342-4000

8
                           MORRIS JAMES
9                          BY:  MR. CORTLAN S. HITCH
                                MR. KENNETH L. DORSNEY
10                         500 Delaware Avenue, Suite 1500
                           Wilmington, DE 19801
11                         (302) 888-6800

12  For Defendant
13  Vizgen, Inc.:          QUINN EMANUEL
                           BY:  MS. KATHLEEN MARINI
14                         111 Huntington Ave, Suite 520
                           Boston, MA 02199
15                         (617) 712-7100

16
                           QUINN EMANUEL
17                         BY:  MR. DAVID LeRAY
                                MR. ANDREW TIGCHELAAR
18                         295 5th Avenue
                           New York, New York 10016
19                         (212) 849-7000

20
                           QUINN EMANUEL
21                         BY:  MR. ADAM B. WOLFSON
                           50 California Street, 22nd Floor
22                         San Francisco, California 94111
                           (415) 875-6600
23

24
25

---

3

APPEARANCES (Cont'd):

2

3                               QUINN EMANUEL
                           BY:  MR. BRIAN C. CANNON
4                               MR. ANDREW BRAMHALL
                                MR. ERIC D. WOLKOFF
5                          555 Twin Dolphin Dr., 5th Floor
                           Redwood Shores, California 94065
6                          (650) 801-5000

7

8                               YOUNG, CONAWAY, STARGATT & TAYLOR LLP
                           BY:  MS. PILAR KRAMAN
9                          Rodney Square
                           1000 North King Street
10                         Wilmington, DE  19801
                           (302) 576-3586
11

12                              WHITE & CASE LLP
                           BY:  MR. MICHAEL J. SONGER
13                              MR. HENRY HUANG
                                MS. HALLIE KIERNAN
14                         3000 El Camino Real
                           2 Palo Alto Square, Suite 900
15                         Palo Alto, California 94306
                           (650) 213-0300
16

17
18
19
20
21
22
23
24
25

---

4

1    (The following proceedings were had by video:)

2         THE CLERK:  Case 22 C 595, 10X v. Vizgen.

3         THE COURT:  Good morning.  This is Judge Kennelly.

4   This is a video hearing.

5         Can we start off with counsel for 10X giving your

6   names.

7         MR. POWERS:  Matt Powers, Paul Ehrlich, Stefani

8   Smith, Fred Cottrell, and Jason Rawnsley for 10X.

9         THE COURT:  Thanks, Mr. Powers.  I don't know whether

10  it's distance from the microphone or what.  So just make sure

11  whoever is talking keeps your voice up.  Maybe even crank it

12  up from your end a little bit.

13        Counsel for Harvard.

14        MR. HITCH:  Good morning, your Honor.  On behalf of

15  Harvard, it's Cortlan Hitch from Morris James.  Joining me

16  today is Ken Dorsney from Morris James as well as Ruben

17  Rodrigues, James Matthews, Jarren Ginsburg, and Sarah Rieger

18  from Foley & Lardner.

19        THE COURT:  Thanks.  And counsel for Vizgen.

20        MS. KRAMAN:  Good morning, your Honor.  Pilar Kraman

21  from Young Conaway for Vizgen.  And with me from Quinn Emanuel

22  is Brian Cannon, Andrew Bramhall, Adam Wolfson, Eric Wolkoff,

23  David LeRay, Kathleen Marini, and Andrew Tigchelaar.  And from

24  White & Case, Mike Songer, Henry Huang, and Hallie Kiernan.

25        THE COURT:  So here is my plan of attack.  I want to

1  I want to hear on this is if somebody on the movant's side, so
2  that's plaintiff, can just identify to me how you are harmed
3  by this, by -- "this" being the admission of this testimony
4  that plaintiffs' witnesses gave in other depositions in the
5  261 case.
6        MR. POWERS:  We're harmed because evidence that
7  should not be usable against us is being used against us.
8        THE COURT:  Okay.  I don't think that's cognizable
9  harm.  That one is denied.  That one is done.
10       Now we're on to 8.  All right.  Let me make sure that
11 I'm understanding 8 correctly.  Give me a second here.  So 8
12 has to do with Russell Slifer.  It seems to involve a
13 particular aspect of his testimony.  And what I'm really
14 looking for here is that, in the defendants' response to
15 this -- I'm looking at page 16.
16       The first sentence says that Vizgen's patent
17 prosecution expert, Mr. Russell Slifer, S-L-I-F-E-R, explains
18 the intricacies of filing patent applications and opines about
19 the patent prosecution strategies Harvard employed both before
20 and after 2020 so that the jury can independently determine
21 whether those steps were unfair, deceptive, or a violation of
22 Harvard's implied covenant of good faith and fair dealing.
23       I don't know exactly what the contention is about
24 what Slifer's going to say that you have a problem with, but
25 at least that defines the subject matter for me.  So can you

1  just kind of pick it up from there and tell me what you think
2  is wrong about what the defense has proposed to put in.
3        MS. RIEGER:  Sure, your Honor.  This is Sarah Rieger
4  for Harvard.  The primary issue here really is a 402 and 403
5  issue.  Mr. Slifer's testimony just is not actually relevant
6  to any issues that are in dispute and need to be resolved
7  during trial.
8        So looking -- looking to what you just read from,
9  Vizgen's response, your Honor, to the extent we're talking
10 about Vizgen's contention that Mr. Slifer's testimony somehow
11 goes to wrongful conduct towards Vizgen, there is nothing in
12 Mr. Slifer's report that discusses any alleged duties owed to
13 third parties, to patent prosecution whatsoever.  The only
14 things that he does discuss are things related to the duty of
15 disclosure to USPTO, materiality, and whether material is
16 subject the duty of disclosure, all of which really just
17 creates this implication of some sort of impropriety towards
18 the USPTO itself.
19       And that is just not really relevant to this case.
20 Vizgen has not raised any allegations of inequitable conduct
21 in this case, which is the only theory that breach of the duty
22 of disclosure could possibly go to in a case of this nature.
23 And, I mean, as I said before, Mr. Slifer himself does not
24 weigh in on the duty to third parties and, as to the duty owed
25 to the USPTO, admits that it is not his opinion that anything

1  improper was done during prosecution.
2        So the relevance of those aspects of the opinion
3  really just seem to be nonexistent.  The only possible purpose
4  they could serve would be to unduly prejudice Harvard, confuse
5  and inflame the jury, and just serve as a waste of time under
6  these circumstances.
7        I understand that --
8        THE COURT:  Okay.  Pause there.  Pause right there.
9  So can I go over to defense counsel for a second?  Can you
10 tell me what exactly it is that you intend to offer through
11 Mr. Slifer that you think they're trying to exclude and why
12 you think it's appropriate to allow it into evidence?
13       MR. TIGCHELAAR:  Thank you, your Honor.  Andrew
14 Tigchelaar on behalf of Vizgen.  If I'm understanding
15 correctly, they are trying to suggest that Mr. Slifer's
16 opinion is specifically that something improper was done here.
17 And I think we tried to make it clear in our position that
18 Mr. Slifer's testimony will go to Patent Office procedures and
19 explaining various types of applications that may be submitted
20 in the Patent Office and the types of applications that were
21 submitted here.  So in terms of relevance --
22       THE COURT:  Is he going to attribute -- is he going
23 to impute or attribute any type of misconduct, wrongdoing,
24 underhandedness, unethical, anything like that to Harvard?
25       MR. TIGCHELAAR:  No, your Honor.  I think I can

1  confidently say he's not going to opine that what Harvard did
2  was right or wrong.  I think that's the issue for the jury.
3  But he's going to provide -- and I believe this came up in the
4  context of the Bayh-Dole issue -- sort of the legal framework
5  testimony that counsel for Harvard argued was appropriate
6  there is the sort of framework and background as well as
7  the -- how that framework sort of played out here, but not
8  going to opine specifically misconduct occurred as between
9  Harvard and the Patent Office or as between Harvard and Vizgen
10 specifically.
11       THE COURT:  Stop right there.  Let me go back to
12 Ms. Rieger then.  So what's the problem?  He's just going to
13 testify this is how these things work.  And I get that you
14 guys asked him during his deposition, well, is there anything
15 wrong with this?  And he said no.  But why is his testimony
16 inadmissible if he's not going to try to impute any sort of
17 wrongdoing to you guys?
18       MS. RIEGER:  Sure, your Honor.  A two-fold problem
19 there.  One is I understand Mr. Tigchelaar's characterization
20 of what Mr. Slifer's opinions are.  That is not the impression
21 that is given by his report.  There is no aspect of Vizgen's
22 allegations with respect to Harvard with respect to the patent
23 prosecution that have anything to do with duty of disclosure
24 or the materiality standards.  The only possible reason those
25 things could be in the report is to, as I said, give this kind

89

1  of -- raise the specter of impropriety with respect to what
2  Harvard did during prosecution vis-à-vis the Patent Office.
3          The other issue is that, at this stage of the case,
4  after summary judgment, after Vizgen's narrowing of the
5  invalidity positions that it intends to raise during trial,
6  several, several aspects of Mr. Slifer's report simply have no
7  relevance whatsoever to the issues in this case.
8          So just for example, one of the other issues they
9  raised in their response as a basis for Mr. Slifer's testimony
10 being relevant is this issue of priority.  Well, Vizgen has
11 since -- specifically identified the invalidity positions that
12 it tends to raise during trial.  And all of those use
13 combinations of prior art that predate even the earliest
14 possible filing date for the patent applications at issue in
15 this case.
16         So there's simply no relevance to, you know, the
17 discussion of priority and the discussion of, you know,
18 continuation of applications and what claims claim priority to
19 one parent application in the chain versus earlier
20 applications in the chain.  Those things would just simply
21 serve no purpose other than to waste time and confuse the jury
22 as to the issues that they're being asked to decide.
23         I also understand that Vizgen has still contended
24 that priority is somehow relevant to its non-infringement
25 positions.  I am unaware of any legal basis for that.  If you

90

1  look at just basic patent statutes, 35 U.S.C. 102 makes clear
2  that whether an invention was in public use, on sale, or
3  otherwise available to the public before the effective filing
4  date is an issue of patentability or anticipation.
5          So to the extent Vizgen asserts that, you know, it's
6  MERSCOPE platform or profits or process somehow doesn't
7  infringe because it predates their assertion of priority for
8  the patents-in-suit just -- that is a very strange combination
9  of legal concepts that does not actually have any bearing on
10 the actual issues in the case.
11         THE COURT:  Okay.  I'm denying motion Number 8.  It's
12 a motion to exclude Mr. Slifer's testimony in its entirety.  I
13 don't think that there's anything in his testimony where he
14 attempts to impute any sort of misconduct to Harvard or to any
15 plaintiff in the case.  I get that maybe his testimony can be
16 used to argue that, but that's really not the issue in terms
17 of admissibility of his testimony.
18         And the rest of it, I'm not terribly persuasive.  And
19 on the question of 403, quite honestly, everybody is under
20 some pretty strict time limitations in this case.  If people
21 want to use their time on stuff that's irrelevant and less
22 important, then that's kind of the -- they pay their money,
23 and they take their chances on that.
24         Okay.  So we're going to move on to Number 9.  I got
25 to stay really focused here on these last three.  Number 9 has

91

1  to do with Mr. Kohlberg's, K-O-H-L-B-E-R-G, "I don't know" and
2  "I don't remember" testimony.
3          So my -- the question at the top of page 10 is -- the
4  question is whether Kohlberg's denial of recollection or
5  knowledge is relevant for some purpose other than to show that
6  he's lying.  Vizgen should be prepared to explain this with
7  particularity at the final pretrial conference.
8          Now is your chance.  Go ahead.
9          MR. CANNON:  Thank you, your Honor.  Brian Cannon for
10 Vizgen.  Mr. Kohlberg's repeated denials of central facts are
11 relevant for a purpose other than showing that he is lying.
12 Quick background point.  Mr. Kohlberg is a central witness,
13 senior officer at Harvard.  He signed into the contracts and
14 amendments at issue here.
15         And I'd like to focus our attention on one particular
16 thing:  that is his selective memory about the expansion of
17 field A.  If you remember, your Honor, one of Vizgen's
18 allegations is that there was this -- Vizgen has what's called
19 an all-fields license.  And after Harvard took Vizgen's money
20 in 2020, Harvard expanded the field of the ReedCore license.
21 And if you remember, 10X acquired ReedCore.  So there was this
22 field expansion.  ReedCore used to have a narrow field; the
23 field was expanded.
24         In Mr. Kohlberg's deposition -- and I took his
25 deposition, your Honor -- I asked him about the field

92

1  expansion, and he used the litigation phrase, oh, it was just
2  a mere clarification.  In other words, there was no expansion
3  of field A.  However, when I pressed him and asked him about
4  conversations and documents around that, all of a sudden, he
5  remembered nothing.  "I don't know.  I don't know.  I don't
6  know."  And that calls into question directly --
7          THE COURT:  Pause for a second.  The thing that
8  you're saying this calls into question, is the other side, you
9  think, going to introduce that either by way of designating
10 his deposition or calling him live to testify about that?
11         MR. CANNON:  That's correct.  And, also, their
12 arguments at trial -- we believe they will argue at trial that
13 we didn't really expand field A; this was just a clarification
14 of the rights that ReedCore already had.  So that's one issue.
15         And I have a second issue, if your Honor is ready for
16 me to discuss.
17         THE COURT:  Go ahead.
18         MR. CANNON:  So the selective memory around field A.
19         The second issue is, your Honor, we have the burden
20 of proving Harvard's bad intent here under 93A.  We really do.
21 We have to have circumstantial evidence that shows Harvard
22 intended and willfully did the thing that we accuse them of,
23 which is expanding ReedCore's rights to benefit 10X to target
24 and destroy Vizgen.
25         And, your Honor, in 2020, that's when the key